RECEIVED - GR
February 2, 2024 12:41 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 2-2

2-1-2024

To the Clerk of U.S. District Court, Western District, Grand Rapids, Michigan:

Please file this ex parte Motion to Compel or Release and the attached copy of the Power of Attorney form signed 12-6-22 by my Nephew Shane Patrick Kuhl (now known as Samuel Alexander Kuhl and signed by my Nephew under that name) making me, Thomas Benjamin Kuhl, his Medical Advocate under case number 1:23-CR-44-1 and set up a hearing with the U.S. District Court Judge regarding the matter(s) contained in the aforementioned Motion as soon as possible.

As his Medical Advocate, I am concerned that my nephew is not getting the proper treatment for his mental illnesses in the Newaygo County Jail. Back in 2022, he was scheduled to be treated in the Forensic Center but was forced to wait eight to ten months because of lack of bed space. Since then he has been transferred to the Newago County Jail from the Kalamazoo County Jail, then to the MCC in Chicago, then back to the Newago County Jail and still no treatment for my nephew. As I understand matters, he has been ordered to be committed to a BOP facility and still no treatment for my nephew. Although I understand the distinction between Federal and State, I don't understand why the federal government is not looking at the big picture regarding the amount of time my nephew has been without the treatment that a mental health facility (not a Jail or a Prison) would give. That is why I am going outside proper channels (i.e., his Court-appointed Attorney) to make sure my nephew is getting the proper mental health treatment he deserves.

Thank you for your consideration in this matter.

Sincerely

Thomas Benjamin Kuhl

Motion to Compel or Release

Case Number: 1:23-CR-44-1

This motion asks that the Court compel the Dec. 20th order committing Kuhl to the custody of the Attorney General pursuant to 18U.S.C. Section 4241(d), so that the government be required to hospitalize him within 14 days. If the Court refuses to do so, it is requested Kuhl be released. The reasoning for these requests are as follows.

Under the 6th Amendment all defendants "shall enjoy the right to a speedy and public trial." According to the 5th and 14th Amendments no defendant "shall be deprived of liberty without the due process of law." Courts have reasoned that the Speedy Trial Act and the IRDA work together to require the timely resolution of cases like this one. See United States v. Carter 583 F. Supp. 3rd 94 (D. D.C. 2022). Since Kuhl has been found mentally incompetent, the government is required to decide if his competency can be restored within a period "not to exceed four months" according to the IDRA. The Speedy Trial Act limits the time for transportation to places of hospitalization to ten days, pursuant to 18 U.S.C. Section 3161(h)(1)(F). The statement in the commitment order (It is ORDERED that Kuhl be committed to the custody of the Attorney General for further inpatient evaluation and restoration to competency pursuant to 18 U.S.C. Section 44(d) for a period not to exceed 120 days from the date of arrival at the treatment facility.) causes concern that the pre-hospitalization period of confinement is basically unlimited. This will result in a violation of the IDRA and possibly the Sixth Amendment. Kuhl has already been committed to the custody of the Attorney General for over a month and has yet to be hospitalized. By the wording of the Dec. 20 order for commitment he will be in the custody of the Attorney General longer than the four months allowed by IDRA because the period will until his arrival at the facility. Seeing as the proceedings may not move forward until restoration efforts are completed, this indeterminate period of incarceration while he is not receiving restorative treatment is contrary to the requirements of the IDRA (see United States v. Leusogi, 2:21-CR-23TS (D. Utah Nov. 10, 2022)). It also violates his right to a speedy trial under the Sixth Amendment and due process under the 5th and 14th Amendments. It is well established that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. (See Jones v. United States, 463 U.S. 354, 361, 103 S. Ct. 3043, 77 L. Ed. 694 (1983)). The wait time to be admitted to a suitable facility is currently at least eight months. One month awaiting transportation is too long, let alone double the time allowed for the reason of commitment. I there is no time limitation on defendant's commitment to the custody of the Attorney General, then section 4241 is likely unconstitutional. (See United States v. Smith, 764 Fed Supp. 2d 541 (W.D. N.Y. 2011)). To read Section 4241(d) as allowing unlimited period of commitment is contrary to the intent of Congress. Therefore, according to the rule of constitutional avoidance, the Court should imply the time limitation for commitment to the defendant's commitment to the Attorney General to uphold the validity of the statute. The outer limit of a reasonable period of time for the initial period of hospitalization is four months and commitment is merely a prelude to hospitalization. For that reason the time for designation and transportation should be significantly shorter than four months. (See Smith again.) Following the ruling in Jackson v. Indiana, (406 S. Ct.

