RECEIVED (GR)
U.S. District Court Clerk
APR 25 2024
JW
Western Michigan
4-26

4-18-24

Hon. Jane M. Beckering

399 Federal Building

110 Michigan St. NW

Grand Rapids MI 49503

Dear Judge Beckering:

I am writing his letter on behalf of my Nephew, Samuel Alexander Kuhl, who is currently lodged in the Newaygo County Jail. He is dissatisfied with his court-appointed attorney, Parker Douglas. He calls me on the phone and tells me Mr. Douglas never contacts him, never answers his phone calls, and never responds to mail that he sends him. Though he is deemed mentally incompetent to stand trial, he is upset that nothing in his favor seems to be happening to him. One of his fellow inmates tells him that the Speedy Trial Act states that the United States can be in violation of the act and if so, charges against him (though he doesn't understand he is being charged with anything) can be dropped. Indeed, if the doctors at FMC Butner (and this is according to the Order of Commitment filed in December of last year) determine he is unable to be restored to competency, the charges have to be dismissed and he can either be released (if it is determined that he is not a danger to himself, others, or to property) or civilly committed (placed in a regular psychiatric facility) which would be better than having to sit in a jail cell. Yet he is still not at FMC Butner, though the order for transportation states that he was to be at FMC

Butner within ten days from the date of the order. Why? In my conversations with Mr. Douglas, he states that the U.S. Marshal's service has a backlog of prisoners that need to be transported to facilities that will attempt to restore them to competency. Why has this happened and what is being done to correct this problem? Has the Speedy Trial Clock stopped ticking for my Nephew because of this backlog? Does Mr. Douglas have the answer to this question? It would seem that the Speedy Trial Clause in the Constitution was put there so that presumptively innocent people would not have to sit in a jail cell interminably. Yet here is my nephew, mentally ill, stuck in a jail cell without any hope of relief!

Mr. Douglas filed a "Defendant's Motion to Compel Transport" which was denied at the March 14, 2024 hearing. I am sending you a copy of the transcript so you can see what transpired. The prosecutor, Mr. Verhey (as you can see from the transcript), argued that because my nephew was not getting any worse, it would be unreasonable (and not a violation of any due process standard) to put him ahead of everybody else since he is now designated to go to Butner some time in June (has the Speedy Trial Clock been sacrificed? Is 'sometime in June' already a violation of the Speedy Trial Act?). No mention of due process violations, Speedy Trial violations, or IDRA violations in the Motion at all (because, unfortunately, Mr Douglas had no such violations in this Motion).

It is for these reasons that I (as his medical advocate–he appointed me his medical advocate is 2022, before he was declared incompetent to stand trial), with his agreement, respectfully ask you remove Mr. Douglas from my nephew's case and replace him with a better court-appointed attorney (or with Jonathan Jones, his Attorney for the state version of this case).

Respectfully,

Thomas Benjamin Kuhl

Case 1:23-cr-00044-JMB ECF No. 39, PageID.135 Filed 03/19/24 Page 1 of 8



*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL,

Defendant.
_________________________________________/

*MOTION HEARING*

*BEFORE THE HONORABLE RAY KENT*
*United States Magistrate Judge*

*Grand Rapids, Michigan, Thursday, March 14, 2024*

APPEARANCES:

For the Plaintiff: TIMOTHY P. VERHEY
U.S. Attorney
330 Ionia Ave., NW
Grand Rapids, MI 49501
(616) 456-2404

For the Defendant: PARKER DOUGLAS
Federal Public Defender
50 Louis St. NW, Ste. 300
Grand Rapids, MI 49503
(616) 742-7420

REPORTED BY: TRISHA N. CAMERON, CSR, RMR, CRR, RDR
Federal Official Court Reporter
128 Federal Building
Lansing, Michigan 48933

Grand Rapids, Michigan
March 14, 2024
2:04 p.m.

*PROCEEDINGS*

THE CLERK: The United States District Court fort western district of Michigan is now in session. The Honorable Ray Kent, United States Magistrate Judge, presiding. Please be seated.

THE COURT: This is 23-cr-44, United States versus Samuel Kuhl. Mr. VerHey on behalf of the United States. Mr. Douglas on behalf of Mr. Kuhl, who's not with us because he has been determined to be incompetent by the Department of Justice and is presently awaiting restoration therapy.

