UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
March 6, 2025 2:38 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB SCANNED BY: JW / 3-7

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case no. 1:23-cr-44
Hon. Jane M. Beckering
Oral Argument Requested

# EXPEDITED

# DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant Samuel Kuhl respectfully moves the Court to dismiss the indictment pursuant to the Fifth and Sixth Amendments to the United States Constitution, and other lawful authority, because both counts in the indictment fail to make factual assertions sufficient (a) to identify the particular factual bases for the charges, (b) to provide Defendant with sufficient notice of the conduct against which he is called to defend, (c) to ascertain the specific conduct and evidence presented to the grand, (d) to ascertain that the grand jurors were properly instructed on the elements of the offense described in ~~Count One~~ both Counts, and (e) to provide Defendant with effective protection against the risk of double jeopardy. The reasons in support of this motion are set forth in the following memorandum.

# MEMORANDUM

## BACKGROUND AND STATEMENT OF FACTS

Originally, Defendant was charged in the Van Buren County of Michigan District Court with CSC-3rd Degree in violation of MCL 750.520d, and use of a computer to commit a crime in violation of MCL 750.145d on February 22, 2023. It seems these charges stem from a traffic stop, during which Defendant was arrested and his two phones searched for evidence relating to marijuana sales or illegal sale/use of Financial Transaction Devices (FTD). Accordingly, on at least one phone, law enforcement claims to have discovered evidence related to fraud and thus, turned over at least one phone to the Michigan State Police for further investigation.

During their further investigation into fraud, MSP claimed to have come across child sexually abusive material (CSAM). This launched an investigation into the phone(s) and Defendant for possible sex crimes. The traffic from which this matter originated took place on October 13, 2022.

Meanwhile, SA Buttery of the FBI and Detective Stolsonburg of Kalamazoo police and FBI Task Force Officer (TFO) had allegedly been investigating Defendant for fraud since at least early 2022. Although Defendant was released after the October 13th traffic stop mentioned above with no charges being filed on October 14, 2022, he was eventually arrested on November 3, 2022. This November 3rd arrest resulted from a bench warrant being issued after Defendant

did not appear for the end of his trial for firearm possession and assault the prior day, November 2, 2022. The trial resulted in a conviction on the felony charges.

On November 3, 2022, SA Buttery and Kalamazoo police officers spotted Defendant and eventually conducted a traffic stop of the car Defendant was a passenger. Defendant was subsequently arrested and multiple phones, debit cards, and a computer alleged to belong to Defendant were seized from the vehicle.

Defendant was lodged at the Kalamazoo County Jail after the November 3rd arrest with no bond to await sentencing for the conviction resulting from the trial Defendant was not entirely present for.

While detained at the Kalamazoo County Jail, Defendant's phone calls were being monitored by SA Buttery. It is believed that a phone call placed to the law office of attorney Christopher Trainor by Defendant was one of the calls listened to SA Buttery. During this call, Defendant sought legal advice about the traffic stop and subsequent arrest on October 13th in the City of Wyoming mentioned above.

After hearing of this stop and arrest, SA Buttery and Detective Stolsonburg reached out to Wyoming Police who described the fraud evidence allegedly discovered on Defendant's phone(s) and referred Buttery and Stolsonburg to MSP. Accordingly, Buttery and Stolsonburg contacted MSP and learned of the alleged evidence

and ongoing investigation into Defendant of sex crimes. MSP then provided Buttery and Stolsonburg with a phone extraction alleged to be from at least one of Defendant's phones seized during the October 13th arrest.

Based upon this information, SA Buttery then began a federal investigation alongside the MSP into Defendant for sexual related offenses. On April 25, 2023 a federal indictment, which is the basis of this case, was returned against Defendant. The indictment consists of two charges, Count One charges production and attempted production of child pornography in violation of 18 U.S.C. §2251(a), (e), and Count Two charges enticement and attempted enticement of a minor to engage in illegal sexual activity.

Almost all of the partial discovery provided so far originates from the MSP investigation and is dated beyond October 31, 2021, the end of the timeframe specified in the indictment during which the conduct underlying the two counts allegedly occurred. There is also a lengthy police report from Indiana State Police relating to a police pursuit in 2021 and subsequent arrest of Aries Atlas, the driver, and Defendant, the alleged passenger. The issues of this evidence in relation to the face of the indictment will be set forth more below.

## LAW AND ARGUMENT



"The Constitution imposes two requirements on an indictment: it must 'contain the elements of the offense charged and fairly infor[m] a defendant of the charge against which he must defend,' and it must also 'enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Horton, No. 14-3099 (6th Cir. Sep. 16, 2014) (quoting United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007)).

Given these core constitutional values, an indictment must meet certain requirements in order to survive a pretrial challenge to its facial sufficiency. "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." United States v. Superior Growers Supply, Inc., 982 F.2d 173, 176 (6th Cir. 1992).

A. THE INDICTMENT FAILS TO MAKE A SUFFICIENT FACTUAL ASSERTION TO SUPPORT THE GOVERNMENT'S CONTENTION THAT MR. KUHL COMMITTED THE CRIMES CHARGED

In order to assure that the Constitutional rights of criminal defendants are protected, an indictment must, inter alia, contain a "written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). It is well established that, in addition to incorporating language from the statute to set forth "the general

description of an offense," the indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487 (1888); see also Valentine v. Konteh, 395 F.3d 626, 631 (6th Cir. 2005) ("criminal charges must give a defendant adequate notice of the charges in order to enable him to mount a defense").

