RECEIVED
MAR 03 2025
KELLY L. STEPHENS, Clerk

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

Rec'd - GR
February 18, 2025 12:49 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: KB/418

United States of America,
Plaintiff,

v.

Samuel Alexander Kuhl,
Defendant.

CASE NO. 1:23-cr-44
HON. Jane M. Beckering

# NOTICE OF APPEAL

NOW COMES, Defendant Samuel Kuhl, proceeding on his own behalf to inform this Honorable Court to Appeal the following:

1) Decision to admit the FMC-Butner Report and not allow any objections.
2) Determination of Competency.
3) Decision to proceed with competency hearing and denying to honor my objections.
4) Decision not allowing me to Plea in Abatement.
5) Decision to not allow me to fire counsel and/or proceed prose, in order to raise issues such as Pretrial Conference Statement concerns.

The above referenced matters occurred today February 12, 2025. The grounds and laws for such appeal will be appropriately addressed with the Sixth Circuit Court of Appeals.

Respectfully Submitted,
S. Kuhl Feb. 12, 2025
S. Kuhl 61189510

UNITED STATES COURT OF APPEALS
SIXTH CIRCUIT

RECEIVED
MAR 03 2025
KELLY L. STEPHENS, Clerk

On Appeal From The Western District of Michigan
United States v. Kuhl Case no. 1:23-cr-44

Defendant Samuel Kuhl, proceeding pro se respectfully moves to notify this Court of a further intentional abuse of discretion by the District Court. Attached is an Order Rejecting Pleading issued by Magistrate Ray Kent in response to my Notice of Intent to Appeal, filed pursuant to Fed. R. App. P. 4(b)(1)(A)(i).

Defendant also respectfully requests this Court to allow a later Supplemental Memorandum to be filed at a later date to provide further support of the grounds for this appeal. This is necessary because Defendant has filed this proposed Supplement in the form of a petition for Writ of Habeas Corpus with the United States Supreme Court approximately three weeks ago. Thus, Kuhl is waiting to find out if the petition will be placed on the docket or returned by the clerk for some reason, at which point Defendant will get a copy off PACER or send a copy of the original returned to him.

Respectfully Submitted,
S. Kuhl Feb. 24, 2025

S. Kuhl 611895I0
1035 James P.O. Box 845
White Cloud, MI, 49349

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL ALEXANDER KUHL,

Defendant.

Case No. 1:23–cr–00044–JMB

Hon. Jane M. Beckering

## ORDER REJECTING PLEADING

The Court has examined the following document(s) received February 18, 2025 and orders the Clerk to reject the Notice of Appeal and return the document(s) to Samuel Alexander Kuhl for the reason(s) noted below:

Filer is represented by counsel. All filings should be submitted to this Court through Filer's counsel.

IT IS SO ORDERED.

Dated: February 20, 2025

/s/ Ray Kent
RAY KENT
U.S. Magistrate Judge

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

On Appeal from the United States District Court
for the Western District of Michigan

United States v. Kuhl, 1:23-cr-44 (W.D. Mich)

EXPEDITED APPEAL

Now COMES Defendant Samuel Kuhl, proceeding pro se to appeal the Orders/Decisions of the Court proceedings on February 12th, 2025. The Orders/Decisions being appealed are listed as follows:

1) Determination of Competency / Allowing competency hearing to proceed
2) Refusal to analyze my objections
3) Decision to consider competency report and deem it admissible
4) Refusal to allow me to Plea in Abatement
5) Refusal to allow me to move to have counsel removed and replaced
6) Refusal to allow me to hold Faretta hearing to proceed pro se

The reasoning and laws supporting this appeal will be addressed in the attached Memorandum.

# MEMORANDUM

## A. BACKGROUND

Kuhl was indicted by the Federal Government on April 25th, 2023 for Enticement / Coercion of a Minor - 18 U.S.C. §2422(b) and Sexual Exploitation of a Minor - 18 U.S.C. 2251(a). This indictment came although the Federal Government was aware that Kuhl hade been deemed incompetent by the Honorable Pamela Lightvoet of Kalamazoo County in case no. 22-16407 in ~~January~~ February of 2023. Further, the Federal Government was aware that Van Buren County of Michigan had brought criminal charges for CSC-Third Degree; Use of a Computer to Commit a Crime pertaining to the same allegations and victim of the Federal indictment. The proper case number for the Kalamazoo case mentioned above is 2022-2031-FH and charged Kuhl with Resisting Arrest Causing Injury; and two counts of Resisting Arrest; the finding of incompetence was entered on February 10, 2023. The Federal Government was also aware that before taking custody of Mr. Kuhl, a sentence was vacated/invalidated due to Kuhl being deemed incompetent. This case was also in Kalamazoo and in front of Judge Lightvoet. The case no. is 2021-1609-FH and the sentence was overturned due to incompetency on June 29, 2023. Kuhl was also found incompetent in the Van Buren County case referenced above in May 2023.

The Federal government removed Kuhl from state custody while waiting to be admitted to a competency restoration facility in the State of Michigan pursuant to the multiple cases mentioned above. This removal of Kuhl from state to Federal custody occurred on August 11, 2023. On this date Kuhl was brought in front of U.S. Magistrate Ray Kent, however,

due to the ongoing competency issues in the state, the government and Public Defender Parker Douglas raised the issue of competency and the hearing was adjourned until August 16, 2023. No bond hearing was held nor an arraignment.

On August 16, 2023, Ray Kent determined there was a possibility that Kuhl may be incompetent pursuant to 18 U.S.C. §4241(a). An order was entered on August 17, 2023 reflecting this determination and ordering Kuhl be evaluated pursuant to 18 U.S.C. §4241(b) and §4247(b). Kuhl was transported via motor vehicle to MCC-Chicago on August 23, 2023 for the evaluation.

