1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF MICHIGAN
2                              SOUTHERN DIVISION

3

4       UNITED STATES OF AMERICA,

5                    Plaintiff,

6       v                                    Case No:  1:23-cr-44

7       SAMUEL ALEXANDER KUHL,

8                    Defendant.
        _____/
9

10        FIRST APPEARANCE, ARRAIGNMENT, INITIAL PRETRIAL CONFERENCE

11              DETENTION HEARING, COMPETENCY HEARING

12                    BEFORE THE HONORABLE RAY KENT
                           U.S. MAGISTRATE JUDGE
13
                           Grand Rapids, Michigan
14                          February 12, 2025

15      APPEARANCES:

16      For the Plaintiff:  MR. TIMOTHY P. VERHEY
                            U.S. Attorney
17                          330 Ionia Avenue, N.W., Suite 501
                            Grand Rapids, Michigan 49503-2580
18                          (616) 456-2404

19
        For the Defendant:  MR. SCOTT G. GRAHAM
20                          Scott Graham, PLLC
                            1911 West Centre Avenue, Suite C
21                          Portage, Michigan 49024-5399
                            (269) 327-0585
22

23      TRANSCRIBED BY:     Lauret J. Henry, CSR-6469, RPR
                            Federal Official Court Reporter
24                          410 West Michigan, Suite 137
                            Kalamazoo, MI 49007
25                          (269) 720-9529

```
1    Grand Rapids, MI
2    February 12, 2025
3    10:40 a.m.
4                    PROCEEDINGS
5         THE CLERK:  The United States District Court for the
6    Western District of Michigan is now in session.  The Honorable
7    Ray Kent, United States Magistrate Judge, presiding.  You may
8    be seated.
9         THE COURT:  This is 23-cr-44, United States versus
10   Samuel Kuhl.  Mr. VerHey on behalf of the United States.
11   Mr. Graham on behalf of Mr. Kuhl.  We were last together on
12   January 13.  At that time, we had scheduled a competency
13   hearing, an initial appearance, arraignment, initial pretrial
14   conference, and bond hearings.  We did not get through the
15   competency hearing proceeding.  Mr. Graham requested a 30-day
16   adjournment to explore possibly a second competency opinion
17   and to review other -- other matters, other strategies.  So
18   here we are.  We're back together.
19      Mr. Graham, I guess, well, I'll ask you where we stand.
20         MR. GRAHAM:  Thank you, Your Honor.  First, Your
21   Honor, I apologize for being late.
22         THE COURT:  No need.  Life happens.  No problem.
23         MR. GRAHAM:  Since we were last here, Your Honor,
24   I've had a chance to review a variety of materials.  I've had
25   a chance to consult with a -- I'll just say an independent
```

1  expert regarding questions of competency and had a chance to

2  discuss with that person the -- essentially the restoration

3  report, if you will, that has been provided to the Court.

4      As of today, I believe the Court accepted the report as

5  something being admitted before we -- before we broke up at

6  the last hearing.  And from my perspective, it's fine for the

7  Court to consider that and we are not -- I indicated at the

8  last hearing that I had concerns about the nature of the

9  restoration report because it was essentially based on a

10 failure to participate.  Those concerns have been alleviated

11 by what has happened since we were here, and I'm ready for the

12 Court to rely upon that report in determining ultimately the

13 restoration issue that is before the Court.

14     I would be remiss if I did not acknowledge that Mr. Kuhl

15 has serious concerns about the posture of the matter and my

16 approach to the matter, and I would indicate for the Court

17 that this is what my thinking is:  Perhaps I'm laying bare my

18 own ineffectiveness, but Mr. Kuhl has a concern that there's

19 been a speedy trial violation because, in fact, he was not

20 transported and evaluated within the time period described by

21 statute.

22     I think the Court is aware that last year, I think in

23 October, the Sixth Circuit decided a case that not only came

24 out of this district but came out of Judge Beckering's

25 courtroom in which the Court looked at that statute and then a

1    different portion of the statute that said everything that

2    happens after a finding of incompetence, all the time involved

3    is excluded from the speedy trial calculation.  I think the

4    Sixth Circuit was, the way I read the opinion, less than

5    thrilled with the fact this can happen, but nothing it could

6    do about it.  So the Sixth Circuit has five months ago, four

7    months ago, very clearly indicated that this time after a

8    finding of incompetency should be excluded from the

9    calculation.

