UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
May 8, 2025 12:06 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB SCANNED BY: KB 5/8

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case No. 1:23-cr-44
Hon. Jane M. Beckering
*Oral Argument Requested*
*EXPEDITED*

# *URGENT AND EXPEDITED*

# MOTION CHALLENGING SUPERSEDING INDICTMENT AND PRETRIAL MOTION DEADLINE

Defendant brings ~~this~~ this motion before the Court with urgency and substantial concern. It seems to be standing law that a superseding indictment does not reset the Speedy Trial Clock under the STA 18 U.S.C. § 3161 et seq. While Mr. Kuhl asserts his right to a speedy trial there are several issues beyond his control that have delayed him in adequately raising motions. Further, the Superseding Indictment brings new grounds to challenge its sufficiency and defend against the charges within.

## LEGAL STANDARDS

"[T]he filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment." Sylvester v. United States, 868 F.3d 503, 508 (6th Cir. 2017) (quoting United States v. Bermea, 30 F.3d 1539, 1567 (5th Cir. 1994)). Accordingly,

the Motion Deadline also seems to be unaffected by a superseding indictment as well. See United States v. Carpenter, 3:21-CR-38-KAC-DCP (E.D. Tenn. Apr. 26, 2022) (defendant had to move for the Court to reset the Motion Deadline after being arraigned on superseding indictment); see also United States v. Marin, 1:21-cr-20406-1 (E.D. Mich. Jan. 20, 2023) (allowing pro se defendant to stipulate to adjournment of pretrial-motion deadline four times, but refusing to do so when superseding indictment was filed).

## ARGUMENT AND REQUESTED RELIEF

Defendant would first like to note that he has not been dilatory in moving to proceed pro se or filing motions. Indeed, Mr. Kuhl verbally moved to proceed pro se at the earliest possible date: February 12, 2025 Arraignment. In response to Mr. Kuhl's request, U.S. Magistrate Ray Kent directed Defendant to file a motion requesting to proceed pro se.

Accordingly, Mr. Kuhl brought the motion to the Court on February 19, 2025, which was a detention hearing. After this hearing, Defendant met with standby counsel Scott Graham, at which time Mr. Graham conceded that Mr. Kuhl did not have all the discovery he was entitled to. Mr. Graham also stated that no one, him nor the Government, was anywhere near being close to being ready to go to trial on this case.

On February 18, 2025, the Honorable Jane M. Beckering set the pretrial motion deadline for March 5, 2025 (ECF No. 84), in an order

Defendant had not yet received. While during the February 19, 2025 Detention Hearing, Magistrate Ray Kent did state that the final pretrial conference was set for April 8, 2025, and trial for April 15, 2025, the Honorable Magistrate did not inform Defendant of the Pretrial Motion Deadline. See Transcript of Detention Hearing ECF No. 121, PageID. 762. Mr. Graham also did not inform Mr. Kuhl of the motion deadline when meeting with Mr. Kuhl that day after the hearing in the conference room of the Federal Building in Grand Rapids.

Accordingly, Mr. Kuhl was not aware of such pretrial motion deadline until ~~April~~ Feb. 21, 2025, when he was also notified that his Faretta hearing had been set for March 6, 2025, the day after the pretrial motion deadline. Immediately Defendant called Scott Graham's secretary Beth Smeal and requested Scott move to advance the Faretta hearing. Moreover, Defendant immediately filed a pro se motion addressing his concern with the schedule set for motion filing and requesting the Faretta hearing be advanced to an earlier date. See ECF No. 143, PageID. 1033-1035. However, this motion was rejected (ECF No. 94), ~~[illegible]~~ due to Defendant still being represented by Mr. Graham.

In ignorant common sense, Mr. Kuhl thought that the motion deadline would obviously be rescheduled, but sadly this was not the case. Upon realizing that the Court was sticking to this deadline, Mr. Kuhl again, immediately moved to object to the deadline on March 13, 2025 (ECF No. 116). To Defendant's astonishment and dismay, the Honorable Jane

Beckering denied this motion (ECF No. 125). As soon as Mr. Kuhl received the Court's Order on April 7, 2025, he moved for reconsideration (ECF No. 143). That Motion for Reconsideration was filed prior to the Superseding Indictment (ECF No. 147). Thus, Mr. Kuhl does not know whether the Court is still considering that pleading or if it is now moot due to the Superseding Indictment.