(1972)), that any defendant who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. 4241(d) clearly states four months as this period of time for that initial determination, to allow an extension of that time would be unconstitutional and contrary to the intent of Congress. Section 3161(h)(1)(F) of the Speedy Trial Act was made to limit the pre-hospitalization confinement and here we have clearly passed the ten-day period for transportation. In has already been concluded by courts within this circuit that section 3161(h)(4) does not trump 3161(h)(1)(F) (see U.S. v. Dellinger, 980 F. Supp. 2d 806 (E.D. Mich. 2013)). Also see U.S. v. Perry "to interpret the provision regarding the period of incompetency as trumping the transportation provision...would effectively rewrite the statute (see U.S. v. Perry, 1:20 CR-0163 (W.D. Mich., Nov. 22, 2022)) ... even if incompetency alone could indefinitely toll the speedy trial clock, efforts to restore competency—which necessarily involves hospitalization—must be subject to the transportation provision." Timely transport should also not be delayed because of an unreasonable period of time to designate a treatment facility. Borgess of Kalamazoo County also has a psych ward and could be an option. (See U.S. v. Reeves, Criminal Action 3:21-CR-00047-KDB-DCK (W.D. N.C. Sep. 5, 2023)). The Attorney General has the authority to contract with a State, a political subdivision, a locality, or a private agency for the hospitalization or a person committed to his care."

# A Power of Attorney

## for My Health Care

Kimble Center
FOR LEGAL DRAFTING

WMU–Cooley Law School

An easy-to-use form for naming someone to be your medical agent in Michigan

WriteMark Plus®
Plain Language Standard

*Prepared by:*
The Kimble Center for Legal Drafting
WMU-Cooley Law School
300 S. Capitol Ave.
Lansing, MI 48933

# Who can make medical decisions for me

## Introduction

This document is sometimes called an "advance medical directive."

It is intended for use in Michigan.

An agent is sometimes called a "patient advocate."

### What this document does

Who do you want to make health-care decisions for you if you cannot speak for yourself? In this document, you answer that question by:

- naming someone to be the agent for your health care, and
- describing their powers to make decisions on your behalf.

Choose someone who will do as you want when the time comes, even if others disagree. **Make sure to talk to your agent (and any backup agents) about this important role and about your wishes — because your agent will be following your wishes.**

### How this document is organized

Different parts below are for different people:

- **Section A** (pages 2 through 8) is for you to read, fill out in places, and sign.
- **Section B** (pages 9 and 10) is for the people who act as your witnesses to sign.
- **Section C** (pages 11 and 12) is for your agent and any backup agents to read and sign.

The shaded boxes will help guide you in places.

### How to use this document

You should fill in this form carefully. After you, your witnesses, and your agents have signed it:

- Give a copy to your doctor, your health-care facility (if possible), and each agent.
- Keep a copy at home in a place where someone can easily get it if needed.
- Every year or so, review what you have written.

You can cancel this document at any time. And you can do a new one.

This document does not give legal advice.

# Section A
# About my power of attorney

## 1. Who I want to be my agent

Look through the document to understand the powers you are giving to your agent.

Choose an adult you can trust. You can change your mind later.