We're here on Mr. Douglas' motion to compel transport. I've read the motion. Mr. VerHey filed a brief in opposition. I've read that. I also -- I don't suppose either side got the slideshow, which Deputy Walkington provided to chambers.

I don't know if he was intending me to share that or not. So maybe I won't right now.

But, Mr. Douglas, I've read your brief. Anything else you want to say?

MR. DOUGLAS: Just in response to some of the representations in Mr. VerHey's brief. He suggests that there's no evidence of decompensation. I anticipate he'll

Case 1:23-cr-00044-JMB ECF No. 39, PageID.137 Filed 03/19/24 Page 3 of 8



show you an exhibit that he's just handed me. It looked very much like the complaints that his uncle has called me repeatedly about. So I don't know that he can represent Mr. Kuhl actually wrote it. He may have copied it. I don't know.

But I would say if we were going to get into debating whether there's been decompensation or not, I have about an hour of phone messages from Mr. Kuhl that I could produce. I think it's absurd --

THE COURT: I think we won't go there.

MR. DOUGLAS: I don't think we should go there either, Your Honor.

But I would say that it's frustrating on the defense side just because when you have a client waiting, to think that you might have to retain an expert to show decompensation while your client is waiting, you know, beyond the transport time is a pretty incredible financial economics shift in the proceedings.

THE COURT: You're not going to have to do that.

MR. DOUGLAS: Okay. I didn't anticipate we'd have time to, so...

THE COURT: Perfectly reasonable anticipation. But wrong, as it turns out.

MR. DOUGLAS: I understand. And I would have brought a Jackson motion. But I think my readings of the cases say

Case 1:23-cr-00044-JMB ECF No. 39, PageID.138 Filed 03/19/24 Page 4 of 8



most Courts are going with around four months as the outside. But they'll read it, I think, because of the 120-day language in the statute.

THE COURT: Okay.

MR. DOUGLAS: But I didn't bring that because I didn't -- I've had Judge Beckering deny a motion like that previously.

THE COURT: Yeah. Anything you want to say, Mr. VerHey?

MR. VERHEY: No. I mean, I wanted the Court just to know basically what I heard from the Bureau of Prisons after I got the defense's motion. We did receive a pro se lawsuit from the defendant signed by him that does --

THE COURT: Did he sue you?

MR. VERHEY: The Justice Department.

THE COURT: Oh.

MR. VERHEY: He's probably smart enough that he knows that there's nothing to get from me. But that's just -- to me, that just bears on whether he's sliding down the scale of functioning or getting better or staying about the same. I mean, he seems to be at about the same high level of operation as he was before. He doesn't appear to be getting worse.

And so my only point in pointing that out was it doesn't seem like he is the kind of person that is going off the deep end, so to speak, mentally to jump the line in front

Case 1:23-cr-00044-JMB ECF No. 39, PageID.139 Filed 03/19/24 Page 5 of 8



of everybody else.

It looks like he's been designated to go to Butner in June. That is a long time.

But as I attempt to point out, there is no drop dead date for when somebody begins their four-month period that I'm aware of, and delay is built into our system. I mean, I just sat here for the prior proceeding and heard you tell somebody they weren't going to get sentenced for about four months, and that's just built into the system. It's unfortunate, but there it is.

So I don't think under the circumstances that waiting until June is violating any due process standard, not that that's an issue that's being teed up for the Court today.

THE COURT: Right. Okay. Thank you. Yeah. I wouldn't have authority probably to rule on such a motion anyway.

But I can tell you I've got a very nice slideshow here prepared by somebody in the Bureau of Prisons, which goes through the whole process of designation. Let me just see if I can find -- I'm sure in color it's pretty snazzy. Black and white, not so much.

The wait list issue. The BOP is acutely aware and shares concerns regarding the waiting period for defendants determined not competent to stand trial to begin receiving competency restoration services. Butner and Springfield both

Case 1:23-cr-00044-JMB ECF No. 39, PageID.146 Filed 03/19/24 Page 6 of 8



have waiting periods. Carswell typically does not. Waiting period has always waxed and waned. Currently approximately eleven weeks.

I can tell you that I talked to Deputy Walkington last week, I think, and Mr. Kuhl was 23rd in line and he is now 19th. So he's moving slowly up the list.

There's not much I can do, as far as I can tell.

Just in general, workarounds the delay that don't work include voluntary surrenders. Not that that's an option for Mr. Kuhl.