Both counts in the indictment currently pending against Mr. Kuhl fail to adequately describe the crime Mr. Kuhl is alleged to have committed. With regard to the place each offense is alleged to have occurred, the indictment states nothing more than that the offense allegedly occurred "in the Southern Division of the Western District of Michigan." See Indictment, Counts One and Two. The indictment fails to provide a reasonable estimation concerning the time each offense is alleged to have been committed. For both counts, the estimated time frame is the same six month period, only distinguished by the words "between" (Count One), and "From" (Count Two).

Further, both counts simply repeat certain portions of the text of the relevant statutes, including multiple alternatives by which certain elements may be satisfied and even multiple potential offenses, while ommitting other portions of the statutory text and some essential elements of the putative offenses, all without providing sufficient factual detail regarding the specific actions, communications, images, videos, "sexually explicit conduct" or minor(s) involved beyond

general overlapping time ranges and pseudonyms referencing one or more potential victims.

In addition to failing to adequately inform about such matters as place and time, Count One fails to describe the nature or type of "sexually explicit conduct" in which the 15-year-old girl allegedly engaged. Count One also fails to provide a sufficient factual basis for the interstate or foreign commerce nexus, and neglects to state the manner in which Mr. Kuhl allegedly "knowingly employed, used, persuaded, induced, enticed, and coerced" the 15-year-old girl to engage in sexually explicit conduct. This child pornography production related count further fails to mention any facts to support the allegation that Mr. Kuhl engaged in the charged conduct "for the purpose of producing visual depictions" of the 15-year-old girl engaged in sexually explicit conduct.

For instance, Count One alleges that, "[b]etween on or about May 13, and October 31, 2021, in the Southern Division of the Western District of Michigan," Defendant "knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, which depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

"Specifically, the defendant used a 15-year-old girl to engage in sexually explicit conduct and received and stored photographs of that

conduct using his Samsung and iPhone cellular phones, both of which were manufactured outside the United States." Underneath these two paragraphs, the ~~governmite~~ government cites 18 U.S.C. §2251(a),(e) and 18 U.S.C. §2256.

18 U.S.C. §2251(a) states, "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."

18 U.S.C. §2251(e) states, "[a]ny individual who violates or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years..." Subsection (e)

goes on to state the applicable penalties to individuals with prior sex offenses.

18 U.S.C. §2256 lists the definitions of terms within the chapter that encompasses 18 U.S.C. § 2251. §2256 defines "sexually explicit conduct" as "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the anus, genitals, or pubic area of any person".

Among other things, Count One does not allege or otherwise state:

(1) What materials were used to produce the alleged visual depiction(s)

2. Whether any "visual depictions of that conduct" were, in fact, ever produced at all;

3. What "sexually explicit conducted" the 15-year-old girl allegedly engaged in;

4. By what means Mr. Kuhl allegedly "received and stored photographs of that conduct";

5. How Mr. Kuhl allegedly employed, used, persuaded, induced, enticed, and/or corced the 15-year-old girl;

6. How many photographs Mr. Kuhl allegedly "received and stored"; or

7. That Mr. Kuhl knew or should have known such photographs would be transported or ~~transpo~~ transmitted using any means or facility of interstate or foreign commerce, or that such

~~photogs~~ photographs actually were transported or transmitted using any means ~~of~~ or facility of interstate or foreign commerce or mailed.

Nos. 1, 3, 4, and 7 above are essential elements of the alleged offense, yet they are ommitted entirely from Count One. All nos. comprise the bare minimum of the facts and circumstances required to make out a prima facie statement of the factual basis for the charge so as to permit Mr. Kuhl to, know and understand what specifically it is he is called to defend himself against, ascertain the evidence that grand jurors based their determination of probable cause upon will be the same used by the government at trial, and protect himself against Double Jeopardy.

The fact the indictment omits the portion of 18 USC § 2251(a)'s language that creates the interstate commerce element, other than alleging Mr. Kuhl involved the 15-year-old female by every means possible (employed, used, persuaded, etc.) to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, "which depictions were produced using materials that had been mailed, shipped ... in or affecting interstate or foreign commerce", disables Mr. Kuhl's ability to identify the particular factual bases for the charge, and fails to provide him with sufficient notice of the specific conduct against which he is called to defend. This because the indictment goes on to give the specific facts and circumstances of the offense by stating Mr. Kuhl only "used" the female to engage in sexually explicit conduct and "received and stored" photographs of that conduct using phones that were manufactured outside the

United States. Count One does not clarify who produced the pictures, who sent the pictures, how the pictures were specifically transferred, or what materials were used to produce the pictures.

Receiving and storing photographs of sexually explicit conduct involving a minor, as Count One specifically alleges, does not, on its own constitute a violation of 18 U.S.C. §2251(a), even if the materials used to receive and store such photographs were manufactured outside the United States. Furthermore, receiving and storing photographs using such materials does not establish an interstate commerce nexus without specifying how the photographs were transferred. For instance, the photos could have been transferred by methods other than phone or internet services such as a usb cable connecting each phone together, blue tooth, or simply possessing an SD or other storage device to which the photographs were already saved. As the government will obviously contend that the internet or telecommunication services are channels of interstate or foreign commerce, something Defendant does not fully agree with, a phone that does not use either service to receive and store photographs as alleged here, is not a means or facility of interstate commerce. Besides, the indictment does not allege Mr. Kuhl knew or had reason to know the alleged photographs would be transported or transmitted using any means or facility of interstate/foreign commerce, or that the alleged photographs actually had been transported or transmitted in such way. Count One says ambiguously that the depictions were produced using materials that had traveled

in or affecting interstate/foreign commerce, but then that Mr. Kuhl allegedly only received and stored photographs using phones that were manufactured outside the United States.