On October 19, 2023, Kuhl was returned to Newaygo County Jail from MCC-Chicago by motor vehicle. A competency hearing was held pursuant to 18 U.S.C. §§ 4241(a) and 4247(d) on December 18, 2023. An Order was entered on December 20, 2023 reflecting Ray Kent's determination that Kuhl was incompetent and needed to undergo restoration treatment pursuant to 18 U.S.C. 4241(d). On December 27, 2023 an Order was entered mandating that Kuhl be transferred to FMC-Butner within ten days for the restoration treatment ordered on December 20, 2023.

On March 5, 2024, Parker Douglas filed a motion to compel Kuhl's transport to FMC-Butner because Kuhl was still in the Newaygo County Jail. This was after Kuhl and his uncle Thomas tried to file a pro se motion because of Parker's continued refusal to do so. Kuhl also filed a civil complaint attempting to remedy the issue. See Kuhl v.

Bureau of Prisons, et al., 1:24-cv-00239 (W.D. Mich. April 3, 2024).

More months passed without Kuhl being transported, during which time Kuhl's father and uncle filed Habeas Corpus petitions to try to address the issue due to Parker now completely refusing to speak with Anyone. See Kuhl v. Garland, 1:24-cv-485 (W.D. Mich. June 20, 2024) and Kuhl v. Mendham, 1:24-cv-428 (W.D. Mich. May 29, 2024). Thomas, Kuhl's uncle, also filed a petition for Writ of Mandamus with this Appeals Court which is docketed as appeal no. 24-1506.

Thomas reached out to multiple attorneys seeking help and got in touch with Esquire Mark Kriger who agreed with the multiple arguments Thomas was trying to raise. After attempting multiple times over three weeks, Mr. Kriger spoke to Parker Douglas on June 14, 2024. Parker stated he was unaware that Kuhl had not yet been transported to FMC-Butner and it was appropriate to address Thomas' concerns via a Motion with the court. On June 17, 2024, Kuhl was transported from Newaygo County Jail to FMC-Butner via a private jet.

Kuhl stayed at Butner until November 5, 2024, a total of 141 days. On November 5, 2024, Kuhl was transported from FMC-Butner to an Atlanta BOP facility by bus. November 12, 2024 Kuhl was taken from the Atlanta BOP facility to Cimarron Correctional Facility by a combination of bus and plane. December 6, 2024 Kuhl was brought back to the Newaygo County Jail from Cimarron Correctional Facility by a mixture of bus and plane.

A competency hearing was held on January 13, 2025, but was

adjourned because Magistrate Ray Kent had Kuhl removed from the court for verbally objecting to the admissibility of the report due to the newly appointed counsel Scott Graham's refusal to do so. The hearing was held on February 12, 2025 where the report was stipulated to by the prosecution and Mr. Graham, thus, Ray Kent found Kuhl competent.

After such finding Kuhl requested to proceed pro se but Ray Kent refused to address the issue. Kuhl then to have Scott Graham removed and replaced at which time Ray Kent called for a quick recess. When court resumed Ray Kent refused to address Kuhl's request for new counsel and told Kuhl that he must file a motion on the issue.

Kuhl was then arraigned but not allowed to plea in abatement. Kuhl wanted to object to the pretrial conference summary/statement but was not allowed to do so. The detention hearing, which we all know is pointless was adjourned for 5 days, and the proceeding was concluded.

## B. LAW AND ARGUMENT

Kuhl's appeal is based upon a violation of Equal Protection, Due Process, IDRA, constitutional right to speedy trial, statutory right to a speedy trial, Federalism, comity, ~~Ten~~ Tenth Amendment, abstention doctrines, pre-emption, and abuse of discretion. Each of the previously stated Orders/Decisions being appealed will be addressed below.

DETERMINATION OF COMPETENCY/PROCEEDING WITH COMPETENCY HEARING

The competency proceeding and treatment was not in compliance with the Insanity Defense Reform Act (IDRA). The initial evaluation lasted from August 23, 2023 until October 12, 2023 when Dr. Rao of MCC-Chicago told Kuhl that his evaluation was done and the U.S. Marshals had been notified. This exceeded the maximum 45 day limit allowed by 18 U.S.C. §4247. It also went beyond the date requested by MCC-Chicago to complete the evaluation, which was October 9, 2023. See ECF No. 22 of the docket for the originating case no. 1:23-cr-44, which is a letter requesting the 15 day extension allowed under 18 U.S.C. §4247(b).

This letter also states the MCC-Chicago evaluation report would be routed to the court by October 30, 2023. However, the report was not by the court until November 20, 2023 and was dated November 8, 2023. 18 U.S.C. §4247(b) does not allow for a period of evaluation and a separate period to prepare and issue a report. Regardless the time limits were violated and this is a pattern of statutory violation by the government which continues to go unpunished. See United States v. Gagan, 95 F. Appx. 941 (10th Cir. 2004); United States v. Taylor, 353 F. 3d 868 (10th Cir. 2003); United States v. Murphy, 241 F.3d 447 (6th Cir. 2000); United States v. Fuller, 86 F.3d 105 (7th Cir. 1996); United States v. Miranda, 986 F.2d 1283 (9th Cir. 1992); United States v. Conlan, No. 12-50694 (5th Cir. Jun. 3, 2013); United States v. Montelongo, 32 F. 3d 565 (5th Cir. July 25, 1994); United States v. Neal, 679 F. 3d 737 (8th Cir. 2012); United States v. Gould, 6:13-mj-1140-ORL-TBS (M.D. Fla. June 18, 2013); United States v. Degarmo, 450, F.3d 360 (8th Cir. 2006); United States v. Riley, 3:17-cr-00084 (M.D. Tenn.