10        Now, I believe that it might be appropriate to preserve

11   the speedy trial issue in case there's ever a change.  This is

12   a decision that I don't think had -- I don't think there are

13   prior Sixth Circuit decisions that say that.  I think the

14   other circuits that have decided the question are in agreement

15   with the Sixth Circuit.  But my point is if there is a

16   violation, that violation can be raised in the district court

17   in terms of a speedy trial violation.

18        Mr. Kuhl and I disagree on that.  He thinks it should be

19   raised and decided here.  I believe it's a matter for the

20   district court.

21        So with those things being said, I'm ready to proceed as

22   I've described.

23            THE COURT:  Okay.  Mr. Kuhl has a question, I think,

24   and I'll get to that in a moment.  So you won't be presenting

25   evidence which contradicts the conclusion that Mr. Kuhl's

1    competency has been restored?

2            MR. GRAHAM:  That is correct, Your Honor.

3            THE COURT:  Okay.  All right.  To your point about

4    where the question of a speedy trial violation must be

5    resolved is correct.  I lack the authority, the statutory

6    authority, to make that decision because that would be a

7    dispositive issue, potentially, if a judge, me or -- I can't,

8    but if Judge Beckering were to rule that there had been a

9    speedy trial violation, it could result in dismissal of the

10   charges.  That means it disposes of the case.  I don't have in

11   a felony case the authority to make a dispositive decision, so

12   that motion would have to be filed before Judge Beckering.

13       Very briefly, Mr. Kuhl.

14           THE DEFENDANT:  I'd like to address first and

15   foremost that I'm completely aware that you do have the

16   authority, however, to make a report and recommendation, and

17   if the issue was raised, that one issue, which is only one of

18   several that I have addressed with Mr. Graham, and he

19   constantly beats around the speedy trial, there are two speedy

20   trial issues here.  There's one of the Speedy Trial Act, and

21   there's one of the constitutional right.

22           THE COURT:  Before we get to the substance of your

23   potential motion, let me say that you are correct, Judge

24   Beckering could refer the motion to me for report and

25   recommendation, but I can't -- I can't take the motion on my

1    own.  It would have to be filed with her, and then she would

2    make the decision of whether she's going to decide it herself

3    or whether she would refer it to me for preparation of a

4    report and recommendation.

5            THE DEFENDANT:  Filing it is just filing it, putting

6    it on the docket.  It obviously can be raised at any time.

7    And it's not the only issue here.  There's an issue of --

8    of -- of the time limit.  Of IDRA itself.  There's a

9    four-month limit.

10           THE COURT:  Okay.  Well, and those, as I say, are

11   issues for Judge Beckering.

12           THE DEFENDANT:  There's an issue of abstention here

13   which should have been raised the first day I was brought in

14   this federal courtroom.  I knew that wasn't going to happen.

15   We all know it's not going to happen.  We know what's really

16   going on here.  Everyone knows it's true.  It's clear as day.

17   It can be seen.  Everything, from what's happened in my family

18   to what's going on in the world.  You know, I'm only speaking

19   the truth.

20           THE COURT:  Okay.

21           THE DEFENDANT:  So there it is, you know.  You have

22   got -- you have got -- what is the rule of abstention?

23           THE COURT:  Well, we're not -- abstention isn't even

24   an issue before me today, Mr. Kuhl.

25           THE DEFENDANT:  Exactly.

1          THE COURT:  And it's --

2          THE DEFENDANT:  It's an issue with Mr. Graham here,

3    sir.

4          THE COURT:  -- an issue for Judge Beckering.

5          THE DEFENDANT:  And they're secretly trading secrets

6    with each other without informing me fully of the discovery.

7    There's also an issue of the IDRA, as I said, a 4241(d),

8    there's a four-month time limit.  This report is submitted in

9    violation of that.  It's a violation of the complete procedure

10   that bases this thing.

11         THE COURT:  It seems to me, again, that would --

12   might be part of a motion alleging speedy trial violation.