Once being informed of the Government's intent to supersede the indictment, Mr. Kuhl assumed, because he was being rearraigned, the motion schedule as well as the speedy trial clock would restart. Today Mr. Kuhl has learned that he is wrong once again. Defendant is quite certain he raised these questions during the arraignment on April 25, 2025 in front of the Honorable Magistrate Sally Berens. Unfortunately, Defendant does not yet have the Transcript of this arraignment on the superseding indictment, but is quite certain the questions as to the motion deadline and speedy trial went unanswered.

On April 29, 2025, a hearing was held to address Mr. Kuhl's motion to compel discovery (ECF No. 145) and Mr. Graham's motion for clarification as to standby counsel's function (ECF No. 159). During this hearing, Mr. Kuhl again sought clarification as to whether the pretrial motion deadline had been or would be reset due to the superseding indictment, but still no clear answer was provided. At this hearing, the Honorable Magistrate Ray Kent specifically asked standby counsel if there were "any speedy trial issues" but did not direct this question to Mr. Kuhl. Without conferring with Mr. Kuhl, standby counsel

answered this question in the negative.

However, no one had provided Defendant clarification as to whether the Speedy Trial Clock restarted due to the superseding indictment. While the Court has made it seem that standby counsel's ~~cause~~ only function is to assume representation in the event Defendant no longer chooses to represent himself, ~~yet~~ the actions and words of the Court contradict this assertion. The Court clarified Mr. Graham's role is to assume representation of Defendant, in the event as stated above (ECF No. 125, PageID. 826[1]). Indeed, the Court referenced Magistrate Kent's verbal description of standby counsel's role in this matter (ECF No. 114 at PageID. 648).

It seems this strict role for counsel in a standby capacity is not correct. As noted above, the Court seems to contradict itself, and other courts have also seemed to hold standby counsel to a more assistive capacity. As noted above, Magistrate Kent specifically asked standby counsel if there were any speedy trial issues. Moreover, Magistrate specifically told Mr. Kuhl to speak with Mr. Graham about what trial will look like and what to expect. However, the main reason Defendant has been forced to proceed pro se is the severe lack of communication with Mr. Graham. Indeed, Mr. Kuhl has spoken to a lawyer and a person who has worked with Mr. Graham in defending some criminal defendants, and both state that Mr. Graham, while smart, is extremely difficult to contact and communicate with. Due to Mr. Graham's refusal to withdraw or adequately communicate with Defendant, the Court's

refusal to appoint different counsel, and Mr. Kuhl's need to be actively involved in his defense, Mr. Kuhl has been essentially forced to proceed pro se.

Additionally, Magistrate Berens suggested speaking to Mr. Graham about something Defendant can't exactly remember. This occurred during arraignment on the superseding indictment, at which time Defendant expressed the fact that he can't talk to Mr. Graham because either Mr. Graham is too busy or refuses to communicate. As mentioned above, other courts have held standby counsel to a higher assistive capacity, at least to inform clients of standard court rules and procedure.

In Marin, the case cited above, the Eastern District of Michigan District Court stated "Rule 12 aptly outlines the procedures, requirements, and limitations for what Marin aims to do. And he has standby counsel to advise him as such." Marin, 1:21-cr-20406-1, at 4. Indeed, "Faretta rights are 'not infringed when standby counsel assists the pro se defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete.'" United States v. Darwich, 10-20705 at 3-4 (E.D. Mich. May 10, 2011) (quoting McKaskle v. Wiggins, 465 U.S. 168, 183 (1984)); see also United States v. Hyde, 2:19-cr-5 (S.D. Ga. Mar. 23, 2020) ("standby counsel is limited to answering the pro se Defendant's questions and providing other assistance, but standby counsel

will not be participating directly in any hearings or the trial of the case.")).