**Print or write neatly.**

| | |
|---|---|
| **Name of agent** | Thomas Benjamin Kuhl |
| **Relationship to me** (Examples: spouse, sister, friend) | Uncle |
| **Address** | 710 Collins St. Kalamazoo, MI 49001 |
| **Cell phone** | 269-359-5103 |
| **Other phone** (if any) | |
| **Email** (optional) | |

Go to the next page to name your backup agents »

## 2. Who I want as my backup agents

You do not have to appoint a backup, but it's a good idea — in case your main agent cannot act for some reason.

If my main agent cannot or will not serve for any reason, I appoint the following as my backups. If my main agent is temporarily unavailable, the backups may serve — in the order below — until the main agent becomes available again. They have the same powers as my main agent.

When I say "agent" in this document, I mean the one who is acting on my behalf at the time a decision needs to be made.

### Backup #1

**Name of backup #1** Jacob Kuhl

**Relationship to me** (Examples: spouse, sister, friend) Brother

**Address** 613 Dwight St.
Kalamazoo, MI 49048

**Cell phone**

**Other phone** (if any)

**Email** (optional)

If your first backup cannot or will not serve when the main agent is unavailable, this person is your second choice.

### Backup #2

**Name of backup #2**

**Relationship to me** (Examples: spouse, sister, friend)

**Address**

**Cell phone**

**Other phone** (if any)

**Email** (optional)

## 3. The powers and instructions that I give my agent

### Powers

My agent has the full authority to make decisions about my medical or mental-health care — the same way I could if I were able. That includes the authority to:

- Agree to, refuse, or withdraw any treatment, procedures, or medication. (My specific instructions for life-support treatment are in Part 4 on page 5.)
- Get all my medical and mental-health records (I give a release under HIPAA, the federal privacy law).
- Hire and fire medical professionals and other support personnel, using my assets.
- Admit me to, or discharge me from, any medical-care facility (even against medical advice) or any living facility, including a nursing home or hospice.
- Get legal and personal information, sign documents, and take legal action in my name — if any of these are reasonably needed for my medical or mental-health care.

Your agent can act only when you cannot participate. See Part 8 on page 7.

### Instructions

My agent must try to follow my wishes, as expressed in this document, in any other document, or in person. The main concern in making decisions should be my quality of life. My agent should weigh:

- how much benefit I would get from a treatment or procedure, and
- how long the benefit would last, and
- how much it would cost.

And always keep me as comfortable and pain-free as possible.

My agent should try to consult with my immediate family members if reasonably possible. But my agent — who I trust to make decisions in my best interests — has the final say in that regard.

I want my family, doctors, mental-health professionals, and everyone else concerned with my care to follow my agent's instructions.

You may include more instructions in Part 6 on page 6.

## 4. Specific instructions for life-support treatment

"Life-support treatment" includes, for example, a breathing machine, getting food or water through tubes, and CPR (trying to restart my heart or lungs).

There are three choices below. Put your initials after **one choice only**.

### Choice 1

I do not want life-support treatment if any of these conditions exist:

- I am in a coma (I am unconscious), and my doctor reasonably believes that it cannot be reversed, or
- I have a terminal illness (I will not recover), and treatment would artificially delay my natural death, or
- The burdens of treatment — considering my quality of life, my suffering from the treatment, and the cost — would outweigh the benefit of possibly extending my life.

Knowing it could lead to my death, **I make choice 1.** Initials: SK

### Choice 2

I do not want life-support treatment if I am in a coma (I am unconscious), and my doctor reasonably believes that it cannot be reversed. In all other circumstances, I do want it.

Knowing it could lead to my death, **I make choice 2.** Initials: SK

### Choice 3

I always want life-support treatment to the greatest extent possible consistent with sound medical practice — regardless of my condition, my chance for recovery, or the cost.

**I make choice 3.** Initials: SK

Parts 5, 6, and 7 on the next two pages are optional.
**You do not have to fill them out, but you should read them.**

## 5. Specific instructions about treatment for mental-health care (optional)

Put your initials next to each one that you agree with.