Release on bond. Personal recognizance. You know, report. Get yourself to BOP for treatment. Obviously not an option for him.

Line jumping. Judicial and/or attorney demands for defendants to move to the front of the sequencing line -- list at BOP FMC bed space causes delays for every other defendant prioritized on the sequence list, which, of course, impacts all of those other cases.

So I -- Mr. Douglas, I don't -- I don't think I have any basis on which to order Mr. Kuhl to move up in the line.

Do you know if he was -- obviously he wasn't good, which is why, I think, the government moved originally.

MR. DOUGLAS: And I was a little surprised by what I heard since we stipulated incompetency, Your Honor.

THE COURT: Yeah.

Case 1:23-cr-00044-JMB ECF No. 39, PageID.141 Filed 03/19/24 Page 7 of 8



MR. VERHEY: Defense moved and he went to a BOP facility and he was found incompetent by them.

MR. DOUGLAS: We both moved, for the record.

THE COURT: Yeah. I think it was -- I thought the government moved. Whatever.

You know, he's been found incompetent, and they want -- they've recommended restoration. I'm going with their recommendation.

So I wish he was there now. I wish I could get him there sooner. I don't think I can.

If you think he's entitled to other remedies, like -- this is -- you believe the speedy trial violation, then, you know, you'd have to seek relief from the district judge.

MR. DOUGLAS: I understand.

THE COURT: I certainly don't have authority to -- so respectfully, motion denied.

MR. DOUGLAS: Thank you, Your Honor.

THE COURT: You're welcome. Anything else we should talk about? Mr. VerHey?

MR. VERHEY: Not on my side. Thank you.

THE COURT: Mr. Douglas?

MR. DOUGLAS: No. Thank you, Your Honor.

*(Concluded at 2:13 p.m.)*

Case 1:23-cr-00044-JMB ECF No. 39, PageID.142 Filed 03/19/24 Page 8 of 8



*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Trisha N. Cameron
Trisha N. Cameron, CSR, RMR, CRR, RDR
U.S. District Court Reporter
Lansing, MI 48933

# A Power of Attorney

## for My Health Care

Kimble Center
FOR LEGAL DRAFTING

WMU–Cooley Law School

An easy-to-use form for naming someone to be your medical agent in Michigan

WriteMark Plus®
Plain Language Standard

*Prepared by:*
The Kimble Center for Legal Drafting
WMU–Cooley Law School
300 S. Capitol Ave.
Lansing, MI 48933

# Who can make medical decisions for me

## Introduction

This document is sometimes called an "advance medical directive."

It is intended for use in Michigan.

An agent is sometimes called a "patient advocate."

### What this document does

Who do you want to make health-care decisions for you if you cannot speak for yourself? In this document, you answer that question by:

- naming someone to be the agent for your health care, and
- describing their powers to make decisions on your behalf.

Choose someone who will do as you want when the time comes, even if others disagree. **Make sure to talk to your agent (and any backup agents) about this important role and about your wishes — because your agent will be following your wishes.**

### How this document is organized

Different parts below are for different people:

- **Section A** (pages 2 through 8) is for you to read, fill out in places, and sign.
- **Section B** (pages 9 and 10) is for the people who act as your witnesses to sign.
- **Section C** (pages 11 and 12) is for your agent and any backup agents to read and sign.

The shaded boxes will help guide you in places.

### How to use this document

You should fill in this form carefully. After you, your witnesses, and your agents have signed it:

- Give a copy to your doctor, your health-care facility (if possible), and each agent.
- Keep a copy at home in a place where someone can easily get it if needed.
- Every year or so, review what you have written.

You can cancel this document at any time. And you can do a new one.

This document does not give legal advice.

# Section A
# About my power of attorney

## 1. Who I want to be my agent

Look through the document to understand the powers you are giving to your agent.

Choose an adult you can trust. You can change your mind later.

**Print or write neatly.**

| | |
|---|---|
| **Name of agent** | Thomas Benjamin Kuhl |
| **Relationship to me** (Examples: spouse, sister, friend) | Uncle |
| **Address** | 710 Collins St. Kalamazoo, MI 49001 |
| **Cell phone** | 269-359-5103 |
| **Other phone** (if any) | |
| **Email** (optional) | |

Go to the next page to name your backup agents »

## 2. Who I want as my backup agents

If my main agent cannot or will not serve for any reason, I appoint the following as my backups. If my main agent is temporarily unavailable, the backups may serve — in the order below — until the main agent becomes available again. They have the same powers as my main agent.