~~As additionally~~ Additionally, as stated in Defendant's contemporaneously filed motions, the ambiguity as to what specific act (employ, use, persuade, etc) Mr. Kuhl is alleged to have committed, fails to provide Defendant with sufficient notice of the conduct against which he is called to defend. At first, Count One alleges Defendant "knowingly employed, used, persuaded, induced, enticed, and coerced" the alleged victim, but then goes on to state specifically, that Mr. Kuhl only "used" the alleged victim. Not only does each verb constitute a separate and distinct act, they potentially constitute separate offenses.

Several Circuit Courts have addressed the meaning and applicability of the verb "use" in the context of 18 U.S.C. § 2251(a) violations. While there have been differences, the term has been held to apply where the minor is unaware of or not conciously engaged in the sexually explicit conduct that is visually depicted. Always, "use" has been applied to surreptitious conduct by the accused. However, it could possibly be incorporated if a defendant was accused of having sexual intercourse with a minor and secretly recorded it, which could be the government's contention here looking at both counts in the indictment against Mr. Kuhl. The only issue is that Mr. Kuhl is accused of receiving and storing sexually explicit photographs,

which does not make sense in the context that he allegedly "used" a minor to produce the photographs.

In ~~Dawson~~ United States v. Dawson, 64 F. 4th 1227 (11th Cir. 2023), the Eleventh Circuit held "that the adverbial prepositional phrase 'to engage in,' which limits the word 'use,' does not require the minor to be actively engaged in sexually explicit conduct." Dawson was based on the defendant surreptitiously filming his daughter and panning the camera to focus on his penis while masturbating during the videos. Specifically, the government charged Dawson for "using" his daughter, who was only 12 years old, to produce visual depictions of sexually explicit conduct, in violation of 18 U.S.C. §2251(a).

In United States v. Hillie, 227 F. Supp. 3d 57 (D.D.C. 2017), the district court dismissed the indictment against the Defendant due to its insufficiency. Specifically, the court held that "[t]he terms 'employ,' 'use,' 'persuade,' 'induce,' 'entice,' and 'coerce' - which are not statutorily defined - are 'words of common usage that have plain and ordinary meanings,' United States v. Richards, 649 Fed. Appx. 65, 67 (2nd Cir. 2016) (internal quotation marks and citation omitted), and courts have interpreted each term in the context of child-pornography-production cases to connote different types of conduct depending on the circumstances in which the alleged offense took place." Due to the indictment using all the verbs - use, employ, persuade, etc. - of 18 U.S.C. §2251(a) and other reasons, the court deemed the indictment fatally defective. Accordingly, the government brought a superseding

indictment specifically alleging that Hillie employed and used the minor victims instead of using all terms of §2251(a)'s actus reus (employ, use, persuade, induce, entice, and coerce). Just as in the Dawson case, this Hillie case also involved minors who were unaware of their involvement in the visual depictions produced. Hillie had placed secret cameras in the bathroom as well as his stepdaughters' bedroom and filming them during what the young girls thought were private moments. Under these circumstances again the proper term was "use."

As to the term "use" in context of 18 U.S.C. §2251(a) violations, the First Circuit held that "'[u]se' reaches a defendant's active involvement in producing the depiction even if the interpersonal dynamics between the defendant and the depicted minor are unknown. Iclusion of the term 'use' in the statute permits the conviction of a defendant who was actively and directly involved in producing a sexually explicit depiction of a minor even in the absence of a complaining witness or even without being able to identify the specific minor. In contrast, the terms employ, persuade, induce, entice, and coerce reach various types of external pressure that a defendant might apply on a minor to get him or her to engage in sexually explicit conduct. These terms could reach a defendant's conduct even if the pressure ~~remotely~~ were remotely applied and the defendant had no involvement in any actual filming or photography, so long as that pressure were applied with the intent to cause a minor to be visually depicted in a sexually explicit manner." Ortiz-Graulau v. United States, 756 F.3d 12, 19 (1st Cir. 2014). Although

the First Circuit's interpretation of "use" in the context of 18 U.S.C. § 2251(a) violation is done under different circumstances, it still results in a holding that to "use" the minor a defendant must be actively and directly involved in producing the depiction at issue. Such interpretation does not square with the government's allegation in Mr. Kuhl's indictment that he "used" the 15-year-old girl to engage in sexually explicit conduct and "received and stored" photographs of that conduct. By stating a specific age, it is obvious the government feels it has identified the alleged victim, which is also revealed in the small portion of discovery provided thus far, and if Mr. Kuhl were actively and directly involved in producing the alleged photos, which is consistent with the term "used" in this context, it does not make sense that he "received and stored" such photos.

In United States v. Howard, 968 F.3d 717 (7th Cir. 2020), the Seventh Circuit addressed a case involving 18 U.S.C. §2251(a) and the term "use" in such context. The facts and circumstances of Howard are very similar ~~to~~ to the Eleventh Circuit case of Dawson mentioned above. The defendant in Howard filmed himself masturbating next to his minor neice who was sleeping and fully clothed. The Seventh Circuit held that Howard had ~~not~~ "used" his neice to engage in sexually explicit conduct under the circumstances. Still, the term "use" was associated with the fact that a defendant must actually be involved directly with ~~~~ the producing of the visual depictions at issue.