Mar. 1, 2018); White v. United States, 273 Fed. Appx. 559 (7th Cir. 2008); United States v. McCary, 2:21cr489-MHT (WO) (M.D. Ala. Aug. 16, 2022); United States v. Scotland, 5:23-cr-00111-M (E.D. N.C. Feb. 13, 2024).

Here, Kuhl was only in custody pursuant to the competency evaluation order and not under the Bail Reform Act. It is quite reasonably the interpretation of multiple courts that the maximum period of 45 days allowed under 18 U.S.C. 4247(b) applies to the commitment of the defendant to the Attorney General's custody and not just the evaluation period. United States v. Brown, 627 Fed. Appx. 558 (7th Cir. 2015); see also United States v. Fuller, 86 F.3d at 105 ("Section 4247(b), when read in conjunction with section 4241, fixes a 30-day limit on pretrial commitments for determinations of competency."); United States v. Rodriguez, 3:21-CR-2110-BTM (S.D. Cal. Oct. 13, 2021); and United States v. Urban, 2:20-CR-149-JTM-JPK (N.D. Ind. May 26, ~~2023~~ 2022). Kuhl was in custody from August 11, 2023 until December 20, 2023 under an evaluation order that allowed a maximum of 45 days detention. As with the issue of the evaluation lasting longer than statutorily permitted, this issue ~~goes~~ has gone on for far too long. Dismissal of this case will deter such negligent violations of the IDRA by the government and hopefully set precedent to clarify the provisions of IDRA by Congress.

Already it has been shown the government consistently violates the IDRA without consequence. Other cases face similar issues as mentioned above, but unfortunately were not raised due to non-zealous, rubberstamp, incompetent, court pet counsel, as is the issue

here in Kuhl's case. United States v. Cornelius, 19-00035-04-CR-W-HFS (W.D. Mo. Apr. 29, 2024) (report for evaluation under §4241(b) and §4247(b) not issued to court until almost 4 months after the evaluation was ordered); United States v. Farley, 6:23-CR-13-REW-HAI (E.D. Ky. May 23, 2024) (evaluation under §4241(b) and §4247(b) took longer than 45 days); United States v. Livingston, 6:23-cr-43-CHB-HAI-2 (E.D. Ky. July 1, 2024) (took almost 3 months for report of §4241(b) and §4247(b) evaluation to be provided to the court); United States v. Elburki, 19-00406-01-CR-W-RK (W.D. Mo. Sep. 3, 2024) (took over 2 months to get evaluation report for §4241(b) and §4247(b) evaluation)

The violations of the IDRA do no stop here. On December 18, 2023, the district court held a competency hearing without, notifying Kuhl, allowing him to be present, and providing him a copy of the report from MCC-Chicago. "The statutory right to notice and an oppurtunity to be heard arises when the district court is tasked with making a determination on whether a defendant is competent to proceed." United States v. Zavesky, 839 F.3d 688 (8th Cir. 2016); United States v. Gillenwater, 717 F.3d 1070 (9th Cir. 2013) (held that a defendant's right to testify at his pretrial competency hearing is of a constitutional magnitude); Sturgis v. Goldsmith, 796 F.2d 1103 (9th Cir. 1986) (defendant has a constitutional right to be present at a competency hearing); United States v. Samuels, 24-20273 (E.D. Mich. Oct. 18, 2024) ("A defendant whose mental competency to stand trial is in question has a constitutional right to be present at the hearing to determine competency,

and the hearing may not be conducted in the defendant's absence. 18 U.S.C. § 4247(d)"); United States v. Hurd, 21-20757 (E.D. Mich. Dec. 12, 2023)

Kuhl's right to be present was not waived nor ~~necessary~~ properly disregarded by the court. It was an abuse of discretion by Magistrate Ray Kent and was not harmless. Evidence would clearly been presented by way of family testimony, court records, and personal testimony that everything Kuhl has been saying is true and that he is not incompetent. Further, Kuhl would've raised the issue he was already in State custody awaiting transportation to competency restoration treatment at a secure medical facility by way of court order, thus the Federal Government should abstain from this federal matter and allow the State ongoing proceedings to continue. The court, government and Public Defender conspired to deprive Kuhl of being able to testify and present evidence so they could further fabricate this matter and detain him as incompetent to discredit and silence Kuhl while they carried out this evil plot.

From the fight at MDOC and subsequent stealing of Kuhl's draft and suits against the CPS, to the lie about a SIM card being taped to a phone during the Wyoming stop, to Beckering being a member of the Michigan Court at the time of denying my mom's appeal to get her kids back, to the CPS refusal to intervene in a clearly botched adoption, to the name of Sarah's secret lover being Huey the same name of my Great Grandfather who Don Tyson was jealous of, to my younger sister getting so far mind

manipulated because she has the same name as my Great Grandma, Elizabeth, to the fact Robert Holmes Bell who denied my mother's suit against CPS in 1989 in the Western District of Michigan being related to Curtis Bell the civil court judge who threw out my uncle's car suit, to the fact when David cried help they tossed him in the looney bin until he shut up, to the fact its being held true today that slowly but surely white people are being shunned, shamed and stripped of their rights, to the fact no white Kuhl nor Hamrick is left! Shall I keep Going?