13         THE DEFENDANT:  Because --

14         THE COURT:  Brought before Judge Beckering.

15         THE DEFENDANT:  The speedy trial specifically,

16   looking at United States versus Robert Truman Baker of 1986

17   which is a Sixth Circuit case.

18         THE COURT:  I'm not going to do that today,

19   Mr. Kuhl.

20         THE DEFENDANT:  Which is a Sixth Circuit case.  Just

21   let me please speak, Your Honor.

22         THE COURT:  Mr. Kuhl, I'm not going to let you

23   speak.

24         THE DEFENDANT:  Because what I say is true.

25         THE COURT:  No, because I have not yet even found

1    you competent, Number 1, and --

2              THE DEFENDANT:  Incompetent (unintelligible) --

3              THE COURT:  And second --

4              THE DEFENDANT:  -- can speak on the laws that I'm

5    able to speak on as well as I can, sir.

6              THE COURT:  And second you have a lawyer,

7    Mr. Graham.

8              THE DEFENDANT:  He's not -- he might as well stand

9    over there with them.  You guys can all get up there together

10   with each other.

11             THE COURT:  All right.

12             THE DEFENDANT:  We'll make it a circus, right?  I

13   know you guys are against me.  It's clear as day.  The CPS --

14   everybody's been against my family since the beginning.

15             THE COURT:  We're not against you.  I certainly am

16   not against you.  Mr. Graham is for you.  He's your advocate.

17             THE DEFENDANT:  My advocate.  He can't even speak.

18   He keeps going to a speedy trial argument that he knows has

19   already been ruled on.  That specifically was originally 2022

20   brought in front of Judge Green that said it was a speedy

21   trial argument, but Judge Beckering overturned that report and

22   recommendation and said, no, there's not a speedy trial

23   argument, and apparently went to the Sixth Circuit and they

24   decided it; however, that's not addressing any of the other

25   issues that I have in this matter.

1          THE COURT:  Mr. Kuhl, I mean, if you want to move

2     your case forward, you have to stop talking and let me make a

3     decision on the competency issue.  Then assuming I find you

4     competent, we'll move on to those hearings which happen in

5     every single criminal case, including the initial appearance

6     and arraignment, pretrial conference, and bond hearings.  So

7     if you want to move your case forward, you got to let me do

8     it.

9          THE DEFENDANT:  You don't realize the things that

10    have happened here.  And I am being stripped of my right to

11    raise those issues.  And by the time -- they should have been

12    raised the first day I was in there, but Parker Douglas, he

13    worked in (unintelligible) I know that you guys are all

14    probate and court, and everybody's tied all in with the CPS.

15    It goes to the point it doesn't matter.  There is no way to

16    refute the proof in the pudding, as they say, as it is here

17    today.  There is no way to refute any of it.  Any of it at

18    all.

19          THE COURT:  Okay.

20          THE DEFENDANT:  It can't be refuted.

21          THE COURT:  Mr. Kuhl, I'm going to give you a chance

22    to stop talking, and then we're going to have to, you know,

23    follow the procedure we did last time.  I don't want to do

24    that.  I want you in court, in person.

25          THE DEFENDANT:  You guys don't want to follow any

1    procedures, but I'll go ahead and be quiet and roll over and

2    just let you screw my life over, how about that?  You know,

3    push me along.  You know, I know what's going on here.  Come

4    on.

5             THE COURT:  All right.  Mr. Graham, anything else

6    before I --

7             MR. GRAHAM:  No, Your Honor.

8             THE COURT:  All right.  All right.  The standard for

9    competency is whether or not a defendant is suffering from a

10   mental disease or defect rendering him mentally incompetent to

11   the extent he is unable to understand the nature and

12   consequences of the proceedings against him or assist properly

13   in his defense.

14       The certificate of restoration and accompanying report

15   offered by Dr. DuBois, he concludes that -- and this is from

16   Page 19 of 20, Page ID 239 of the report, "My opinion,

17   Mr. Kuhl is not suffering from a mental disease or defect that

18   would impair his competency-related abilities."  That opinion

19   is unrebutted.  And based upon that, it is my finding that

20   Mr. Kuhl does, in fact, not suffer from a mental disease or

21   defect that would impair his competency and that he is, in

22   fact, competent to proceed in this matter.  I accept the

23   report in its entirety.