Point being, the Court nor Mr. Graham answered Mr. Kuhl's questions regarding whether the speedy trial clock and/or motion deadline are reset after a superseding indictment. Moreover, Mr. Graham did not move to compel discovery while still representing Defendant prior to the Faretta hearing. Additionally, Mr. Graham and the Government, as well as the Court knew of Mr. Kuhl's concern that discovery materials were being withheld, his due process and speedy trial rights had been violated, and that Mr. Kuhl was being hindered in investigating and challenging the Government's evidence due to the lack of discovery. Accordingly, Mr. Kuhl incorporates ECF No. 143 herein by reference to this motion, and argues that the pretrial motion deadline should be reset if this case is not dismissed.

Further, the Superseding Indictment triples the timeframe charged in the the 2 Counts. This makes the evidence Mr. Kuhl needs to review, verify, and possibly challenge three times as much. The Superseding Indictment also presents changes in its languge which required Mr. Kuhl to have to slightly amend his challenges to the indictment's validity. In order to support his challenges, Mr. Kuhl was waiting on indictments, returned in this district, to be sent to him so that he could attach them as exhibits. The indictments clearly show that the original and superseding indictment against Mr. Kuhl are fatally defective.

Due to the Government's delay in providing discovery, as well

as not providing full reports and spoonfeeding Mr. Kuhl the discovery materials necessary to prepare an effective and fully informed suppression motion. Indeed, there are multiple devices, search warrants, and law enforcement agencies involved. Accordingly, Mr. Kuhl is trying to fully and adequately review and challenge any relevant portion of this case and its investigation, which is not easy when the Government withholds and delays discovery, Mr. Kuhl is incarcerated, FOIA requests have to be made to multiple law enforcement agencies, and everything has to be sent to Mr. Kuhl via standby counsel who Mr. Kuhl can never personally contact. Only standby counsel's secretary is available on occasion and she does not receive answers ~~that~~ to Mr. Kuhl's questions posed to Mr. Graham via the secretary.

Below Mr. Kuhl will try to set forth specific reasons why the pretrial motion deadline must be reset to allow Mr. Kuhl a chance to effectively defend himself. Due to the Newaygo County Jail's copier having no ink or some type of malfunction, Mr. Kuhl cannot attach exhibits as he needs his only copies. However, Mr. Kuhl will attach a sample copy recently made to display the issues with the jail's copier.

1. Mr. Kuhl received the CCU Report that is referenced in the MSP Incident Reports FIT-0000087-22 and FIT-0000091-22, both of which were provided to Defendant via discovery. However, the

CCU Report #2980-22 was not provided by the Government. Mr. Kuhl received this report yesterday 5/3/25. This CCU Report is essential because it contains the information of how the extraction of the Blue Samsung's data was executed and what specific Cellebrite program was used. It discusses how some of the data extracted was isolated upon being classified, as well as the exact date the extraction occurred. There is also a hash of the data extraction. This all pertains to the Samsung referenced in Mr. Kuhl's indictment and Forfeiture Allegation. Information like this is very useful to forensics experts in basically trying to audit and repeat the exact way a phone was searched. Sadly, it seems there is no picture of the Blue Samsung which Wyoming PD claims had a SIM card taped to the back. This picture should be in the record because the other phone, the Green iPhone, seized by Wyoming PD upon Defendant's arrest, is depicted in this report and ironically it has a SIM card taped to the back. For this reason, Mr. Kuhl is moving to try and get a picture of the Blue Samsung phone. A picture of the phone is essential because Mr. Kuhl knows no SIM card was taped to the back of any phone, yet Mr. Kuhl has discovered, because of the CCU Report, that the SIM card is removed when an extraction is executed. The fact that Wyoming PD lies about a SIM card being taped to the back of the Blue Samsung when it was initially seized, and that CSC was listed on Kroschel's affidavit which was supposed to be for evidence of

fraud and marijuana sales, establishes that the phone was searched/extracted prior to the warrant. Since the evidence related to these sex offenses charged in Defendant's indictment were supposedly "came across" while Michigan State Police Detective Gensterblum was examining the CCU extraction from the Blue Samsung phone, this report is crucial.