**For mental-health care only:**

- My agent may consent to forcing me to take medication.

**I agree** SK

- My agent may consent to putting or keeping me in the hospital.

**I agree** SK

- I give up my right to immediately cancel my agent's authority to make decisions about mental-health treatment. If, at some point, I cancel this Power of Attorney for My Health Care while I'm receiving mental-health care, my agent can still make those treatment decisions for 30 days.

**I agree** SK

## 6. Other specific instructions or limitations for my agent (optional)

This Part 6 controls — it overrides — if you write anything that conflicts with Part 3, 4, or 5. If you need more space, attach an extra page called "Addition to Part 6."

## 7. The power to donate my body or body parts (optional)

Put your initials next to one or both if you agree.

This is often called donating "organs."

**After my death, my agent has the authority to donate my body or any part or parts of it:**

- For a transplant into another person

**I agree** ☐

- For education or research

**I agree** ☐

I have these instructions or limitations on this power to donate my body or body parts (optional):

## 8. When can my agent act?

My agent may act only if and while I cannot participate in making decisions about my medical or mental-health care. That determination must be made in writing by these two professionals:

- In the case of mental-health treatment, by a doctor and a mental-health practitioner.
- In all other cases, by my attending doctor and by one other doctor or licensed psychologist.

## 9. What if none of my agents can act?

If I cannot participate in making decisions for my care and no agent or backup agent is available to act for me, the instructions in this document must be followed and treated as conclusive evidence of my wishes.

!

If you cancel this document, it's best to prepare a new one, destroy old copies, and tell anyone who had the old one to throw it away.

## 10. How long does this document last? Can I change my mind?

This document is to be treated as a Durable Power of Attorney for Health Care. It normally lasts until I cancel it (there are rare legal exceptions). I may cancel it at any time — regardless of my condition — by clearly communicating my intent to do so.

## 11. No legal liability for those who follow my agent's instructions

No one participating in my medical or mental-health treatment is to be held liable — that is, legally responsible — for following my agent's directions if they are consistent with the directions given in this document.

## 12. Other legal points

- Michigan law governs this document. It is intended to be valid wherever it is presented.
- If one provision in this document turns out to be invalid, the others remain in effect.
- A copy of this document has the same legal force as the original.

!

The witnesses named on page 10 should see you sign.

## 13. My signature

I am at least 18 years old. I understand this document and sign it voluntarily.

**Name** (print) Sam Kohl

**Signature** Sam Kohl

**Address** 613 Dwight
Kalamazoo MI 49048

**Date** 12-6-22

# Section B Statement and signatures by witnesses

!

The witnesses are saying all these things about the patient, the person who signed this document on the previous page.

As a witness, I declare that:

- You — the person who filled out this document — signed it in front of me.
- You appear to be of sound mind.
- You appear to be signing of your own free will — and not because of any fraud or any improper pressure or influence on you.

I also declare that I am at least 18 years old and that I am:

- Not your medical agent.
- Not your spouse, parent, child, grandchild, brother, or sister.
- Not entitled (as far as I know) to benefit financially as your heir or from your will or trust.
- Not your health-care or mental-health-care provider, including a facility that provides these services to you.
- Not an employee of any of those providers.
- Not an employee of your health- or life-insurance company.

Go to the next page for witnesses to sign »

You need two witnesses, but having a third is a good idea in case one of them wasn't a proper witness for some reason.

## Witness #1

**Name** (print)

**Signature**

**Address**

**Date**

## Witness #2

**Name** (print)

**Signature**

**Address**

**Date**

## Witness #3

**Name** (print)

**Signature**

**Address**

**Date**

# Section C
# Acceptance by agents

I, Thomas Benjamin Kobl, agree to be the health-care agent for Samuel Kuh, who is called "the patient" below.

I will take reasonable steps to follow the patient's wishes and instructions.