When I say "agent" in this document, I mean the one who is acting on my behalf at the time a decision needs to be made.

> ! You do not have to appoint a backup, but it's a good idea — in case your main agent cannot act for some reason.

### Backup #1

| | |
|---|---|
| **Name of backup #1** | Jacob Kuhl |
| **Relationship to me** (Examples: spouse, sister, friend) | Brother |
| **Address** | 613 Dwight St.<br>Kalamazoo, MI 49048 |
| **Cell phone** | |
| **Other phone** (if any) | |
| **Email** (optional) | |

### Backup #2

> ! If your first backup cannot or will not serve when the main agent is unavailable, this person is your second choice.

| | |
|---|---|
| **Name of backup #2** | |
| **Relationship to me** (Examples: spouse, sister, friend) | |
| **Address** | |
| **Cell phone** | |
| **Other phone** (if any) | |
| **Email** (optional) | |

## 3. The powers and instructions that I give my agent

### Powers

Your agent can act only when you cannot participate. See Part 8 on page 7.

My agent has the full authority to make decisions about my medical or mental-health care — the same way I could if I were able. That includes the authority to:

- Agree to, refuse, or withdraw any treatment, procedures, or medication. (My specific instructions for life-support treatment are in Part 4 on page 5.)
- Get all my medical and mental-health records (I give a release under HIPAA, the federal privacy law).
- Hire and fire medical professionals and other support personnel, using my assets.
- Admit me to, or discharge me from, any medical-care facility (even against medical advice) or any living facility, including a nursing home or hospice.
- Get legal and personal information, sign documents, and take legal action in my name — if any of these are reasonably needed for my medical or mental-health care.

### Instructions

You may include more instructions in Part 6 on page 6.

My agent must try to follow my wishes, as expressed in this document, in any other document, or in person. The main concern in making decisions should be my quality of life. My agent should weigh:

- how much benefit I would get from a treatment or procedure, and
- how long the benefit would last, and
- how much it would cost.

And always keep me as comfortable and pain-free as possible.

My agent should try to consult with my immediate family members if reasonably possible. But my agent — who I trust to make decisions in my best interests — has the final say in that regard.

I want my family, doctors, mental-health professionals, and everyone else concerned with my care to follow my agent's instructions.

## 4. Specific instructions for life-support treatment

"Life-support treatment" includes, for example, a breathing machine, getting food or water through tubes, and CPR (trying to restart my heart or lungs).

There are three choices below. Put your initials after **one choice only**.

### Choice 1

I do not want life-support treatment if any of these conditions exist:

- I am in a coma (I am unconscious), and my doctor reasonably believes that it cannot be reversed, or
- I have a terminal illness (I will not recover), and treatment would artificially delay my natural death, or
- The burdens of treatment — considering my quality of life, my suffering from the treatment, and the cost — would outweigh the benefit of possibly extending my life.

Knowing it could lead to my death, **I make choice 1.** Initials: SK

### Choice 2

I do not want life-support treatment if I am in a coma (I am unconscious), and my doctor reasonably believes that it cannot be reversed. In all other circumstances, I do want it.

Knowing it could lead to my death, **I make choice 2.** Initials: SK

### Choice 3

I always want life-support treatment to the greatest extent possible consistent with sound medical practice — regardless of my condition, my chance for recovery, or the cost.

**I make choice 3.** Initials: SK

Parts 5, 6, and 7 on the next two pages are optional.
**You do not have to fill them out, but you should read them.**

## 5. Specific instructions about treatment for mental-health care (optional)

Put your initials next to each one that you agree with.

**For mental-health care only:**

- My agent may consent to forcing me to take medication.

**I agree** SK

- My agent may consent to putting or keeping me in the hospital.

**I agree** SK

- I give up my right to immediately cancel my agent's authority to make decisions about mental-health treatment. If, at some point, I cancel this Power of Attorney for My Health Care while I'm receiving mental-health care, my agent can still make those treatment decisions for 30 days.

**I agree** SK

## 6. Other specific instructions or limitations for my agent (optional)

This Part 6 controls — it overrides — if you write anything that conflicts with Part 3, 4, or 5. If you need more space, attach an extra page called "Addition to Part 6."

## 7. The power to donate my body or body parts (optional)

Put your initials next to one or both if you agree.

This is often called donating "organs."