The Sixth Circuit analyzed the "use" element of the sexual

exploitation statute in United States v. Wright, 774 F.3d 1085 (6th Cir. 2014). In Wright, the Sixth Circuit agreed with this Court that the "use" element is satisfied if a minor is photographed in order to create pornography. In doing so, the Court cited decisions by the Second, Fourth, and Eighth Circuits: United States v. Sirois, 87 F.3d 34 (2nd Cir. 1996) (holding that Sirois "used" minors in the context of 18 U.S.C. §2251(a) because he produced visual depictions of the minors engaged in sexual activity even though Sirois was not in the pictures himself.); United States v. Fadl, 498 F.3d 862 (8th Cir 2007) (holding that Fadl had "used" the minors consistent with 18 U.S.C. §2251(a) because he filmed the minors engaged in sexually explicit conduct whether or not Fadl had actually employed, persuaded, or induced the minors to engage in such conduct. However, evidence did support that Fadl had also persuaded, paid, or induced the minors.); United States v. McCloud, 590 F.3d 560, 566 (8th Cir. 2009) ("A defendant 'uses' a minor for purposes of §2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct."); accord United States v. Engle, 676 F.3d 405, 419 n.9 (4th Cir. 2012) (quoting McCloud, 590 F.3d at 566; Engle produced visual depictions of himself having sex with a minor and the Court held he had "enticed" the minor to engage in sex with him for the purpose of producing visual depiction of such and "used" the minor as well by producing such visual depiction.) Wright in the Sixth Circuit case had also been present or himself produced visual depictions of a minor, including surreptitiously recording the minor masturbating.

All of the above referenced cases involve circumstances where the defendant was directly involved in the production of the illegal visual depictions, and thus, "used" was the term applied. None involve a defendant "using" a minor in such context to receive and store visual depictions. Further, there is no description of how Mr. Kuhl allegedly employed, used, persuaded, induced, enticed, and/or coerced the minor at all. The terms "employ," "persuade," "induce," "entice," and "coerce" apply to conduct which most commonly occurs before the actual production to somehow influence the minor to engage in sexually explicit conduct, while with "use," such is not the case. See e.g., Sirois, 87 F.3d at 41. Seeing as the government omits the other means of actus reus in the second statement of Count One, Mr. Kuhl cannot identify the factual bases for the charge or know the conduct against which he is called to defend.

Seeing as 18 U.S.C. §2251(a) has so many terms to establish actus reus, each word must correspond to distinct conduct. Otherwise these terms are superfluous, a situation statutory interpretation must avoid. See TRW Inc v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441 (2001); United States v. Aldrich, 566 F.3d 976, 978-79 (11th Cir. 2009). Accordingly, "coerce" must mean to threaten, belittle, and/or intimidate the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; "entice" must mean to seduce the minor so as to imply he or she will be satisfied and enjoy the incident; "induce" must mean to drug or otherwise make the minor incapable of declining participation; "persuade" must mean to continuously ask and reason

with the minor, as well as groom or flatter the minor if circumstances provide such conduct; "use" must mean to choose to film the minor engaged in sexually explicit without having pressured or influenced such minor to do so, whether or not the minor is aware of such filming; and "employ" must mean to offer money or something of value beyond emotional or physical satisfaction, basically bribing or hiring the minor. If not narrowing the terms, they overlap and render each other insignificant, ~~confusing~~ causing confusion and a strong possibility that a jury will not return a unanimous verdict on the conduct establishing the actus reus element. Applicable to this matter is the rule of lenity due to the various meanings that can be interpretted from the actus reus terms of 18 U.S.C. § 2251(a). Such a reading would still hold consistent with the statue's broad reach of prohibiting every means of involving children to produce pornography, while at the same time clarifying the terms and corresponding conduct thus, assuring ~~assuring~~ a fairer and more efficient process for all parties in such cases.

The only visual depiction referenced in the discovery thus far provided is a video self-recorded by an unknown party, because such information is redacted, in which the alleged minor is touching her vagina. It is alleged to be dated October 26, 2021 and is mentioned briefly in paragraph 7 of SA Buttery's application for search warrant of the Facebook account alleged to be Mr. Kuhl's. There is no other information to explain the circumstances leading to the alleged production of this video. Accordingly, Mr. Kuhl cannot be charged for this video by the

face of Count One because it specifically alleges Mr. Kuhl "received and stored photographs," but says nothing about videos.

For these reasons, and more to follow, Count One is fatally defective and must be dismissed. Although other visual depictions are refferred to in the MSP report within the discovery, they are far beyond the time frame stated in the indictment and are also videos, except one photo allegedly depicting the minor's buttocks while wearing a thong. These videos and single photograph are alleged to have been sent by the Minor to Mr. Kuhl in May and June of 2022, therefore should not and cannot be the base of Count One.

Count Two, which charges a violation of 18 U.S.C. §2422(b) alleges: "[F]rom on or about May 13, and October 31, 2021, in the Southern Division of the Western District of Michigan," Defendant "used facilities and means of interstate and foreign commerce to communicate with an individual under the age of 18 to attempt to knowingly persuade, induce, entice, and coerce that individual to engage in sexual activity for which any person could be charged with a criminal offense.

"Specifically, the defendant used cellular telephones and Facebook Messenger, all of which were facilities of interstate and foreign commerce, to communicate with Minor 1, a 15-year-old female, in order to persuade, induce and entice her to have sexual intercourse with him, conduct constituting Third Degree Criminal Sexual Conduct under Michigan Compiled Laws §750.520d." Under these two paragraphs the government cites 18 U.S.C. §2422(b).

18 U.S.C. §2422(b) states, "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

Among other things, Count Two does not allege or otherwise state:

(1) Specifically what element of actus reus Mr. Kuhl did;

(2) How such communications constituted persuasion, inducement, etc.; or

(3) What, if any, overt act constituting a substantial step towards commission of the proscribed criminal activity Mr. Kuhl committed (an essential element of any attempt charge)

No. 3 is an essential element of an alleged attempt offense, yet it is omitted entirely from Count Two. Nos. 1 and 2 comprise the bare minimum of the facts and circumstances required to make out a prima facie statement of the factual basis for the charge so as to permit Mr. Kuhl to know and understand what specifically it is he is called to defend himself against. Count Two charges both an attempt and completed offense but omits no. 3 above, which is an essential element to an attempted offense. The Sixth Circuit

generally defines the two requisite elements of an attempt as "(1) an intent to engage in criminal conduct and (2) the performance of one or more overt acts which constitute a substantial step towards the commission of the substantive offense." United States v. Williams, 704 F.2d 315, 321 (6th Cir. 1983).