The IDRA violations continued. Kuhl was found incompetent on December 18, 2023 and an Order was issued on December 20, 2023 committing him to the custody of the Attorney General under 18 U.S.C. §4241(d). No detention hearing was held, thus Kuhl was detained in Federal custody solely because he was deemed incompetent. Although Sixth Circuit precedent clearly holds that an incompetent defendant's initial commitment under 18 U.S.C. §4241(d) is valid only up to 4 months, see United States v. Baker, 807 F. 2d 1315 (6th Cir. 1986), Kuhl was held in Federal custody pursuant to the December 20th Order until February 12, 2025! What a coincidence Kuhl was not allowed to file a pro se motion, Parker Douglas refused to raise the issue, family members' habeas corpus petitions were dismissed, not on the merits, but because the issues addressed must be raised in the original proceedings. How Convenient?!?! Be sure to dot your i's and cross your t's!

After Kuhl was committed pursuant to 18 U.S.C. §4241(d) on December 20, 2024, he sat in the Newaygo County Jail for 6 months receiving no restoration treatment until June 17, 2024 when he was transferred to FMC-Butner. This indeterminate period of non-hospital confinement being read into the statute by courts is unconstitutional and runs afoul of Jackson v Indiana, 406 U.S. 715, 92 S.Ct. 1845 (1972)'s ruling by the Supreme Court. The fact that Kuhl was held in a non-treatment facility beyond the 4 months allowed for the treatment itself, United States v. Donnelly, 41 F. 4th 1102 (9th Cir. 2022); see also United States v. Carter, 583 F. Supp. 3d 94 (D.D.C. 2022) and United States v. McCarthy, 703 F. Supp. 3d 1377 (M.D. Fla. 2023), violates the IDRA and the appropriate remedy is dismissal and/or release.

As stated by the Honorable Roy Dalton, Jr. in McCarthy, this practice and pattern of indefinite pre-hospitalization confinement has swallowed the rule. Despite the issue ongoing for at least 20 years, the Attorney General and BOP have done little, if anything at all, to resolve it. The Federal government was aware Kuhl had been found incompetent in multiple State criminal proceedings that were ongoing and was waiting to go to a secure State mental health facility specifically authorized to provide competency restoration treatment to criminal defendants. Yet, the Federal government decided to indict Mr. Kuhl and then remove him from State custody and disrupt the entire proceedings to prosecute him federally based on the same conduct alleged in the State court. The

Federal government did so knowing the constitutional issues and excessive delays in their own handling of incompetent defendants.

Regardless, the evaluation at FMC-Butner was conducted in violation of the four month limit allowed by the IDRA. Thus, the evaluation's report was prepared in violation of the IDRA and is therefore inadmissible. Not to mention Dr. Dubois has a familial relation to detective Jon Stolsonberg and was coercively questioning Kuhl for investigative purposes on Stolsonberg's behalf.

For these reason's Kuhl's custody is illegal and the competency hearing of February 12, 2025 is in violation of the IDRA and illegal as well. Thus, the court's determination is null and void and Kuhl must be released. This relief is necessary to provide incentive to the Federal government, as a whole, to stop violating the IDRA and those least capable of advocating for themselves. It will hopefully cause the BOP to better allocate funds and staff to provide adequate restoration services.

Unfortunately, as noted above, the issue here is not of rare occasion. 18 U.S.C. §4241(d) has been upheld as constitutional only because of its strict limited duration and reasonable relation of its purpose to the commitment. "We hold that §4241(d) comports with Jackson's constitutional mandate. We base this conclusion on our analysis of the two factors articulated by the Jackson Court: (1) the duration of the defendant's commitment, and (2) the closeness of the fit between the commitment and the purpose for which such commitment is designed." United States v. Strong, 489 F.3d 1055 (9th Cir. 2007); United States v. Donofrio, 896 F.2d 1301 (11th Cir.

1990) ("The due process requirements of Jackson are met because the statute itself requires that the period of commitment be reasonable for that purpose. The statute limits confinement to four months, whether more time would be reasonable or not.")

This most logical common sense reading of the statute has been abandoned to appease the government and unconstitutionally deprive incompetent defendants of their liberty and medical treatment for indefinite periods of time. If there is no limit on the prehospital confinement then §4241(d) is unconstitutional. United States v. Smith, 764 F. Supp. 2d 541 (W.D.N.Y. Feb. 9, 2011).

Kuhl was already court ordered to undergo competency restoration in a State facility before being indicted and subsequently removed from that process. It is congressionally authorized for the Attorney General to contract with State facilities to hospitalize incompetent defendants committed under 18 U.S.C. §4241(d). See 18 U.S.C. §4247(i)(A). Despite the decades long issue within the BOP of timely hospitalizing and treating incompetent defendants, the Attorney General has yet to utilize this solution authorized by Congress. United States v. Reeves, 690 F. Supp. 3d 531 (W.D. NC. Sep. 5, 2023). Not only did the Federal government interrupt an ongoing State criminal proceeding and preempt the State's competency evaluation process, but did so knowing the serious unconstitutional delays with such matters within the Federal system.