24       All right.  Moving on, Mr. VerHey, anything else I should

25   touch upon before we move to the initial appearance?

```
1              MR. VERHEY:  No, sir.

2              THE COURT:  Mr. Graham?

3              MR. GRAHAM:  No, Your Honor.

4              THE COURT:  All right.  Mr. Kuhl, have you had the

5      opportunity to review the indictment?

6              THE DEFENDANT:  I can't speak here today, Your

7      Honor.  I ask Mr. Graham.

8              THE COURT:  No, you can speak here.  I'm asking you

9      to speak now.

10             THE DEFENDANT:  That's fine.  I'll remain silent as

11     is my right.

12             THE COURT:  Okay.  That's fine.  Mr. Kuhl --

13     Mr. Graham, have you reviewed the indictment with Mr. Kuhl?

14             MR. GRAHAM:  Yes, Your Honor.

15             THE COURT:  Okay.  Mr. Kuhl, in the indictment, the

16     government is charging you with two crimes, each contained in

17     a separate numbered count of the indictment.

18         In Count 1, the government charges you with a crime it

19     calls sexual exploitation of a minor.  It claims that between

20     May 13 and October 31 of 2021, here in the Southern Division

21     of the Western District of Michigan, you enticed or persuaded

22     a 15-year-old girl to engage in sexually explicit conduct for

23     the purpose of filming or taking photographs of that conduct,

24     which she, I guess, then sent to you on your Samsung and

25     iPhone cell phones.
```

1           THE DEFENDANT:  Excuse me, Your Honor.

2           THE COURT:  Yes.

3           THE DEFENDANT:  That is not what the indictment

4    says.  The indictment says that I received and stored.  Please

5    do not assume anything.  Speak factually from what it states

6    on its face within its four corners, please and thank you.

7           THE COURT:  All right.  In Count 2, the government

8    charges a crime it calls coercion and enticement and attempted

9    coercion and enticement.  It claims that between May 13 and

10   October 31 of 2021, again, here in the Southern Division of

11   the Western District of Michigan, you used cell phones and

12   Facebook messenger to communicate with minor one, a

13   15-year-old female, in order to persuade, induce, and entice

14   her to have sexual intercourse with you, which would

15   constitute third-degree criminal sexual conduct --

16          THE DEFENDANT:  (Unintelligible) Mr. Graham.

17          THE COURT:  -- under Michigan law.  Do you

18   understand the two charges?

19          THE DEFENDANT:  Yeah.  Yeah.

20          THE COURT:  There are also forfeiture allegations.

21   These are claims in which the government asks that when the

22   case is over, all right, title, and interest be transferred to

23   it in a Samsung -- I guess that's a phone, Mr. VerHey?

24          MR. VERHEY:  That's correct, Your Honor.

25          THE COURT:  And also an iPhone.

1          Do you understand the forfeiture claim, Mr. Kuhl?

2               THE DEFENDANT:  What's that?

3               THE COURT:  Do you understand the forfeiture claim?

4     Government wants to keep the phones.

5               THE DEFENDANT:  Do I understand it, Mr. Graham?

6               MR. GRAHAM:  Yeah.

7               THE COURT:  All right.  If you're convicted on these

8     charges, there are penalties.  On Count 1, the sexual

9     exploitation of a minor, the penalties include a mandatory

10    minimum prison term of 15 years, a maximum term of 30 years, a

11    fine of up to $250,000, supervised release following prison of

12    not less than five years and up to lifetime supervision, a

13    number of special assessments, one in the amount of $100, a

14    second in the amount of $5,000, and a third in any amount up

15    to $50,000.  If the victim required medical treatment,

16    psychological counseling, anything of that sort, you could be

17    ordered to reimburse the cost of that.  And finally you will

18    be required to register as a sex offender.

19         Count 2, the coercion and enticement charge, carries a

20    mandatory minimum prison term of 10 years, a maximum of life,

21    again a $250,000 fine, up to $250,000 fine, supervised release

22    of not less than five years and up to life, two special

23    assessments, one in the amount of $100, one in the amount of

24    $5,000.  Again, restitution is possible and you would be

25    ordered -- you would be registered as a sex offender.  Do you

1    understand the maximum penalties, Mr. Kuhl?