2. Mr. Kuhl did not receive the federal search warrant of January 25, 2023 for two phones, one being the iPhone referenced in Mr. Kuhl's indictment until April 15, 2025. The Government contends that this search yielded a substantial amount of evidence it plans to present at trial. There is no date of execution for this warrant, nor an inventory as to what was seized which is a violation of Fed. R. Crim. P. 41. Mr. Kuhl raised this issue at the April 29th hearing on his motion to compel discovery to allow the Government an oppurtunity to produce this required information. Mr. Kuhl also hopes this will reveal what type of extraction program was used in order to assist a digital forensics expert in reviewing the extraction was done properly and within the timeframe authorized by the warrant. Moreover, a failure to have documented the date of execution and inventory present more grounds to the challenge the search and any evidence obtained from it. Mr. Kuhl also needed this warrant to see if it was based primarily on information provided by MSP Gensterblum to establish probable cause and it indeed it is. Thus,

by proving MSP evidence was unlawfully obtained, the January 25, 2023 warrant is tainted and invalid.

3. Mr. Kuhl did not receive the MSP warrant obtained to search what MSP claims is the extraction from Defendant's Blue Samsung, until 4/2/25. This search warrant is part of MSP Incident Report FIT-0000091-22, which the Government only provided a portion of. Mr. Kuhl knows this because he obtained the full report through his own means. Mr. Kuhl had to do the same for the property report showing the chain of custody for evidence associated with this MSP report. Depending on the Forensics expert the Court has authorized funds for reviewing the extraction and exactly how it was examined will determine specifically how Mr. Kuhl moves to challenge this warrant and evidence. It also seems to be some misconduct as to how the phone was handled by MSP establing a break in the chain of custody and Mr. Kuhl is trying to gather as much information as possible to present everything in one motion.

4. SA Buttery previously searched the phones that were the subject devices of the January 25, 2023 search warrant in June of 2022. While the June 2022 search was related to a fraud investigation, SA Buttery states that he observed conversation between Minor 1 and Mr. Kuhl in his previous search of the phones when he applied for the January 25, 2023 search warrant. Accordingly, Mr. Kuhl is

also seeking to challenge the June 2022 search warrant. However, the June 2022 search warrant is based heavily upon information that was obtained by Kalamazoo Dept. of Public Safety officers executing search warrants on Mr. Kuhl's phone in 2021. Mr. Kuhl has received that KDPS warrant, but they did not include the supporting affidavit, so Mr. Kuhl is now waiting on that which will hopefully be provided by May 12, 2025. The KDPS warrant seems fatally defective and thus could be unlawful which would result in the June 2022 warrant being based on tainted evidence.

5. The February 8, 2023 search warrant for Mr. Kuhl's Facebook account was applied for by SA Buttery. In this application, SA Buttery references an earlier search of the same Facebook associated with a FBI Detroit case, and that he saw conversation between Minor 1 and Mr. Kuhl. The earlier Facebook search was conducted pursuant to a federal warrant authorized on March 8, 2022 by Magistrate Ray Kent and relied partly on evidence from the KDPS searches referenced in no. 4 above. Accordingly, Mr. Kuhl hopes to invalidate the KDPS warrants resulting in the March 2022 Facebook warrant being predicated upon tainted evidence. In order to do so, Mr. Kuhl needs the affidavits and warrants he is expecting within the next week. If the March 2022 warrant can be invalidated, then the statement SA Buttery makes in the application for the 2/8/23 Facebook warrant is tainted.

6. All 4 of the federal search warrants referenced in nos. 4 and 5 above were provided to Mr. Kuhl via discovery. However, none of these warrants state an execution date, nor contain an inventory of what was seized. This shows a continuous reckless disregard by SA Buttery for the rules governing search warrants, and maintaining evidence records. See Rule 41 of Fed. R. Crim. P. and C.F.R. § 128-50.101. As mentioned above, Mr. Kuhl brought this to the Court's attention on April 29, 2025 at the hearing to see if the Government has these records. If they do not these are further grounds to study and use to challenge the evidence.