I understand and agree that:

- I must always follow the patient's wishes that I know about and act in the patient's best interests — even if others disagree.
- I can make medical or mental-health decisions for the patient only if they cannot make decisions on their own.
- I can only make decisions that the patient would have had the power to make on their own.
- I can stop or refuse to start life-support treatment only if the patient clearly:
  - gave me that power, and
  - acknowledged that the decision could or would result in their death.

  But I cannot stop or refuse to start life-support treatment for a patient who is pregnant if doing so would result in their death.
- I am not paid for carrying out my responsibilities, but I may be reimbursed for my actual and necessary expenses.
- The patient may give up their right to immediately cancel my power to make mental-health-treatment decisions. Then, if the patient cancels my appointment while they are receiving mental-health care, I can still make those treatment decisions for 30 days.
- If the patient is admitted to a health facility or agency, they have the rights set out in the public-health code, found in Michigan Compiled Laws 333.20201.
- The patient can cancel my appointment at any time and in any way that communicates an intent to cancel.
- I can cancel my appointment — and stop serving — at any time and in any way that communicates my intent to cancel.
- My authority to act ends when the patient dies, with one exception: if the patient gave me the authority to donate their body or body part, I can do that after the patient dies.

**!** The agents must sign on the next page before they have the authority to act.

**Go to the next page for agents to sign** »

## Agent

**Name** (print) Thomas Benjamin Kidd

**Signature**

## Backup Agent #1

**Name** (print)

**Signature**

## Backup Agent #2

**Name** (print)

**Signature**

**WriteMark Plus®**
Plain Language Standard

This document meets the WriteMark Plain Language Standard. The WriteMark is a quality mark awarded to documents that achieve a high standard of plain language.

# Michigan Notary Acknowledgment

State of Michigan
County of Kalamazoo

The foregoing document was acknowledged before me on this 12-6-22 [date] by Samuel Kuhl [person].

Notary Public Signature: Tyler Caldwell
Notary Printed Name: Tyler Caldwell
Acting in the County of: Kalamazoo
My Commission Expires: 3-15-26

Description of Document

Type/Title of Document Power of attorney - my healthcare

Document Date 12-6-22 Number of Pages 12

Additional Signers None

TYLER CALDWELL, Notary Public
State of Michigan, County of Kalamazoo
My Commission Expires 03/15/2026

1) Perry Case: ("The same statutory provision (Page 13) applies to the transportation of defendants, regardless of whether the transportation is being conducted for the purposes of competency examination or for competency restoration. Competency restoration necessarily requires hospitalization." But to interpret the provision regarding the period of incompetency as trumping the transportation provision, while competency evaluation does not, would effectively rewrite the statute." "Simply establishing a lack of bed space is manifestly insufficient to satisfy the government's burden of overcoming the presumption that the delay of more than four months Mr. Perry to FMC Butner was unreasonable." (Pg. 19) "The declaration discusses generalized and long-term institutional limitations on the BOP's ability to provide competency restoration treatment." Pg. 20-21 "It would be incongruous to allow the government to avoid its responsibility for timely transportation by delaying for an unreasonable period of time the designation of a treatment facility . It defies logic and runs contrary to the purposes of the Speedy Trial Act."
2) Dellinger Case:"There is no reason to believe that congress was less concerned about incompetent defendants than it was about defendants whose competency had not yet been determined." "While the statute is not a model of clarity, the Court concludes that the Act's language supports its interpretation that section 3161(h)(4) does not trump section 3161(h)(1)(F)." "Rather, transportation delays "to and from places of examination or hospitalization, "including transportation following a finding of incompetence are subject to section 3161(h)(1)(F)."
3) Sparks Case: (Dismissed without prejudice because STA restrictions did not apply) "Section 3161(c)(1)'s requirement that a defendant's trial commence by a certain date if the case is one "in which a plea of not guilty is entered" determines only whether the time restrictions apply. It does not determine when the clock starts." (Dismissed due to transport delay).
4) Hernandez-Amparan Case: "The exclusion in 3161(h)(4) applies to the dates of a defendant's actual treatment rather than the lack of such treatment due to the failure to transport that defendant." "The suggestion that this provision does not apply to transportation which is tangentially caused by a defendant's illness would eviscerate section 3161(h)(1)(F), and implausibly render it applicable only to those who are mentally and physically healthy but are nevertheless being transported for examination or hospitalization." "However 3161(h)(1)(H) applies to "time between the filing of and the hearing of a motion. " "Defendant's Motion for Examination was concluded with the Court's order of commitment and this exclusion ceased to be applicable after the date of that Order."
5) Castle Case: "The Speedy Trial Act amendments specifically indicate that that anything over ten days in transport is presumptively unreasonable, and in enacting this law Congress took into account that there would be institutional delays." "The presumption applies unless some extraordinary event occurred in the case to make compliance with the directions of Congress unfeasible."
6) Carter Case: "IDRA requires the Attorney General to make that determination in a "reasonable time not to exceed four months." "On that last point, the Court reasoned that the Speedy Trial Act and IDRA work together to require the timely reso;ution of cases like this one. The Speedy Trial Act required the parties to proceed expeditiously Before Mr. Carter was found to be incompetent. Now, after that finding, IDRA requires the government to reach a decision on whether he can be restored to competence within a period "not to exceed four months." "The