**After my death, my agent has the authority to donate my body or any part or parts of it:**

- For a transplant into another person

**I agree** [ ]

- For education or research

**I agree** [ ]

I have these instructions or limitations on this power to donate my body or body parts (optional):

## 8. When can my agent act?

My agent may act only if and while I cannot participate in making decisions about my medical or mental-health care. That determination must be made in writing by these two professionals:

- In the case of mental-health treatment, by a doctor and a mental-health practitioner.
- In all other cases, by my attending doctor and by one other doctor or licensed psychologist.

## 9. What if none of my agents can act?

If I cannot participate in making decisions for my care and no agent or backup agent is available to act for me, the instructions in this document must be followed and treated as conclusive evidence of my wishes.

> **!**
>
> If you cancel this document, it's best to prepare a new one, destroy old copies, and tell anyone who had the old one to throw it away.

## 10. How long does this document last? Can I change my mind?

This document is to be treated as a Durable Power of Attorney for Health Care. It normally lasts until I cancel it (there are rare legal exceptions). I may cancel it at any time — regardless of my condition — by clearly communicating my intent to do so.

## 11. No legal liability for those who follow my agent's instructions

No one participating in my medical or mental-health treatment is to be held liable — that is, legally responsible — for following my agent's directions if they are consistent with the directions given in this document.

## 12. Other legal points

- Michigan law governs this document. It is intended to be valid wherever it is presented.
- If one provision in this document turns out to be invalid, the others remain in effect.
- A copy of this document has the same legal force as the original.

> **!**
>
> The witnesses named on page 10 should see you sign.

## 13. My signature

I am at least 18 years old. I understand this document and sign it voluntarily.

| | |
|---|---|
| **Name** (print) | Sam Kuhl |
| **Signature** | Sam Kuhl |
| **Address** | 613 Dwight<br>Kalamazoo MI 49048 |
| **Date** | 12-6-22 |

# Section B
# Statement and signatures by witnesses

!

The witnesses are saying all these things about the patient, the person who signed this document on the previous page.

As a witness, I declare that:

- You — the person who filled out this document — signed it in front of me.
- You appear to be of sound mind.
- You appear to be signing of your own free will — and not because of any fraud or any improper pressure or influence on you.

I also declare that I am at least 18 years old and that I am:

- Not your medical agent.
- Not your spouse, parent, child, grandchild, brother, or sister.
- Not entitled (as far as I know) to benefit financially as your heir or from your will or trust.
- Not your health-care or mental-health-care provider, including a facility that provides these services to you.
- Not an employee of any of those providers.
- Not an employee of your health- or life-insurance company.

Go to the next page for witnesses to sign »

!

You need two witnesses, but having a third is a good idea in case one of them wasn't a proper witness for some reason.

## Witness #1

| | |
|---|---|
| **Name** (print) | |
| **Signature** | |
| **Address** | |
| **Date** | |

## Witness #2

| | |
|---|---|
| **Name** (print) | |
| **Signature** | |
| **Address** | |
| **Date** | |

## Witness #3

| | |
|---|---|
| **Name** (print) | |
| **Signature** | |
| **Address** | |
| **Date** | |

# Section C
# Acceptance by agents

The agents must sign on the next page before they have the authority to act.

I, Thomas Benjamin Kuhl, agree to be the health-care agent for Samuel Kuhl, who is called "the patient" below.

I will take reasonable steps to follow the patient's wishes and instructions.

I understand and agree that:

- I must always follow the patient's wishes that I know about and act in the patient's best interests — even if others disagree.
- I can make medical or mental-health decisions for the patient only if they cannot make decisions on their own.
- I can only make decisions that the patient would have had the power to make on their own.
- I can stop or refuse to start life-support treatment only if the patient clearly:
  - gave me that power, and
  - acknowledged that the decision could or would result in their death.

  But I cannot stop or refuse to start life-support treatment for a patient who is pregnant if doing so would result in their death.
- I am not paid for carrying out my responsibilities, but I may be reimbursed for my actual and necessary expenses.
- The patient may give up their right to immediately cancel my power to make mental-health-treatment decisions. Then, if the patient cancels my appointment while they are receiving mental-health care, I can still make those treatment decisions for 30 days.
- If the patient is admitted to a health facility or agency, they have the rights set out in the public-health code, found in Michigan Compiled Laws 333.20201.
- The patient can cancel my appointment at any time and in any way that communicates an intent to cancel.
- I can cancel my appointment — and stop serving — at any time and in any way that communicates my intent to cancel.
- My authority to act ends when the patient dies, with one exception: if the patient gave me the authority to donate their body or body part, I can do that after the patient dies.