Additionally, the first paragraph states that Mr. Kuhl knowingly attempted to commit all of the actus reus elements thus, depriving Mr. Kuhl of right to know what specific conduct he must defend against and increasing risk of a conviction by a jury that is not unanimous as to what Mr. Kuhl specifically did. As is the case with 18 U.S.C. §2251(a), each term of actus reus corresponds to a distinct act, thus Count Two is defective in that it offers multiple alternatives to establish the actus reus element and even multiple potential offenses.

Instead of placing "and" before coerce, the government should have put "or." Further, the first paragraph of Count Two alleges Mr. Kuhl attempted to knowingly commit all acts under the statute to get the minor to engage in sexual activity while the second paragraph alleges Mr. Kuhl did commit all of the acts except coercion to have the minor have sexual intercourse with him. It does not clarify if the sexual activity referenced in the first paragraph is the sexual intercourse referenced in the second paragraph. Due to the differentions of attempt and actus reus elements between the first and second paragraph of Count

Two, this count must also be dismissed. See the attached indictments of United States v. Comer, 2:10 cr 292 (S.D. Ohio) and United States v. Jeremy Edington, 2:10 CR 335 (S.D. Ohio) as examples of how "or" should be used instead of "and" so as not to allege the defendant the defendant has committed all the acts of involving the minor in the context of 18 U.S.C. §2422(b) violations. (Comer - Ex. 3; Edington - Ex. 4)

Also, in Hillie, the court gave the government an oppurtunity to cure the deficiencies in the indictment, 227 F. Supp. 3d at 82, and the government did so. Although Hillie was charged with violating 18 U.S.C. §2251(a), the government had broadly alleged that Mr. Hillie "did knowingly and intentionally employ, use, persuade, induce, and coerce" the minor in the defective indictment, while the superseding indictment more precisely alleged that he "knowingly and intentionally employ and use" the minor. (Defective indictment - Ex. 1; Superseding indictment - Ex. 2) Accordingly, instead of alleging all six of the verbs used in the statute (and alleging them in the conjunctive), the superseding indictment alleged only those verbs which the government contended actually described the alleged conduct of the defendant.

Furthermore, Count Two identifies at least one 15-year-old girl as "Minor 1" however, Count One only says a 15-year-old girl thus, creating more insufficiency within the indictment because Mr. Kuhl does not know if the government contends that there is more than one victim involved. And, while the first paragraph includes the word "knowingly," as is required to establish the scienter element,

the second paragraph omits this essential word.

These are all factual details and essential elements, the absence of which renders the indictment defective. To ensure the protections of the Sixth Amendment, "facts are to be stated, not conclusions of law alone." United States v. Cruikshank, 92 U.S. 542, 558 (1875). The indictment against Mr. Kuhl does not do so. The indictment having failed to identify the conduct that allegedly constitutes each offense violates the Sixth Amendment and must be dismissed.

## B. THE INDICTMENT'S AMBIGUITY AND LACK OF FACTUAL SUPPORT FOR THE CHARGED OFFENSES ALSO VIOLATES MR. KUHL'S FIFTH AMENDMENT RIGHTS

Count One charges Mr. Kuhl with production and attempted production of child pornography in violation of 18 U.S.C. § 2251 (a) and (e). (See Ex. 1 and 2 as example that § 2251 (a) is to be cited for a completed offense while § 2251 (a) and (e) is to be cited for attempt). Count Two charges Mr. Kuhl with enticement and coercion and attempted enticement and coercion of a minor in violation of 18 U.S.C. § 2422 (b).

"A valid indictment also preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, its guarantees that a criminal defendant can only be prosecuted for

offenses that a grand jury has actually passed upon, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense." Hillie, 227 F. Supp. 3d at 70. Like the indictment Justice Jackson found defective in Hillie, the indictment here is deficient both with respect to the Fifth Amendment's right to be tried only upon charges found by a grand jury and the right to be free from the risk of double jeopardy.

"The Fifth Amendment's mandate that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury' is every American citizen's safeguard against unfounded criminal charges." Hillie, 227 F. Supp. 3d at 76 (quoting U.S. Const. Amend. 5.). "The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other ~~those~~ than those considered by the grand jury." United States v. Pirro, 212 F.3d 86, 92 (2nd Cir. 2000). "Little may be left open to construction or interpretation of an indictment" after the grand jury returns the indictment, because "[i]f the offense is not plainly stated and is made so only by a process of interpretation, there is no assurance that the Grand Jury would have charged such an offense." Van Liew v. United States, 321 F.2d 664, 669 (5th Cir. 1963).

Unless a written indictment includes the factual basis for the grand jury's probable cause finding, there is no indication (much less an

assurance) that the charge stated in the indictment is based on the same facts which the prosecutor later attempts to obtain a conviction at trial. Hillie, 227 F.Supp. 3d at 77; see also Jeffers v. United States, 392 F. 2d 749, 752 (9th Cir. 1968) (unless explicitly stated in the indictment, a court "cannot say" that the "theory now advanced by the government" as the basis for the charge is "the [same] theory adopted by... the grand jury," or that a petit jury will ultimately convict on 'the same theory' found by the grand jury). "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure[, f]or a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Russell v. United States, 369 U.S. 749, 770 (1962).