This is a pattern of prosecutorial misconduct and deliberate

indifference to the constitutional rights of defendants going through competency proceedings and the laws of the United States under IDRA. See e.g., plus United States v. Mouton, 4:20-CR-00501 (S.D. Tex. June 7, 2023); United States v. Belgarde, 3:21-cr-58 (D. N.D. Oct. 27, 2023); United States v. Carter, 17-CR-190 (E.D. Wisc. Oct. 16, 2019); United States v. Romero, 883 F.3d 1151 (9th Cir. 2016); United States v. Kabinto, CR-09-1079-PCT-DGC (D. Ariz. July 31, 2009); United States v. Hatter, 14-cr-1811 (S.D. Cal. Mar. 19, 2015); United States v. Dellinger, 980 F. Supp. 2d 806 (E.D. Mich. 2013); United States v. Black, 21-CR-009-GKF (N.D. Okla. Nov. 22, 2022); United States v. Hernandez-Amparan, 600 F. Supp. 2d 839 (W.D. Tex 2009); United States v. Lewis, 484 F. Supp. 2d 380 (W.D. Penn. Mar. 22, 2007); United States v. Pendleton, 665 F. Appx 836 (11th Cir. 2016); United States v. Beler, 19-mj-100 (BAH) (D.D.C. Nov. 6, 2019); United States v. McCall, 1:21-CR-00474-UNA (N.D. Ga. Dec. 12, 2022); United States v. Castrellon, 22-cr-00112-CMA-GPG (D. Colo. Mar. 1, 2023); United States v. Morales, CR 07-147-TUC-RCC (D. Ariz. Feb. 27, 2008); United States v. Degideo, CR 04-100 (E.D. Penn. May 18, 2004); United States v. Robles-Otanez, 19-cr-296 (E.D. Pa. Oct. 28, 2020); United States v. Sparks, 885 F. Supp. 2d 92 (D.D.C. 2012); United States v. Perry, 116 F. 4th 578 (6th Cir. 2024); United States v. Delorme, CR-19-2322 (D. N.M. Nov. 7, 2023); United States v. Olivas, 21-MJ-2051-MAT (W.D. Tex. Nov. 17, 2022); United States v. Lara, 1:21-cr-01930-MLG-1 (D. N.M. May 5, 2023); United States v. Leusogi, 2:21-CR-32-TS (D. Utah Oct. 19, 2022); United States v. Raja, 1:21-cr-00368-TWP-MG-2 (S.D. Ind. May 17, 2023); United States v. Sisk, 1:21-cr-00114-JMS-

KMB (S.D. Ind. Feb. 8, 2024); United States v. Calderon-Chavez, 688 F.Supp. 3d 472 (W.D. Tex. 2023); United States v. Tewid, 86 Fed. Appx 224 (9th Cir. 2003); United States v. Yazzie, WL 2772636 (D. Ariz. 2006); United States v. Hernandez-Alvarado, CR-11-0777-PHX-GMS (June 20, 2011 D. Ariz.); United States v. Wazny, 3:21-CR-247 (M.D. Pa. Dec. 1, 2022); United States v. Lee, 1:21-CR-20034 (S.D. Fla. Dec. 27, 2022); United States v. Lazaro-Cobo, CR-10-846-PHX-JAT (D. Ariz. Oct 20, 2011); United States v. Alvarez-Dominguez, CR 18-00589-TUC-JAS (D. Ariz. Jan. 15, 2020); United States v. Barnes, 22-CR-00297-SEH (N.D. Okla. Sep. 3, 2024); United States v. Marquez, 1:21-cr-01510-KWR-1 (D. N.M. May 16, 2024); United States v. Brodeur, 1:24-cr-10051-JEK (D. Mass. Sep. 19, 2024); United States v. Segers, 4:22-cr-350 (S.D. Tex. Apr. 30, 2024); United States v. Magassouba, 544 F. 3d 387 (2nd Cir. 2008)

The list could go on, but the Court hopefully gets the point. As held in Magassouba, once the 4 months is up under §4241(d), it is the Attorney General who lacks authority to maintain custody of a defendant absent a court authorized extension under §4241(d)(2)(A) and must return the defendant to the status quo ante his §4241(d)(1) confinement. Here, Kuhl was not detained under the Bail Reform Act, but solely under the §4241(d) commitment order. Thus, Kuhl's status quo ante this order was the Kalamazoo County jail and actually a Michigan state Forensic of Psychology Center. By this time Kuhl could've been restored and been re-sentenced in Kalamazoo County to time served as was the presumed sentence once Kuhl was competent. The bond for the Van Buren case

would've been posted and Kuhl would've been released and allowed to better prepare his defense and prove that this entire matter is retaliatory and selective, as well as vindictive.

These numerous unconstitutional violations of the IDRA cannot continue to be allowed with no consequence or deterrence. Thus, Kuhl's case should be dismissed and/or he immediately be released.

Incorporating the above-mentioned IDRA violations and circumstances, Kuhl has also suffered a violation of his due process rights. Obviously, the unconstitutional decision of the Federal government to disrupt the ongoing State proceedings and competency treatment/determination and prosecution deprived Kuhl of his due process rights afforded him in the state legal system.

Then, the fact that Kuhl was held all this time solely based on a finding of incompetency and no detention hearing and a de facto ban on accessing the court to address the issues, also violated Kuhl's right to due process. Further, every step of the competency process was not properly executed. The initial competency exam exceeded the 45 day limit and the report was not issued until over a month latter. And then the hearing on that matter was not held until a month later, which Kuhl was not made aware of or allowed to attend. This excessive delay was unnecessary seeing as the parties simply stipulated to the report, which by the way, Kuhl was never given a copy of. Kuhl left several messages to Parker Douglas complaining of these things, but was completely ignored.

Further, the delay in transporting Kuhl to FMC-Butner after the §4241(d)

commitment order was a violation of due process. Looking to 18 U.S.C. 4241(d), the bottom statement says "If, at the end of this time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." This statement applies to the entirety of §4241(d), and seeing as Kuhl's mental condition had not been determined to have improved within the reasonable period of not to exceed 4 months as specified in §4241(d)(1), his case should have been dismissed and Kuhl be subject to section 4246 or 4248. However, the State of Michigan had a detainer and judicial order mandating his custody and mental health treatment; thus Kuhl could not be civilly committed because suitable arrangements for State custody and care were available. See 18 U.S.C. §§ 4246 and 4248. Also, consistent with the rule of superfluities, after the four months expired and no determination had been made as required by §4241(d)(2)(A) the case should've been dismissed pursuant to §4241(d)(2)(B). See United States v. Carter, 583 F. Supp. 3d 94 (D. D.C. 2022). As noted in Carter, such interpretation is consistent with the Supreme Court's ruling in Jackson v. Indiana (1972).