2              MR. GRAHAM:  Mr. Kuhl indicates he does.

3              THE COURT:  Okay.  Mr. Kuhl, you have important

4    constitutional rights in this case.  We have talked about a

5    couple of them before, your right to a lawyer and your right

6    to remain silent.  You have other equally important rights,

7    including the right to be presumed innocent, to have the

8    government prove you guilty beyond a reasonable doubt on each

9    and every element of these two charges.  That would occur at a

10   speedy and public trial before 12 jurors drawn from the

11   community.  At trial, you'd have the right through Mr. Graham

12   to confront and cross examine the government's witnesses, to

13   call your own witnesses and have the Court order them to

14   appear and testify.

15        You'd have the right to present other evidence which you

16   believe demonstrates you're not guilty of these charges.  And

17   finally, you'd have the right to either take the witness stand

18   and testify in your own defense or remain silent and not have

19   your silence used against you in any way.

20        We're going to project up on the screen now a form which

21   summarizes your constitutional rights.  Is that your signature

22   near the bottom of the form?

23        Mr. Graham, is the form appearing on the screen on your

24   table?

25              MR. GRAHAM:  Yes, Your Honor.

```
1              THE COURT:  Okay.  If it's easier, because of the
2     angle, you can simply look at the screen on your table,
3     Mr. Kuhl.  Is that your signature?
4              THE DEFENDANT:  Mr. Parker knows.  Why don't you
5     tell him?  (Unintelligible.)
6              THE COURT:  Nobody's going to answer except for you,
7     Mr. Kuhl.  The question's to you.  Not to anybody else.
8              THE DEFENDANT:  I'm remaining silent, Your Honor.
9              THE COURT:  It's a pretty simple question.  Is that
10    your signature or not?
11             THE DEFENDANT:  Technically that's not even my name,
12    but we know that.  We'll go ahead.
13             THE COURT:  Is that a yes?
14        All right.  Moving along.  Mr. Kuhl, there are four ways
15    that you can plead to the charges here today.  The first way
16    is not guilty.  Second, you could say nothing or stand mute.
17    Third, you could plead guilty.  And fourth, with the consent
18    of Judge Beckering and the consent of Mr. VerHey, you could
19    plead something called no contest, which has essentially the
20    same effect as a guilty plea.  Do you understand your four
21    options?
22        Mr. Kuhl?  Do you understand that those are four options
23    open to you?
24        Mr. Kuhl, you're obviously a smart person.
25             THE DEFENDANT:  Smarter than everybody here.  It's
```

1   just dumb that I've put myself in this (unintelligible) all

2   you people, you know.  I should have stayed where I was --

3   where I at.  Should have never ever -- you people -- you drew

4   out of me.  You guys got exactly what you wanted.  Yeah.  It

5   was a plot from the beginning, man.  You got it.  You win.

6   It's all right.

7           THE COURT:  All right.  So do you understand your

8   four options with regard to the plea?

9           MR. GRAHAM:  Your Honor, I think from what Mr. Kuhl

10  told me he understands those four.  He thinks that he may have

11  other options as well.

12          THE COURT:  Well, those are the only four available

13  here today.  Mr. Graham, how does Mr. Kuhl plead?

14          MR. GRAHAM:  Not guilty as to each count.

15          THE COURT:  Thank you.  All right, Mr. Kuhl, that

16  concludes your arraignment and initial appearance.  We're

17  going to turn to the pretrial conference.  Mr. Graham filed a

18  pretrial conference form on your behalf.  In that form, he's

19  asking that if your case goes to trial that it be a trial by

20  jury, and he's agreed on your behalf to provide --

21          THE DEFENDANT:  I want to represent myself, Your

22  Honor.  I'll give everybody here the rodeo they want.  Let's

23  get it on, baby.  Come on.

24          THE COURT:  If --

25          THE DEFENDANT:  I know we got to have a Faretta

1    hearing, sir.  Let's get it.

2              THE COURT:  If you want to represent yourself, make

3    a written request.  File a written request.  I'll allow it to

4    be filed, even though Mr. Graham is still your lawyer at this

5    moment.  And we'll have a hearing and decide that issue.  But

6    we're not going to do it right now.  We're going to

7    complete --

8              THE DEFENDANT:  I'm moving today to have the removal

9    of counsel, and I'm moving to accede to have counsel removed

10   from this case.