7. As mentioned above, Mr. Kuhl filed Motions to Dismiss prior to the superseding indictment but after the original pretrial motion deadline. Due to Mr. Graham being aware of Mr. Kuhl's clear desire to file these motions, and Graham's statements conceding some of the motions he planned to file and that he was nowhere near ready and was needing to review and learn all the facts of this complex case, Mr. Graham should have moved to extend the pretrial motion deadline knowing that Mr. Kuhl's Faretta hearing was set for the day after.

8. Still to this day, the Government has not even provided all of the investigative discovery of this case necessary for Mr. Kuhl to effectively

prepare pretrial motions, let alone evidentiary discovery to prepare for trial. Indeed, the indictment alleges Mr. Kuhl received and stored videos, but Mr. Graham states he was shown at least 3 still photographs the Government intends to introduce at trial.

9. Almost 10 days ago Mr. Graham stated he was sending Defendant a description of the depictions he reviewed with the Government, but Mr. Kuhl has yet to receive such description. Depending on this description, Mr. Kuhl may have grounds to challenge the grand jury proceedings, and/or indictment.

10. Because the Forfeiture Allegation described an iPhone Model D54pAP, serial number F2LFV860D46, and the Government contends this is the iPhone seized by Indiana authorities in November 2021, Mr. Kuhl wanted to doublecheck this information. The reason for this doublechecking is because both search warrants for the Indiana iPhone describe it as an iPhone Pro Max A2342. Just last week Mr. Kuhl believes he has confirmed that this is the same iPhone seized from Indiana, but still he had to make sure. It took a while due to Defendant's uncle, who helps him significantly in investigating and defending this case, ~~has been~~ being without a means of transportation for at least 2 months and had to go to the phone store personally to obtain this information.

11. Currently Mr. Kuhl is working to obtain User Guides for the Cellebrite programs used by MSP, mentioned in the CCU Report, to extract and examine the data from Mr. Kuhl's Samsung phone at issue in this case. These User Guides are essential to see what features and capabalities ~~they~~ these programs possess, because Mr. Kuhl knows from reading Logan Koepke's Mass Extraction: The Widespread Power of U.S. Law Enforcement to Search Mobile Phones, and the cases of United States v. Gallegos-Espinal, 19-20427 (5th Cir. 2020) and United States v. Schlingloff, 901 F. Supp. 2d 1101 (S.D. Ill. 2012), that law enforcement tends to enable unnecessary features that have nothing to do with their search. Moreover, alot of content is categorized before ever having to open a file. Accordingly, knowing how sophisticated the programs are can help Mr. Kuhl argue there is no way law enforcement just "came across" the evidence that led to this case.

12. Mr. Kuhl planned on pursuing Commerce Clause challenges to the statutes he is charged with violating, as well as Congress's power to define and punish felonies under the Commerce Clause. Because this is essentially a David vs. Goliath type of argument, Mr. Kuhl needed insight beyond caselaw. Indeed, Mr. Kuhl received and utilized Randy E. Barnett's The Original Meaning of the Commerce Clause, 68 U. Chi. L. Rev. 101 (2001) to draft his Commerce Clause Motion in this case. Mr. Kuhl sent the motion with the Newaygo

County Deputies that were transporting inmates to the Grand Rapids Federal Building for court in order to be filed with the clerk. However, it was put in the outgoing mail by someone and was lost for over a week. This delayed the motion being filed which Mr. Kuhl had actually completed very close to the pretrial deadline date.

These are only some of the reasons Mr. Kuhl's previously filed motions should all be considered the merits and the pretrial deadline should be rescheduled. Mr. Kuhl prays for this relief if this case is not dismissed, and asks that motion be, brought for oral argument so Mr. Kuhl present evidence supporting his statements or granted immediately.

Very Respectfully,

S. Kuhl May 4, 2025

S. Kuhl 61189510

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

Clerk of
U.S. Dist
399 Fed.
110 Michig
Grand Rap

LEGAL

THIS MAIL HAS ORIGINATED
FROM THE NEWAYGO CO... Y JA...

GRAND RAPIDS MI
49599 #10 AM
MON 05 MAY 2025

FOREVER USA
FOREVER USA
FOREVER USA

Court
Court
dg.
n NW
, MI 49503

MAIL