specific time-limit in IDRA tempers the broad exclusion under subsection (h)(4) of the Speedy Trial A." "The Court ruled that the government violated Section 4241(d)(1). The Court also held, for a remedy, that the government was required to either civil commitment proceedings against Carter or release him." "IDRA does not authorize the court to extend its four month deadline."

7) Gamarra Case: "Gamarra argues that his extended detention at Butner violates the Insanity Defense Reform Act. He is correct. The statutory text leaves no room for debate. : it authorizes evaluation for a period not to exceed four months." "The only manner by which a defendant can be kept in confinement is through a court order finding that he has a substantial probably of attaining competency." "Likewise, in a case with facts similar to this one, the Second Circuit found that Mandamus actions to compel evaluations and Habeas Corpus actions to free illegally confined defendants, rather than dismissal of indictments, are the correct remedies for violating the Act's time limits."
8) Williams Case: "We agree with the First, Fifth, and Sixth Circuits, and we hold that periods of unreasonable delay of more than ten days in the transport of a defendant to the site of a examination conducted in the course of a proceeding to determine a defendant's mental competency are non-excludable for purposes of computing the time within which the government must commence a trial of a defendant under the Speedy Trial Act. A cardinal rule of statutory interpretation is that courts should avoid interpreting a statute in ways that would render certain language superfluous." "Therefore section 3161(h)(1)(A) cannot be interpreted to exclude all periods of delay related to examinations because section 3161(h)(1)(F) places a specific limitation on the excludability of an unreasonable period of delay in transporting a defendant to the site of that very examination. To interpret section 3161(h)(1)(A) in such a way would render section 3161(h)(1)(F) superfluous because it would never be necessary to apply section 3161(h)(1)(F) to determine if a period of delay in transporting a defendant to a psychological examination is unreasonable and, therefore, non-excludable; section 3161(h)(1)(A) would always exclude such period of delay, and the limitations contained in section 3161(h)(1)(F) would be devoid of meaning.
9) Olivas Case: "While 3161(h)(1)(A) is a broader provision excluding from the speedy trial calculation any amount of time related to determinations of mental or physical capacity of the defendant, section 3161(h)(1)(F) presents a stricter , seemingly less flexible exclusion of time wherein the first ten days of a delay are excludable, but any additional delay is presumed unreasonable." " Thus it cannot be said that the 'finite and limited' capacities of the FMC's that allegedly delayed Defendants confinement came as a surprise to the government; rather, it is clear that the Government was previously aware of these delays, which are instrumental in nature."
10) Jervey Case: "Ordinary institutionalized delay is not an excuse."
11) Bloate Case: "general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt in another part of the same enactment.
12) Black Case: "As a result, section 3161(h)(1)(A), which only applies to 'any proceedings, including any examinations to determine the mental or physical competency of the defendant,' is inapplicable here and does not operate to exclude the time Mr. Black spent waiting for transport." "The delay here directly resulted from the failure to transport Mr. Black to FMC Butner and not from Mr. Black's incompetence. Although Mr. Black would not have needed the transportation to FMC Butner had he not been found incompetent, he would have been