**Go to the next page for agents to sign** »

## Agent

| | |
|---|---|
| **Name** (print) | Thomas Benjamin Kuhl |
| **Signature** | [signature] |

## Backup Agent #1

| | |
|---|---|
| **Name** (print) | |
| **Signature** | |

## Backup Agent #2

| | |
|---|---|
| **Name** (print) | |
| **Signature** | |

WriteMark Plus®
Plain Language Standard

This document meets the WriteMark Plain Language Standard. The WriteMark is a quality mark awarded to documents that achieve a high standard of plain language.

# Michigan Notary Acknowledgment

State of Michigan
County of Kalamazoo

The foregoing document was acknowledged before me on this 12-6-22 [date] by Samuel KUHL [person].

Notary Public Signature: Tyler Caldwell
Notary Printed Name: Tyler Caldwell
Acting in the County of: Kalamazoo
My Commission Expires: 3-15-26

Description of Document

Type/Title of Document Power of attorney - my healthcare

Document Date 12-6-22 Number of Pages 12

Additional Signers None

TYLER CALDWELL, Notary Public
State of Michigan, County of Kalamazoo
My Commission Expires 03/15/2026

STATE OF MICHIGAN
GRETCHEN WHITMER
GOVERNOR
DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTER FOR FORENSIC PSYCHIATRY
ELIZABETH HERTEL
DIRECTOR

May 16, 2023

The Honorable Arthur Clarke
7th Circuit Court of Van Buren County
1007 E. Wells St.
South Haven, MI 49090

RE: KUHL, Samuel Alexander
CFP #: 1016938
Case #: 2023-23000127-FY
Subject: Incompetent to Stand Trial – Restorable Opinion

Dear Judge Clarke,

The above-named defendant has been opined Incompetent to Stand Trial and likely to attain competence, if provided a course of treatment, within the time limit established by section 1034.

If the court determines that the defendant is Incompetent to Stand Trial and likely to attain competence, the Center will offer a placement recommendation in accordance with Administrative Rule 10079.

If the court finds the defendant Incompetent to Stand Trial and Not Restorable yet is concerned the defendant may be a person requiring treatment as defined by MCL 330.1401 or may meet criteria for judicial admission as defined by MCL 330.1515, the court may direct the prosecutor to file a petition for mental health treatment with the probate court.

If you have any questions regarding our opinion or this process, please contact Donna Rinnas, Ph.D., Division Director of Evaluation & Forensic Services at (734) 295-4226 or email MDHHS-CFP-FORENSIC-SERVICES@michigan.gov with subject line "Careflow."

To submit Finding and Orders on Competency to the Center via email, please send to MDHHS-CFP-FORENSIC-SERVICES@michigan.gov with subject line "Finding and Order."

Sincerely,

/s/ Andrea L. VanDenBergh RN MS NEA-BC
Hospital Director
Center for Forensic Psychiatry

c: Prosecutor
Defense Attorney

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

Retail

US POSTAGE PAID
$9.85
Origin: 49001
04/24/24
2549100001-79

PRIORITY MAIL®

0 Lb 5.30 Oz
RDC 03

EXPECTED DELIVERY DAY: 04/26/24

C040

SHIP TO:
110 MICHIGAN ST NW
GRAND RAPIDS MI 49503-2300

USPS TRACKING® #

9505 5103 2951 4115 2788 45

RECEIVED (GR)
U.S. District Court Clerk
APR 25 2024
Western Michigan

PRIORITY ★ MAIL ★

UNITED STATES POSTAL SERVICE
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
Thomas Benjamin Kuehl
710 Collins St Apt 807
Kalamazoo, Michigan [49001]
For Samuel Alexander Kuehl

TO:
Hon Jane M Beckering
399 Federal Building
110 Michigan St NW
Grand Rapids, Michigan 49503

■ Expected deliver
■ Domestic shipme
■ USPS Tracking®
■ Limited internatic
■ When used intern

*Insurance does not cov
Domestic Mail Manual a
** See International Mail

FLAT RA
ONE RATE ■ AN

TRACKED ■ INSURED

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH
how2recycle.info

Label 228, March 2016
FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.