One does not commit the federal offense of production, or attempted production, of child pornography simply by capturing, or attempting to capture, a visual depiction of a nude minor. (Mr. Kuhl is accused of only receiving and storing photographs with no description as to how such photos display sexually explicit conduct) United States v. Brown, 579 F. 3d 672, 681-82 (6th Cir. 2009) (display of nude genitals and/or pubic area is not alone sufficient to satisfy "lascivious" requirement); see also United States v. Perkins, 850 F. 3d 1109, 1114, 1121-22 (9th Cir. 2017) nude "selfie" of minor sitting on bed "completely nude" and who "can be seen in the image from

her upper thigh area to the top of her forehead" with breasts and genital area "clearly visible" did not depict "sexually explicit conduct" as a matter of law and thus could not support probable cause for issuance of search warrant). The statute that makes it a federal crime to produce, or attempt to produce, child pornography (i.e. 18 U.S.C. § 2251(a) and (e)) requires much more. It should be expected that much more than receiving, let alone capturing, a nude visual depiction of a minor is required by 18 U.S.C. § 2251(a) considering the harsh penalty that applies to anyone violating this law. Anyone convicted of violating 18 U.S.C. § 2251(a) shall be punished by imprisonment for no less than fifteen years. The maximum period of incarceration that may be imposed for a violation of this statute is thirty years. Congress clearly intended that such a severe penalty, particularily the fifteen year mandatory minimum, be reserved for only very serious, unusual, and egregious violations against children. In order to violate § 2251(a), in addition to the capturing of a sexually suggestive visual depiction of a child, the visual depiction must be of "sexually explicit conduct" as defined by 18 U.S.C. § 2256. Moreover, in order to violate 18 U.S.C. § 2251(a), a person cannot merely participate in producing a visual depiction of a minor engaged in sexually explicit conduct. Rather, the person's participation must rise to the level of employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct. Additionally, the employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct must be "for the purpose of producing any visual

depiction of such conduct." It is further required that there exists an interstate or foreign commerce nexus.

Further, particular rules govern what evidence may and may not be considered in proving the lascivious nature of images. Brown, 579 F.3d at 683 (applying "limited context" test permitting consideration only of evidence directly relating to the taking of the images). Because the "lascivious" nature of an image is so dependent upon the specific composition and content of the image, as well as certain contextual evidence, it is critical for a defendant to know what specific image or images are the focus of the charges against him.

Based on the facts contained in Count One of the indictment and a careful review of the limited discovery provided so far, including brief descriptions of visual depictions allegedly located on Mr. Kuhl's phone, it is impossible that a properly instructed grand jury would have elected to charge Mr. Kuhl with violating 18 U.S.C. §2251(a) or attempting to. Further, alot of evidence provided through partial discovery should not have been presented to the grand jury because it is outside the the timeframe specified in the indictment and is inconsistent with the government's allegations.

Count One specifically alleges Mr. Kuhl "used" a 15-year-old girl to engage in sexually explicit conduct and received and stored "photographs" of that conduct. The evidence provided by the government describes only one photograph that the minor sent to Mr. Kuhl, allegedly, on May 27, 2022 at 1:32 pm, far outside the "between on or about May 13,

and October 31, 2021" timeframe specified in the indictment. Moreover, this picture is not sexually explicit conduct, but is described as a picture of the alleged minor's buttocks while she is wearing a thong. There is no description of the facts and circumstances as to why this photo was allegedly sent; specifically, nothing reveals if Mr. Kuhl requested or even suggested such photo. Seeing as this photo is inconsistent with the indictment's timeframe, it should not have been presented to the grand jury, and Mr. Kuhl does not know if it was or not. Further, the photo does not depict sexually explicit conduct and will only have confused the grand jury and prejudiced Mr. Kuhl. If the government contends it is sexually explicit conduct, Mr. Kuhl cannot protect himself from double jeopardy because he does not know if this photograph is the basis for Count One.

The only other photograph mentioned and described is within SA Buttery's Application for Search Warrant dated Feb. 8, 2022. It is alleged to be a photo sent by Mr. Kuhl to the minor of him urinating with his penis clearly visible. This picture was allegedly sent to the minor on October 30, 2021. While in the timeframe alleged in the indictment, this photo is not sexually explicit conduct involving a minor nor was it received and stored by Mr. Kuhl. If this picture was presented to the grand jury, such conduct was critically improper, highly probable to confuse or wrongly influence the grand jurors, and extremely prejudicial to Mr. Kuhl. Further, by not specifying whether this photo is a basis for Count One, or even Count Two,

Mr. Kuhl cannot protect himself against a later prosecution for this same photograph.

A video is described within SA Buttery's Application referenced in the previous paragraph as well. This video is allegedly self-recorded but it is not clear if the government contends Mr. Kuhl, the minor, or someone else recorded the video. Nor is it clear by SA Buttery's statement if it is alleged Mr. Kuhl received the video, or any of the context of the facts and circumstances surrounding the production of this video, other than the fact it is dated October 26, 2021. Seeing as this is a video and not a photograph, it does not correspond with the government's allegation in Count One that Mr. Kuhl received and stored "photographs" of the minor engaging in sexually explicit conduct. The video allegedly depicts the minor touching her vagina, but does not specify the nature of this touching (ie. masturbation, spreading of the lips, etc.). Accordingly, the deficiencies aforementioned deprive Mr. Kuhl of his rights, to be tried only upon the facts and evidence presented to the grand jury, and to be protected from double jeopardy, guaranteed by the Fifth Amendment.

Two other videos, described within the information provided by the goverment through discovery, allege to depict the minor naked in the shower and is approximately four seconds long and the other allegedly depicts the minor inserting a finger in and out of her vagina and is approximately ten seconds long. It is alleged that the minor sent these videos to Mr. Kuhl's phone. However, both are sent outside the

time frame specified in the indictment. The first ~~picture~~ video allegedly depicting the minor naked in the shower was allegedly sent to Mr. Kuhl on May 19, 2022; the video allegedly depicting the minor inserting a finger in and out of her vagina was allegedly sent to Mr. Kuhl on August 23, 2022. Further, the synopsis of texts surrounding these ~~texts~~ videos allegedly being sent do not display anything close to "use" or any of the other verbs in the language of 18 U.S.C. §2251(a). Moreover, these are two videos, not photographs. For these reasons, these videos should not have been presented to the grand jury and do not match the timeframe and facts stated in Count One of the indictment, thus Mr. Kuhl does not know if the same theory and evidence the grand jury based its finding of probable cause on is the same theory and evidence the government will present to the petit jury at trial. The ambiguity and lack of specificity in the indictment also fails to allow Kuhl to plea double jeopardy for a prosecution based on these two ~~photos~~ videos. in the future.

Of the five visual depictions ~~alleged~~ referenced above, only two are photographs and only one of those photographs was, actually in the timeframe of the indictment. and, produced by Mr. Kuhl allegedly. This photograph did not depict sexually explicit conduct involving a minor and was not "received and stored" by Mr. Kuhl. The second photograph was allegedly sent to Mr. Kuhl far outside the timeframe in the indictment and depicted a minor's buttocks wearing a thong which is not sexually explicit conduct. The other three depictions are videos, not photographs and

only one was allegedly sent to Mr. Kuhl within the timeframe specified in the indictment and the messages produced in discovery do not represent any relation to the production of this video or even who produced it. Several texts provided by the government are from Facebook Messenger but are not directly or even remotely related to the recording of this video allegedly depicting the minor touching her vagina. These Facebook texts end on July 2, 2021 and the video sent by the minor allegedly to Mr. Kuhl was done so on October 26, 2021. The only other text mentioned prior to this is also SA Buttery's Application for search warrant and is allegedly an exchange between the minor and Mr. Kuhl on September 21, 2021. During this exchange the minor allegedly told Defendant that she was not 16 or 17 and Mr. Kuhl responded "wait so you're 15?", but Buttery goes no further so as to show what, if anything, else was said. All other correspondence that has been provided in discovery allegedly occurs between the timeframe of May 7, 2022 and August 22, 2022 thus, should have not been presented to the grand jury.

Count Two alleges that Mr. Kuhl communicated with an individual under the age of 18 using means and facilities of interstate and foreign commerce to attempt to knowingly influence that individual to engage in illegal sexual activity, and that Mr. Kuhl actually did influence that individual, a 15-year-old girl, to have sexual intercourse. It states the facilities of interstate and foreign used by Mr. Kuhl to make these communications were cellular telephones and Facebook

Messenger.

However, as noted above the Facebook messages provided to the Defendant occur from April 19, 2021 until July 2, 2021. Count Two alleges the attempt to, and actual, influence of the minor by way of Facebook Messenger and cellular telephones took "from on or about May 13, 2021 and October 31, 2021. During these Facebook messages, on at least five occasions, the minor unequivocally claims she is 17-years-old. On May 28, 2021, the alleged victim specifically states: "And I only say tonight because I'm 17 and I do not want my mother know what (sic) I'm linking w someone almost her age. While some may find it reprehensible that Defendant, who was 29 years old at this time, was allegedly romantically pursuing a 17-year-old female, that is not a crime. Although the government contends this female was actually 15 at the time, Mr. Kuhl did not know this at the time and thus was not knowingly persuading a minor to engage in illegal sexual activity which is a requirement of 18 U.S.C. §2422(b). Thus, any messages occuring before Mr. Kuhl allegedly learned of the minor's true age should not have been presented to the jury and by doing so the government improperly influenced the jury and prejudiced Mr. Kuhl. The only messages occurring after July 2, 2021 still within the timeframe of the indictment, are those briefly described in SA Buttery's search warrant application which are alleged to be on three separate dates. September 21, 2021, Buttery alleges is the date of a "chat" between Mr. Kuhl and the alleged

victim that are about the victim's age as described above. On October 30, 2021, Mr. Kuhl allegedly sent the picture of himself urinating to the alleged minor, and on October 31, 2021, the minor allegedly sent Defendant a "chat message" complaining about Defendant sending the picture of himself urinating. All other correspondence alleged to be between Defendant and the minor are outlined via synopsises in the MSP report and alleged to be in a timeframe from May 7, 2022 ~~and~~ until August 22, 2022. These are phone text messages and are far outside the timeframe specified in the indictment and therefore, should not have been presented to the grand jury. If they were it was improper and unfair to Mr. Kuhl and could be presented to try and establish probable cause for the same communications and crime ~~already used to~~ but a future second prosecution although they have already been used improperly to bring this current charge, thus violating Defendant's right to be free from Double Jeopardy under the Fifth Amendment. Moreover, Mr. Kuhl cannot ascertain whether grand jury found probable cause that he attempted to knowingly influence the minor to engage in sexual activity or if he actually did influence the minor for such purpose because Count Two improperly charges both.

The Double Jeopardy Clause of the Fifth Amendment is threefold: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments

for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977). Therefore, "[d]ue process requires that criminal charges be specific enough to protect defendants from this danger of double jeopardy.

Here, the indictment is devoid of any indication as to what specific facts the grand jury concluded established probable cause of the offenses charged. It is not even clear if the government contends only one minor is the alleged victim or multiple. Neither count identifies what specifically the grand jury concluded Mr. Kuhl did. Count One does not identify what (if any) "sexually explicit conduct" any minor engaged in or was asked to engage in, what (if any) visual depictions actually showed "sexually explicit conduct," or what (if any) visual depictions were produced at Mr. Kuhl's behest, sought by him, or received by him. And Count Two improperly charges two offenses in one. There is thus no guarantee that whatever facts or theories the governments presents at trial are the same facts and theories on which the grand jury passed. Thus, Mr. Kuhl's right to be tried only upon charges found by a grand jury is not satisfied and the counts should be dismissed.

The protections established in the Bill of Rights arguably represent the portion of the United States Constitution that is most celebrated. Because the framers of the Bill of Rights "were not engaging in a mere verbal exercise," the rights established in such amendments as the Fifth and Sixth Amendments to the Constitution are important and fundamental rights that must be seriously enforced. United States v. Estepa, 471 F.2d 1132, 1136 (2nd Cir. 1972). The right of a criminal

defendant not to be prosecuted for an "infamous" crime unless an indictment has been returned by a grand jury "was devised to prevent harrassments growing out of malicious, unfounded, or vexatious accusations." United States v. Wells, 163 F. 313, 324 (D. Idaho 1908). Importantly, the right to the grand jury process stands as a safe-guard against arbitrary or oppressive action.

Due to the improprieties in the grand jury proceeding outlined above, the government significantly undermined the important independent role the grand jury is to play in our criminal justice system. Because of this misconduct by the government prosecutor, the grand jury did not act independently, fairly, or intelligently when it elected to indict Mr. Kuhl for the crimes charged in the pending indictment. By indicting Mr. Kuhl, without being properly instructed or informed about the elements of the offenses and influenced by irrelevant and unrelated prejudicial evidence, Mr. Kuhl's right to due process was seriously violated. Consequently, particularily given the entire history of this case, the grand jury in Mr. Kuhl's case failed to stand as a safeguard against arbitrary and oppressive government action. The grand jury in this unique case also failed to protect Mr. Kuhl from being harassed by unfounded and vexatious accusations being made by the government.

While Mr. Kuhl asserts that a reading of the indictment and a review of the government's evidence against him is enough to show that improprieties and misconduct occurred during the grand jury proceeding, Mr. Kuhl understands that the Court may wish to view the

the transcript of the proceedings before the grand jury prior to making such a finding. In such circumstance, Defendant points to his contemporaneously filed motion to be provided with the grand jury transcript, and requests that the government be ordered to promptly produce to Mr. Kuhl and the court a copy of all transcripts related to all grand jury proceedings involved in the instant case.

Neither of the counts in the indictment include allegations of fact that would enable this Court, or any other court, to ascertain the precise conduct or images that the government believes make up the charged offenses. The broadly-worded and factually-bare child pornography and enticement counts, none of which are tied to any particular act, conduct or image, are, as now-Justice Ketanji Brown Jackson held, "insufficient to establish the boundaries of the charged conduct, and thus it is not at all clear that a future for conduct arising out of these same charges would be barred." Hillie, 227 F. Supp. 3d at 79.

Furthermore, the manner in which the indictment is drafted does not prevent Mr. Kuhl from being punished more than once for the exact same offense in the current prosecution. The charges violate Mr. Kuhl's rights afforded to him through the double jeopardy clause of the Fifth Amendment. Put simply, "if a criminal indictment is going to be drafted to provide adequate notice, to preserve the role of the grand jury, and to avoid the risk of double jeopardy - as the Constitution demands - then 'the defendant, the judge, and the jury must be able to tell one count from another.'" Hillie, 227 F. Supp. 3d at 79

(quoting Valentine, 395 F. 3d at 637).

The government's conduct in this case in failing to properly inform the grand jury violated the fundamental principle that a grand jury must be apprised of pertinent "information so that it could make an independent judgment as to whether it was appropriate to return an indictment under the circumstances." United States v. De Marco, 401 F. Supp. 505 (C.D. Calif. 1975). By not informing the grand jury about all the elements of an offense, the grand jury "is obviously unable to obtain the complete picture to which it is entitled for a proper decision." United States v. Braniff Airways, Inc., 428 F. Supp. 579, 586 (W.D. Texas 1977). When a prosecutor engages in such misconduct, the indictment may be dismissed. United States v. Hillman, 642 F. 3d 929 (10th Cir. 2011); see also In re Grand Jury, 489 F. Supp. 844 (N.D. Georgia 1980). Therefore, for the reasons discussed in this motion, the indictment in its entirety should be dismissed.

## CONCLUSION

For the reasons discussed in this motion, Defendant [redacted] was denied his constitutional right to due process, [redacted] his constitutional right to be informed of the nature and cause of the allegations against him, and his constitutional right to be charged by an indictment returned by a grand jury. Because it is the court's duty to ensure that a defendant's constitutional rights are protected, and because courts must protect

against circumstances in which a defendant could be "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him," Russell v. United States, 369 U.S. 749, 770 (1962). Mr. Kuhl requests that this Court dismiss the indictment pending against him.

The generic allegations in the indictment against Mr. Kuhl fail to sufficiently identify the purported basis for the charges against him. The indictment, therefore, violates Mr. Kuhl's Fifth and Sixth Amendment rights as well as Rule 7(c)(1), and it must be dismissed. In the alternative, and only if the Court finds the indictment not defective, Mr. Kuhl requests a bill of particulars identifying the specific acts, conduct, and images on which the charges are based.

Mr. Kuhl requests that the Court schedule oral argument on the instant motion. Defendant submits that, due to his inexperience with drafting legal filings and confidence in ability to clearly and common-sensically provide further support of the arguments ~~forthwith~~ forthwith, as well as to ensure the fair resolution of the issues raised, especially in light of the constitutional nature of the issues and the complexity of the factual and legal issues presented, oral argument is essential.

Respectfully Submitted,

S. Kuhl 61189510

S. Kuhl March 6, 2025