Kuhl was also held at FMC-Butner in excess of the 120 days allowed and the report nor evaluation were complete within the permitted time frame. Dr. Dubois continued to question Kuhl beyond October 15, 2024 although Kuhl specifically told Dubois he did not wish to speak with Dubois. Still the doctor blocked the cell door

and peppered Kuhl with questions and degrading remarks. These questions involved matters of which Stolsonberg was interested and instructed Dubois to investigate. Such matters had nothing to do with the CPS or Sexual Exploitation or Enticement/Coercion, but instead focused on Kuhl being shot, allegedly possessing debit cards, and other matters. After that Kuhl again declined to speak with Dubois another day and came back to his cell to find Dubois digging through Kuhl's legal correspondence with attorneys as well as legal research. These things occurred outside of the 120 day strict time limit under §4241(d)(1).

Accordingly, the evaluation, report and subsequent competency hearing were not only in violation of statutory law, but also Kuhl's constitutionally protected due process rights. For these reasons the decision must be vacated, case dismissed, and Kuhl released.

Incorporating the previously stated facts and circumstances, the due process violation is further heightened due to the fact that the indefinite period of pre-hospitalization being allowed under §4241(d) is not reasonably related to the purpose of the commitment. Several of the cases cited above support this argument such as, Leusogi; Hernandez-Amparan; Sparks; Lara; Wazny; Reeves; Donnelly; McCarthy; Calderon-Chavez; Olivas; Carter (D.D.C. 2022); Carter (E.D. Wis. 2019); Black; Dellinger and many others.

Furthermore, the manner in which the BOP is earmarking beds, at the direction of the government, for Ninth Circuit defendants ahead of all other defendants across America including Kuhl, constitutes a

violation of equal protection. This is occuring to appease the government in light of the Ninth Circuit's ruling in Donnelly. See Reeves, 690 F. Supp. 3d at 537 and United States v. Romero, 5:21-CR-436 (E.D.N.C.). Such unconstitutional conduct cannot be allowed to go unpunished and Kuhl should be compensated by at least granting the requested relief of dismissal and release.

The right to a speedy trial has also been violated here both under the Sixth Amendment to the US Constitution and the Speedy Trial Act (STA). There are four factors to consider when analyzing a Sixth Amendment Speedy trial claim. 1) length of the delay; 2) reasons for the delay; 3) the defendant's assertion of his rights; and 4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1971). However, affirmative proof of particularized ~~delay~~ prejudice is not essential to every speedy trial claim. Doggett v. United States, 505 U.S. 647 (1992).

It has now been over 22 months since Kuhl was indicted on April 25, 2023, well over the threshhold of one year to establish the first Barker factor.

The reason for this excessive delay is mainly attributable to the government. Due to an intentional delay and lack of diligence, Kuhl was not even taken into a Federal Court until almost four months later on August 11, 2023. The federal government was very aware of all of Kuhl's situation in the State system but chose to delay bringing Kuhl to court in an efficient manner to conduct further investigation and fabrication of evidence and falsification of records. Also, was the

government's intent to be able to cheaply transport Kuhl at a time convenient for the government.

Further, the government is responsible for all delay between August 11, 2023 until December 20, 2023 except for 45 days which is the maximum period allowed for Kuhl's mental health evaluation. This period of approximately 4 1/2 months, is mainly the government's fault (approximately 3 months).

Once Kuhl was ordered committed under 18 U.S.C. §4241(d), it took the government 6 months just to transfer Kuhl to FMC Butner on June 17, 2024. With the above mentioned delays, the government is solely responsible for an entire delay exceeding one year by the time Kuhl was even transferred to FMC-Butner.

The 120 day period of hospitalization (although the entire commitment is only valid up to 120 days) expired on October 14, 2024 but Kuhl stayed an extra 3 weeks at FMC-Butner. Transporting Kuhl back to the Western District of Michigan took another month as he left Butner on November 5, 2024 and arrived at Newaygo County Jail on December 6th, 2024. Of this almost 6 month delay, only 4 months can be held as Kuhl's responsibility partially. The other time of about 41 days is solely the government's responsibility. At this point, over 15 months of the delay is solely attributable to the government.

Originally, a competency hearing was scheduled for December 18, 2024 but due to unavailability of a government witness the hearing

was pushed back to January 13, 2025 against Kuhl's wishes. This almost four month delay is the government's fault. Due to the Counsel's comradere to Kuhl's adversaries, the concerns Kuhl wanted to be addressed were not done so, but instead counsel attempted to object to the report's findings. Kuhl was forced to voice his concerns and dissatisfaction with the counsel's conduct himself, which of course these evil people could not let stand and had Kuhl removed. They expect to move this judicial system with the accused as if they are leading pigs or cattle to slaughter. Binding themselves by silent oaths and agreeing to move things along as quickly as possible, paying bonuses to defence counsel for every plea deal. As if it is not known Flavio, the CPS, and other Elites are behind this whole matter. These people don't even know the law! The magistrate, prosecutor, nor defense counsel could even assert that they knew whether a defendant has a right to be present at a competency hearing! Hello! 18 U.S.C. 4247(d)! HELLOOOO! This magistrate tried to say the issue of IDRA violation, due process, and such are all part of a speedy trial argument! No they aren't! Ray Kent said this at the competency hearing Feb. 12, 2025 Anyways, Kuhl was removed and Scott Graham asked to adjourn the hearing of January 13th, 2025 for 30 days without raising any of Kuhl's issues and against Kuhl's wishes. The 30 days between January 13 and Feb. 12, 2025, the Court will try to say is Kuhl's fault. Regardless, of the delay exceeding 22 months at least 16 months are solely the government's fault.

Then Scott Graham has the audacity to call Kuhl's arguments frivolous but moves to adjourn the detention hearing 5 days! Everyone knows Kuhl won't get a bond! Cut the Crap! Again, just all of the comrades putting on a show with Kuhl as the clown in this Circus!

As far as the third factor, the record speaks for itself as to Kuhl's continuous assertion of his speedy trial right. Even now Kuhl has given counsel's several of motions challenging the sufficiency of the indictment, demanding discovery, demanding a Bill of Particulars, but counsel has filed none. Kuhl told Scott back in November to start preparing for trial and to also be ready to raise the issues brought in this appeal immediately so they can be litigated and decided as quickly as possible, so that if need be Kuhl can proceed to the next required steps. Instead, Scott has just gotten a small portion of heavily redacted discovery in mid january at least that's all he'll give Kuhl. How can someone go to trial when these people are spoonfeeding discovery conspiring to block Kuhl's ability to file, and placing him in a facility where he can not be assisted by any loved ones in investigating this matter because they have a post card only mail policy! Kuhl's family is getting more by FOIA requests than Kuhl can get from Scott Graham. This is ridiculous!! Dismissal is appropriate and demanded!!

There is the obvious prejudice Kuhl has suffered being oppressive pretrial incarceration and the anxiety and concern of unresolved

criminal charges. Here, Kuhl's defense has also been prejudiced as this is alleged to have happened over 3 years ago and Kuhl's memory cannot recollect such old situations as well as fresh. Further, the government is continuing to investigate Kuhl and fabricate evidence, force their henchmen counsel upon Kuhl to withhold evidence and Block Kuhl's access to the court. Regardless, a showing of actual prejudice is not required. See Doggett v. United States, 505 U.S. 647 (1992).

Weighing these factors, this matter should be dismissed for a violation of Kuhl's Sixth Amendment right to a speedy trial.

By removing Kuhl from the State custody and disregarding the State judicial orders mandating Kuhl's competency treatment in a State facility by State laws and procedures was a violation of the Tenth Amendment, Federalism, comity, and the abstention doctrines. The federal government also pre-empted the state government's competency procedure and determination which interrupted, halted, and dictated the state proceedings.

As stated in Bond v. United States, 564 U.S. 211, 131 S. Ct. 2355 (2011), an individual has the right and standing to challenge government actions or laws that cause that individual injury if that action is taken in excess of the authority that federalism defines. The separation of powers between the National government and State governments enhances freedom, first by protecting the integrity of the governments themselves, and second by protecting the people, from whom all governmental powers are derived.

See Alden v. Maine, 527 U.S. 706, 758, 119 S. Ct. 2240 (1999).

Kuhl suffered and continues to suffer injuries due to the federal government's actions of halting, interrupting, and dictating his ongoing State criminal proceedings. Also, the rights and interests of the State of Michigan have been infringed upon under these circumstances. The due process rights due to Kuhl in his State court proceedings were stripped from as well as his right to a speedy trial, counsel of choice, and statutory laws by the federal government's actions.

As far as Michigan, they have the right and interest to enact, enforce, and prosecute its criminal laws and the federal government has nothing like a police power. Michigan has also the right and interest to adjudicate its own judicial orders and proceedings, from the interruption of the federal government. This is especially true when the judicial orders and proceedings are criminal in nature.

The Supreme Court repeatedly referenced New York v. United States, 505 U.S. 144, 112 S.Ct. 2408 (1992) in Bond when holding that federalism and the Tenth Amendment secures to citizens the liberties that derive from the diffusion of sovereign power. Kuhl was subject to the laws and proceedings of Michigan as to competency which are clearer and more in line with the Constitution than those of the IDRA. A maximum period of 15 months or 1/3 of the maximum penalty of the crime charged (whichever is lesser) is the strict period of time an incompetent defendant must be restored after being found incompetent.

If not, the individual can be reprosecuted or subject to civil commitment. The due process and statutory protections of Michigan were stripped from Kuhl by the government's actions. Additionally, Kuhl's family spent the majority of their money to represent Kuhl in the Van Buren case and the appealout of Kalamazoo County. Van Buren was initially offering a sentence of approximately 6½ to 9 years with ~~a~~ a maximum penalty of 15 years for the CSC-Third Degree charge. Now the federal government has interrupted that process and brought two charges based on the same conduct as the Van Buren case. However, the fed charges carry draconian mandatory minimums of 10 and 15 years with maximum penalties of life and 30 years. As Kuhl's family had already hired two state attorneys they now cannot afford an attorney for Kuhl in the federal matter which carries far more time. Thus, Kuhl's right to counsel of choice has been infringed upon by the conduct of the Federal government. The federal government stopped the state proceeding and removed Kuhl from that process completely disregarding the judicial orders in place, despite knowing Kuhl had been found incompetent and the serious unconstitutional delays and issues concerning the IDRA within the federal government. This completely delayed any progress of Kuhl being restored and brought to trial speedily, thus violating his speedy trial right.

The abstention doctrines such as Younger are based on the principles of Federalism, Comity and Separation of powers. Yet,

courts consistently only weigh the rights and interests of the States when choosing to abstain from State proceedings but do not consider the rights and interests of the individual. However, as clearly noted above, it is also the individual who has rights and interests protected by the Tenth Amendment, federalism, comity, and the separation of powers. Thus, when the federal government's interruption of a state criminal proceeding causes ~~suffe~~ injury to the accused he should have the right to challenge that action and the federal government should abstain.

"Younger and these cited cases express equitable principles of comity and federalism. They are designed to allow the State an oppurtunity to set its own house in order when the federal issue is already before a state tribunal." O'Neill v. Coughlan, 511 F.3d 638 (6th Cir. 2008) referring to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971). This Court has held that exercise of Younger abstention is appropriate when the state proceeding is currently pending, involves an important state interest, and affords the plaintiff ~~plaintiff~~ an adequate oppurtunity to raise constitutional claims. Coles v. Granville, 448 F.3d 853, 865 (6th Cir. 2006). Although courts say that ~~yo~~ Younger abstention does not apply to federal criminal prosecutions, the cases used to support their analysis are inapposite to the circumstances here.

A case exactly similar to this one here does not exist to Kuhl's knowledge in which the argument of abstention was made. The only case closely similar is that of United States v. Esposito, 371 F. Supp. 3d 288

(M.D. La. 2019). However, Esposito nor the court seemed to analyze the rights and interests of Esposito, but only those of the Louisiana State Government and Louisiana itself. Also, Esposito did not claim that the federal prosecution had in any way interrupted or interfered with state criminal proceeding. Esposito had not been found incompetent though in the State and had not been under a judicial order to undergo state competency restoration treatment in a state facility. Further, it seems Esposito's counsel of choice was retained for both matters or chose to defend against both, thus Esposito's Sixth Amendment right to counsel of choice had not been infringed upon the federal government's prosecution. For these reasons, abstention in this case is even more appropriate, but let it be noted Kuhl feels the district court in Esposito made the wrong ruling in that case.

Additionally, the cases cited by the court in Esposito were all inapposite. United States v. Geiger, 263 F.3d 1034 (9th Cir. 2001) concerned a federal prosecution brought after the state criminal proceeding in the Alaska court had concluded. Abbate v. United States, 359 U.S. 187, 79 S. Ct. 666 (1959) also dealt with a federal prosecution being brought after a state court conviction for the same act. These two cases were not based in abstention, but instead upon Double Jeopardy arguments. The case of United States v. Dicter, 198 F.3d 1284 (11th Cir. 1999) also misses the mark because it refers to an ongoing state investigation to revoke the defendant's medical practice license not an ongoing state

criminal proceeding for the same conduct. United States v. Burcham, 91 F. Appx820 (4th Cir. 2004) relates to revocation proceedings of federal supervised release based on a releasee's conduct that violated his federal probation also being prosecuted under state law. The defendant sought to have the federal government abstain from holding the revocation hearing because such proceeding would be used against him in his criminal state case. In this matter the federal government had jurisdiction first and authority over the defendant as a federal supervised releasee and were obligated to hold the releasee liable for violating supervised release regardless of the state pressing criminal charges for such conduct violating state law. Another case cited to by the Esposito court is United States v. Pirtle, CR02-1891 BB (May 19, 2003 D. N.M.). Pirtle is inapposite because it discusses the state pursuing collection of due child support but does not state whether the State actually had an ongoing criminal proceeding for that due child support. Also, the State collection supposedly began after the federal prosecution for the child support had already begun. United States v. Long, 324 F.3d 475 (7th Cir. 2003) was also based on a federal indictment brought after a state conviction.

Due to the fact Kuhl had an ongoing state criminal proceeding, multiple actually, he'd been found incompetent and was under State judicial orders to undergo competency treatment in accordance with Michigan laws and procedures, the Federal government exceeded its authority and overstepped the boundaries set by Federalism, comity,

separation of powers, and the Tenth Amendment. Thus, the competency determination should be void and vacated, this matter be dismissed, and Kuhl be released back to State custody.

The district court and Magistrate Ray Kent abused his discretion by specifically mandating that only counsel be present at the competency hearing on December 18, ~~2024~~ 2023. This was a clear violation of 18 U.S.C. § 4247(d) and Kuhl's due process and equal protection rights. It also violated his first Amendment right and Sixth Amendment right. Under the First Amendment Kuhl had the right to free speech and under the Sixth Amendment had a right to confront the witnesses against him and obtain and present his own witnesses. Kuhl also had the right to question why he'd been removed from his ongoing state process.

Magistrate Kent further abused his discretion by not hearing and considering Kuhl's objection to the admissibility of the FMC-Butner report and the lawfulness of the proceedings. Additionally, Ray Kent did not allow Kuhl to plea in abatement in order to challenge the sufficiency of the indictment, the sufficiency of the evidence presented, to the grand jury, and whether the grand jury was defective. By not allowing a Faretta hearing so that I could raise my concerns due to Scott Graham's refusal to do so, Ray Kent again abused his discretion.

For these reasons it is requested this entire proceeding be sealed, the competency reports stricken from the record, the case be dismissed, and Kuhl be immediately released to State custody. Furthermore, this

matter should be vacated as to the competency determination, the report stricken from the record, and the case dismissed pursuant to Fed. R. Crim. P. 48(b).

I swear under penalty of ~~purjery~~ perjury that the above is true and this appeal is being given to Newaygo County Jail to be placed in the outgoing mail today, February 24, 2025.

Respectfully Submitted,

S. Kuhl February 24, 2025

S. Kuhl 61189510

1035 James

P.O. Box 845

White Cloud, MI 49349

*SPECIAL LEGAL MAIL*
SAMUEL ALEXANDER KUHL #61189-510
#202301785
1035 E JAMES STREET
PO BOX 845
WHITE CLOUD MI 49349

X-RAY
U.S. MARSHALS SERVICE

RECEIVED
MAR 03 2025
KELLY L. STEPHENS, Clerk

Office Of The Clerk
U.S. Court of Appeals
100 E. Fifth Street
Room 540
Cincinnati, OH 45202

LEGAL MAIL