11             THE COURT:  All right.  All right.  We'll take a

12   brief adjournment.  Mr. Kuhl can go back to the holding cell

13   while I decide what to do.

14             (Recess from 11:06 a.m. until 11:23 a.m.)

15             THE COURT:  All right.  We're back on the record.

16   Mr. Kuhl, to your request, comments before we broke, if you

17   want to have Mr. Graham dismissed as your attorney and wish to

18   defend yourself as the case goes forward, please file a

19   written motion.  Judge Beckering will either decide it or

20   refer it to me for decision and I'll decide it.  Today, we're

21   going to complete the hearings that we have had scheduled

22   twice now.  So we're on the question of the initial pretrial

23   conference summary statement.  Mr. Beckering, any questions

24   for Mr. Graham?  I'm sorry.  Beckering, geez.  Mr. VerHey?

25             MR. VERHEY:  No, Your Honor.

1          THE COURT:  All right.  Mr. VerHey filed a longer

2     pretrial form on behalf of the United States.  In that form,

3     he summarizes the evidence the government claims to have

4     against you.  Mr. Graham will be provided copies of the actual

5     evidence or have the opportunity to review it, and after he

6     does that I'm sure he'll go through it with you.

7          But this is an overview of the evidence the government

8     claims it has.  It claims to have records of oral statements

9     made by you on January 29 of 2022 to Michigan State Police.

10     Evidently that statement was also recorded.  A copy of the

11     recording will be turned over.

12          The government's looked into your prior criminal record

13     history.  They'll turn that over.  The government notifies you

14     of the execution of search warrants, including three state

15     court search warrants for the search of three cell phones from

16     October of 2022, and federal warrants for search of a Facebook

17     account, Mr. VerHey?

18          MR. VERHEY:  That's correct, Your Honor.

19          THE COURT:  And also cell phone searches.  The

20     government expects to have a written report, computer forensic

21     report, which would be directed at what evidence, if any, was

22     found during the search of these digital devices.  The

23     government intends to offer evidence in the form of one text

24     message which the government claims discloses you attempting

25     to persuade a second minor female to have sex with you.  The

government would offer this under Federal Rule of Evidence
404(b), which allows the introduction of evidence other than
evidence directly related to guilt on the charges for a
limited number of purposes and under a limited number of
circumstances.  I'm sure Mr. Graham will keep a close eye on
that issue and talk to you about it further.

Government is also asking for a jury trial.  Finally
there is a plea negotiation you should be aware of if you
intend to have Mr. Graham attempt to negotiate a plea bargain
for you.  To ensure that you get maximum benefit from the plea
bargain, it would have to be finalized at least two weeks
prior to the date of the final pretrial conference.
Mr. Graham will keep a close eye on that date and all the
other dates for you, and I'm sure he'll talk to you about
whether or not it makes sense to attempt a plea bargain given
your specific situation.

Mr. VerHey, I'm going to give the government the Rule
5(f) notice now.  Pursuant to the Due Process Protections Act,
the Court reminds the government of its obligations under the
1963 United States Supreme Court case of Brady versus Maryland
to disclose evidence favorable to the defendant and material
to the defendant's guilt or punishment.  The government is
ordered to comply with Brady and its progeny.  The failure to
do so in a timely manner may result in consequences, including
dismissal of the indictment or information, exclusion of

1    government evidence or witnesses, adverse instructions,

2    dismissal of charges, contempt proceedings, sanctions by the

3    Court, or any other remedy just under the circumstances.

4        Mr. VerHey, does the government commit to honoring its

5    obligations under Brady and the act?

6            MR. VERHEY:  Yes, I do.

7            THE COURT:  Thank you.

8        Mr. Kuhl, that concludes -- well, Mr. Graham, I didn't

9    give you an opportunity whether you have any questions of

10   Mr. VerHey.

11           MR. GRAHAM:  I do not, Your Honor.

12           THE COURT:  Okay.  That concludes the pretrial

13   conference then leaving only the question of bond.

14   Mr. VerHey, does the government continue to seek Mr. Kuhl's

15   detention?

16           MR. VERHEY:  We do, Your Honor, and I also note that

17   there's a valid warrant out of Kalamazoo for him.  So if you

18   for some reason decided that release was appropriate, I don't

19   think he would actually be released, he'd just be turned over.

20           THE COURT:  Transferred to Kalamazoo County?

21           MR. VERHEY:  Yes.

22           THE COURT:  Okay.  Mr. Graham, what's your client's

23   pleasure with respect to a bond hearing?

24           MR. GRAHAM:  Your Honor, can we speak?

25           THE COURT:  Yes.  Could you put some white noise on?

1          (Pause in the proceedings.)

2          THE COURT:  Mr. Graham?

3          MR. GRAHAM:  Your Honor, I'm not certain of the

4    status of any other outstanding warrants.  I don't doubt

5    anything that's been said, but there's also a question of

6    whether or not there is a Van Buren County warrant.  There is

7    a case in Van Buren County that is essentially based on the

8    same facts that we have here.  I'd like to have a chance to

9    figure out what the status of those -- of any outstanding

10   warrants before dealing with detention.  I'd like to, if

11   possible, avoid the need to have to go back to the change of

12   circumstances if somehow those warrants clear, but I don't

13   know if there is a way to do that.  If there is, then we would

14   simply be willing to not go forward today with detention.  If

15   that's -- if that's not possible, then I guess we would ask to

16   have the detention hearing.

17          THE COURT:  All right.  Is there a time limit on how

18   long I can adjourn the bond hearing?

19          MR. VERHEY:  Statutorily there's three days from his

20   initial appearance, which is today, essentially, because it

21   was all in abeyance until today --

22          THE COURT:  Yeah.

23          MR. VERHEY:  -- for us, and five days for the

24   defense if they want extra time to prepare for the hearing.

25          MR. GRAHAM:  If I -- I guess the question that I'm

1    not sure of an answer to is would that five -- if it was five

2    days from our perspective, would it be five days in which to

3    request a detention hearing or actually have the hearing

4    conducted?

5            THE COURT:  I think my reading of it is the hearing

6    occurs in five days.  Mr. VerHey, do you have any position on

7    that?

8            MR. VERHEY:  That's correct.

9            THE COURT:  I mean, you could perhaps change my

10   mind.  It's not something, you know, that I've given a lot of

11   thought to, but my reading of it is the hearing must occur

12   then within five days.

13           MR. GRAHAM:  So then I guess my question is if we

14   made that request, would it even be possible to squeeze that

15   in?

16           THE COURT:  We'll find time on our docket to see

17   Mr. Kuhl in five days.

18           MR. GRAHAM:  My request then is that -- is that we

19   be given -- or that detention be continued for the five days.

20           THE COURT:  That the hearing be continued for five

21   days?

22           MR. GRAHAM:  Yes, Your Honor.

23           THE COURT:  All right.  Ms. Glass, do you have

24   access to a calendar we could look at?  Those are business

25   days?

```
 1            MR. VERHEY:  Yes.
 2            THE CLERK:  Your Honor, we have February 19 at
 3    10 o'clock.
 4            MR. GRAHAM:  That would work for me.
 5            MR. VERHEY:  That's fine with me, Your Honor.
 6            THE COURT:  Okay.  February 19 at 9 o'clock it is.
 7            MR. GRAHAM:  Sure that wasn't 10 o'clock?
 8            THE COURT:  I'm sorry.
 9            THE CLERK:  10 o'clock, yes.
10            THE COURT:  10 o'clock.  All right.  Mr. VerHey,
11    anything else from the United States?
12            MR. VERHEY:  No, thank you, Your Honor.
13            THE COURT:  Mr. Graham, anything from you, sir?
14            MR. GRAHAM:  No, Your Honor.
15            THE COURT:  All right.  We'll see everybody back
16    here February 19, 10 o'clock.  We're adjourned.  Thank you.
17                 (Proceedings concluded at 11:34 a.m.)
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3       I certify that the foregoing is a transcript from the

 4   Liberty Court Recording System digital recording of the

 5   proceedings in the above-entitled matter to the best of my

 6   ability.

 7

 8

 9

10                             /s/ Lauret J. Henry
                               Lauret J. Henry, CSR, RPR
11                          U.S. District Court Reporter
                                  Kalamazoo, MI 49007
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```