receiving care and treatment and may have been restored to competence sooner had he been promptly transported."

13) Turner Case: "In vaguely relying on the 'difficulty suffered by the facility and by the United States Marshall Service in effecting a timely evaluation and transportation to and from the facility,' the government offers no handhold for rebutting the presumption that it should not take the marshals more than ten days to transport an inmate from a prison to the site of a competency examination." "Even assuming that the proposed order could constitute a waiver, the Speedy Trial Act does not allow defendants to waive a deadline prospectively." See Zedner v. United States, 547 U.S. 489, 500, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006)." "Unlike many rights, the rights protected by the Speedy Trial Act belong not just to the defendant, but also to the public at large, and 'allowing prospective waivers would seriously undermine the Act because there are many cases...in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of public interest.'"
14) Tinklenberg Case: "The Sixth Circuit exempted weekend days and holidays because it believed that subparagraph (F) incorporated Federal Rule of Criminal Procedure 45(a)." "But in our view subparagraph (F) does not incorporate Rule 45."
15) Phinizy Case: "While the entry of a not guilty plea triggers the applicability of the Speedy Trial Act, the date the plea is entered is not the 'start date' for purposes of calculating how many days have passed."
16) Noone Case: "Delays in transportation in excess of ten days are presumed unreasonable and are not excluded from the speedy trial computation, as provided in subparagraph (F)." "Any other interpretation would render mere surplusage the specific reference in subparagraph (h)(1)(F) to transportation 'to and from examination or hospitalization.'"
17) Cliffton Case: "Government has not shown any extraordinary event that occurred to make compliance with section 3161(h)(1)(F) unfeasible, but has shown only ordinary institutional delay." " Therefore...under the Speedy Trial Act the indictment against the defendant must be dismissed."
18) Phillips Case: "The court finds the approach taken by the First, Fifth, Sixth Circuits to be persuasive because the opposite reading would render the reference to examination or hospitalization in (h)(1)(F) mere surplusage." "The only way to avoid conflict between (H)(1)(A) and (h)(1)(F) is to read section 3161(h)(1)(F) as a specific section to the general rule announced in 3161(h)(1)(A), imposing a presumptive limit of ten days for transportation on the otherwise unlimited time for competency hearings."
19) Mann Case: "Although the exclusion for competency proceedings in section 3161(h)(1)(A)does not mention any exceptions, the Court of Appeals for the Sixth Circuit has interpreted section 3161(h)(1)(F) as a 'specific exception' to the general rule about competency proceedings."

STA
SER
ecified fo
include
for dome
ance.**
a custo
ems. For
usps.com.
http://pe.
NVI
IT
NSU

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID
$9.85
Origin: 49001
02/01/24
2549100001-11

PRIORITY MAIL®

0 Lb 4.70 Oz
RDC 03

EXPECTED DELIVERY DAY: 02/02/24

C040

SHIP
TO:
STE 399
110 MICHIGAN ST NW
GRAND RAPIDS MI 49503-2317

USPS TRACKING® #

9505 5103 2952 4032 5843 49

PRIORITY® ★ MAIL ★

UNITED STATES POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Thomas Benjamin Kuehl
710 Collins St Apt 807
Kalamazoo, Michigan [49001]

TO: The Clerk of Court
U.S. District Court
Western District
399 Federal Bldg.
110 Michigan St NW
Grand Rapids, Michigan
49503

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE