UNITED STATES OF AMERICA
DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
May 14, 2025 11:24 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ns SCANNED BY: jm / 5/14

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case no. 1:23-cr-44
Hon. Jane M. Beckering
*TIME-SENSITIVE*
*HEARING REQUESTED*

# MOTION TO DISMISS AND IF NOT DISMISSED, IMMEDIATE DISMISSAL AND REPLACEMENT OF STANDBY COUNSEL

Defendant, proceeding pro se, comes before the Court to seek dismissal of the superseding indictment. However, in the event that the Court denies dismissal, Mr. Kuhl asks for IMMEDIATE replacement of Standby Counsel Mr. Graham.

Dismissal is based on the Government's misconduct and reckless disregard for Defendant's Constitutional rights and the Federal Rules of Criminal Procedure.

Replacement of standby counsel is based on the irreconcilable differences, tension, and mistrust between Defendant and Mr. Graham. Moreover, the lack of, and complete breakdown in communication is grounds for Mr. Kuhl to have standby counsel other than Mr. Graham.

Attached is a Memorandum of Law in support of this motion.

# MEMORANDUM

## BACKGROUND

As the Court already knows much of the history behind this case since its initiation on April 25, 2023, Defendant will briefly touch on facts he feels are relevant.

The Federal Government returned this indictment at a time when Mr. Kuhl was serving a mandatory 4 year sentence in the Michigan Dept. of Corrections (MDOC). Defendant had approximately 3 years remaining on this sentence. All of the evidence in this case was in the Government's possession and thus, completely available for thorough review. Moreover, the Government had ample time to prepare materials for an adequate discovery to provide to Mr. Kuhl that would comply with due process, the Fed. R. Crim. P., and other lawful authority. Accordingly, they had ample time to prepare a sufficient indictment that complied with the Fifth and Sixth Amendment, Fed. R. Crim. P. 7(c), and other lawful authority.

Defendant was deemed incompetent, which took over 4 months although only a 45 day evaluation is permitted, on December 20, 2023. It took 6 months for the Government to transport Defendant to FMC-Butner for a 4 month hospitalization. Meanwhile, they held Mr. Kuhl falsely imprisoned in federal custody under the guise of weapons charges and federal probation violation as they unlawfully built a retaliatory case (Ex. 1). Point being, during this extensive, unlawful,

and oppressive delay, the Government had more time to prepare an adequate discovery in accordance with Fed. R. Crim. 16, due process, and other lawful authority. However, it is now May 8, 2025 and the Government's indictment is still clearly misleading, insufficient, and not in compliance with the law.

As is known, Mr. Graham began representing Defendant on August 29, 2024. (See ECF No. 56) As of September 2024, Mr. Kuhl attempted to contact Mr. Graham several times while at FMC-Butner to no avail. Sometime in late September Mr. Graham scheduled a phone conference but did not ever pick up his phone when Butner staff tried multiple times to contact him. As a result, Mr. Kuhl did not ever personally meet with Mr. Graham until January 12, 2025, the day before the competency hearing.

Prior to this first time ever speaking to Mr. Graham, Mr. Kuhl sent several motions and letters asking Mr. Graham questions concerning where and when the phones were seized that were mentioned in the Forfeiture Allegation. The motions were based on the sufficiency of the indictment, getting discovery, and requesting a bill of particulars. Obviously other motions addressing speedy trial, due process, and IDRA violations were sent to Mr. Graham also.

The letters to Mr. Graham also requested that he begin investigating the case, who the supposed victim was and if it was the same victim for both charges, to view the body cam footage

of the Wyoming traffic stop my uncle had provided him, and other relevant information about my case.

Between the hearing on January 13, 2025 and the next court appearance on February 12, 2025, Defendant received partial discovery from Mr. Graham. Accordingly, Mr. Kuhl tried to personally call Mr. Graham with his concerns that the discovery was not complete and several relevant details, let alone evidence, related to the case were not disclosed. Never once has Mr. Kuhl been able to contact and speak with Mr. Graham personally. Instead, Mr. Graham chose to debate with Mr. Kuhl via brief letters that addressed only selective concerns raised by Mr. Kuhl and repeatedly told Defendant that complete discovery had been provided.

On February 7, 2025, Mr. Graham spoke to Mr. Kuhl for approximately 20 minutes via videoconference and stated that the visit was short due to other obligations, but he would meet again with Defendant prior to the February 12th Court date. However, this did not occur. At this February 12th proceeding, Mr. Kuhl moved to represent himself or be appointed new counsel. Only after this did Mr. Graham decide, for the first time, to meet with Mr. Kuhl after the proceeding in the conference room at the Federal Building in Grand Rapids. The meeting consisted of Mr. Graham explaining to me how to present my motion to have him removed or proceed prose, and that, once again, I had the complete discovery.

On February 19, 2025, a detention hearing was held and Mr. Kuhl

addressed his concerns pertaining to discovery and the sufficiency of the indictment (ECF No. 121 at PageID. 747-48, 763). Ironically, once again Mr. Graham came to speak with me after this hearing in the Federal Building conference room. It should be noted this is also the hearing during which Mr. Kuhl submitted his motion to proceed pro se. In regards to meeting with Mr. Graham, low and behold he changed his tune about discovery stating that he needed to clarify that he's not stating that I have all the discovery I'm entitled to, but only that which has been provided to him so far.

Further, Mr. Graham stated that neither party has been able to prepare for trial yet and no one is ready, him nor the prosecution. Mr. Graham also stated that he presumes the Faretta hearing will be held within a week as those matters must be decided quickly. Unfortunately, Mr. Kuhl's Faretta hearing just so happened to be set for March 6, 2025, the day after his pretrial motion deadline.

Since proceeding pro se, Mr. Kuhl filed a motion challenging the face of the indictment which the Government opposed to (ECF Nos. 100-103 and 133). However, the Government superseded the indictment on 4/15/25 and specifically changed some of the indictment Mr. Kuhl challenged. On 4/25/25, Mr. Kuhl was arraigned on the superseding indictment.

Today is May 8, 2025, and the Government has finally provided two of the inventory returns and date of execution notices as to 2 of

the 4 federal search warrants disclosed to Defendant in discovery. Moreover, Defendant, today, just received the description of the CSAM underlying this case which he reviewed weeks ago with the Government. Additionally, Mr. Kuhl has yet to speak to the digital forensics expert recommended by Mr. Graham.

RECKLESS DISREGARD AND MISCONDUCT BY GOV. WARRANTING DISMISSAL

The following grounds are the basis for Defendant's request for dismissal.

1. The Government hastily and carelessly indicted Mr. Kuhl in April 2023 under the original indictment.

2. The Government failed to prepare adequate discovery despite ample time and oppurtunity to do so.

3. The Government has misled the Court with false representations in its filings.

4. The Government filed another insufficient indictment on ~~4/15/25~~ 4/15/25, despite Mr. Kuhl addressing the multiple defects in the original indictment.

5. The Government is using delay and witholding of evidence to gain a tactful advantage over Defendant in this case and make up for its haste and recklessness in bringing this indictment.

Below Defendant will lay out why each of the grounds listed above warrant dismissal, and the facts supporting each ground.

1. The original indictment charged a timeframe between 5/13/21 and 10/31/21. However, the Government introduced evidence to the grand jury far outside of this timeframe. There was no need to rush the indictment, as stated above, Mr. Kuhl was incarcerated and all of the evidence was in the Government's possession and was not at risk of being lost or destroyed. These federal charges were brought alongside state charges for the same conduct putting stress, anxiety, oppression, depression, and emotional distress upon Mr. Kuhl. Moreover, it stripped Mr. Kuhl of the broader discovery rules under Michigan law, as well as the right to a preliminary examination which has prejudiced Mr. Kuhl. The broader discovery would allow a better understanding of the evidence against him allowing him to better prepare a defense and alleviate suprise at trial.

Additionally, the improper timeframe caused confusion in Mr. Kuhl and resulted in him basing arguments to focus on challenging evidence as inadmissible due to it being outside the timeframe specified in the indictment. It also caused Mr. Kuhl to concern himself more with

strategizing to fight against 6 months worth of evidence as opposed to the almost 16 months now under the superseding indictment. Further, Mr. Kuhl's counsel of choice was retained to fight the state charges brought prior to this indictment and now that case is almost irrelevant and Mr. Kuhl is not adequately represented so has had to proceed pro se to adequately and attentively investigate and defend against this case.

Because the Government alleged only photographs were at issue in Count 1 of the original indictment, Mr. Kuhl focused on attacking only still photos which are easier to challenge rather than videos. Moreover, the discovery mentioned videos and due to the lack of description in the indictment, Mr. Kuhl was confused and stressed out trying to figure out what he is truly being called to defend against. Then, the fact only a timeframe of 2021 was being charged, only caused greater confusion as to who this case is predicated upon and how it came to the federal government's attention. This is because the only matter brought to Mr. Kuhl's attention regarding anything sexual involving a minor involved the MSP investigation stemming from the Wyoming traffic stop in October 2022.

Accordingly, Mr. Kuhl has had to spend considerable time, money, resources, and mental focus on ascertaining what phones were referenced in the Forfeiture Allegation and where they came from. What actual depictions are being used against him and how they were obtained and where from. Indeed, Count 1 did, and still does, say

that depictions were produced using materials that have been transported in interstate or foreign commerce, but only alleges that Mr. Kuhl specifically received and stored depictions and does not say who or what produced them.

This has involved countless hours of studying on the law library, several hundreds of dollars communicating about, submitting FOIA requests, talking to phone companies, reviewing indictments of other cases from pacer charging the same offenses to compare, expenses for substantials amount of writing paper, and countless hours of writing resulting in large painful calluses on Defendant's right hand. Indeed, Mr. Kuhl finally was informed of where and when the phones referenced in the Forfeiture Allegation were seized, on or about 3/31/25 when he received ECF No. 123 from the Government. Accordingly, this is beyond the pretrial motion deadline and thus, Mr. Kuhl could not effectively challenge a phone's evidence if not informed of how the Government obtained such phone. Essentially, the lack of notice and discovery has essentially caused Mr. Kuhl to forfeit several motions because now they are untimely, and if granted leave to file an untimely motion, the arguments are not preserved for appeal if necessary. Thus, Mr. Kuhl has been irreparably prejudiced.

2. Seeing as each ground is intertwined and related to the others they all incorporate each other. This is the Federal Government and U.S. Attorney VerHey has been a prosecutor for over 10 years.

Accordingly, the prosecution is very well aware of the Federal Rules of Criminal Procedure and the requirements of due process governing discovery in criminal prosecutions. Thus, there is no excuse for the fact it is over 2 years after Mr. Kuhl was indicted and almost 3 months since being arraigned, and Mr. Kuhl still has not been provided with discovery basic to his defense and subject to disclosure under Fed. R. Crim. P. 16. Indeed, Mr. Kuhl has requested such discovery material numerous times.

The messages seized from Mr. Kuhl's phones belonged to him, are intended to be used by the Government in its case-in-chief at trial, and are material to preparing a defense. Thus, under 16(a)(1)(E) these messages in their entirety are required to be disclosed upon Mr. Kuhl's request. Accordingly, the Government knew this yet did not have these materials prepared for disclosure despite having over 2 years to do so. This prejudices Mr. Kuhl because not one message from Facebook or texts shows Mr. Kuhl requesting a photo or video of sexually explicit conduct from Minor 1. Therefore, because the original indictment specifically said Mr. Kuhl only "used" Minor 1 in Count 1, Defendant has based his defense on the fact he can't have "used" Minor 1, as that term is applied in the context of §2251(a) violations, and received and stored depictions. Seeing as no message has been disclosed which shows Mr. Kuhl even requesting sexually explicit depictions, it seems the terms "persuade," "induce," and "entice" are inapplicable to his case.

However, now the superseding indictment adds the words "persuade" and "entice" to Count 1 along with "used." Accordingly, Mr. Kuhl is again forced to have to change strategy, study more caselaw, and request this undisclosed material information that should have already been disclosed. Even if not immediately disclosed, such messages should have been ready for disclosure upon my request. Instead, the Government gets almost 30 days to disclose this material while Mr. Kuhl, in his pro se capacity, is not even allowed 30 hours to study, prepare, and submit his pretrial motions. Indeed, there is a limited context test applied to considering whether a depiction is sexually explicit by taking into account evidence that is only directly related to the production of the depictions. See United States v. Brown, 579 F.3d 672, 683 (6th Cir. 2009).

Additionally, the Government supposedly disclosed a portion of discovery on 1/15/25 to Mr. Graham. In this discovery two MSP reports were provided which stemmed from a traffic stop that was conducted by Wyoming PD on 10/13/22. This traffic stop resulted in Defendant's arrest and the seizure of his 2 phones. The Wyoming PD incident report concerning this traffic was also in the initial discovery packet.

Hower, both MSP reports were not complete and still Mr. Kuhl has not been provided either of these complete reports. Defendants knows they are incomplete because he obtained both

via FOIA requests and several pages are missing from the reports provided by the Government in discovery. Also, the search warrants and affidavits, one to search the download from Defendant's Samsung, was also missing from the original discovery packet provided by the Government in January 2025. This search warrant was specifically for CSAM and is referenced by the Government in its response to Defendant's Motion for Discovery (ECF No. 123 at PageID.773). The Government withheld this material piece of discovery until 3/27/25, when it sent it to Mr. Graham as part of "Discovery 2." Accordingly, this again essentially forced Mr. Kuhl to forfeit his oppurtunity to effictively review such warrant and timely challenge it in a pretrial motion because the deadline for such motions passed weeks before on 3/6/25. Indeed, Mr. Kuhl did not receive "Discovery 2" until 4/2/25, as noted in his Motion to Show Cause Why Government Should not be Sanctioned (ECF No. 138 at PageID. 987).

Today is May 8, 2025 and, as noted above, Mr. Kuhl received the inventory and date of execution for the 1/25/23 and 2/8/23 federal search warrants. Mr. Kuhl spent time studying and preparing a challenge to those warrants based on the failure to abide by Fed. R. Crim. P. 41. Again, Mr. Kuhl is forced to change strategy again and now move to try and extend the motion deadline to properly and timely move to suppress evidence obtained under these warrants. As noted above, untimely motions are not preserved for appeal, so

this delay in disclosure prejudices Mr. Kuhl. Moreover, Mr. Kuhl now questions the credibility of these returns as to whether they were returned to the clerk as required by Fed R. Crim. P. 41. Or did the Government and SA Buttery simply put these together with untruthful dates because of Mr. Kuhl's persistent investigating.

Further, the MSP reports that portions of were provided to Defendant in the original discovery packet, both reference a CCU Report which pertains to the extraction taken from the Samsung phone at issue in this case. However, the Government never disclosed this material information via discovery. After almost 4 months and at least 4 FOIA requests between MSP and Wyoming PD, Mr. Kuhl finally obtained the CCU Report on 5/3/25. This report reveals the program version used to extract the data from the Samsung phone and examine it. It also contains some interesting information and an image of the iPhone seized by Wyoming PD with a SIM Card taped to the back, but no picture of the Samsung is provided. While the Samsung is discussed in the report, there is no mention of a SIM card being taped to the back as Wyoming falsely stated there was. Defendant is now moving to obtain the picture of the Samsung seized by Wyoming PD and turned over to CCU for the search. Surely there must be one or should be at least, seeing as the CCU report had the Mobile Device Examination and Seizure Checklist for the iPhone, which is what displays the image of the iPhone.

Accordingly, the withholding of this material information has further delayed and hindered Mr. Kuhl, costing him time, money, and focus and thus, prejudicing him. Indeed, this report references the media classification Mr. Graham and Defendant mentioned to the Court on April 29, ~~2022~~ 2025 when discussing cell phone extractions in general. Such reckless disregard for the rules of Discovery and Mr. Kuhl's due process should not go unpunished.

3. The Government has asserted false and misleading statements to the Court knowingly and/or with reckless disregard for the truth. Mr. Kuhl discussed some of these issues in his Motion to Show Cause (ECF No. 138). Included to those issues is the fact that the Government essentially ignored the Courts Order to provide Mr. Kuhl with the returns from search warrants authorizing the search of his phones, Facebook or other social media accounts, and any other digital devices (ECF No. 140 at PageID.1002). Indeed, the returns from the 1/25/23 and 2/8/23 warrants were only sent after the Court ordered the Government to do so again at the April 29th hearing. Moreover, no returns have been provided for the 6/29/22 and 3/8/22 search warrants of Defendant's phones and Facebooks. No warrant has been provided for the search of Facebook User ID 972956813592165 referenced in the 6/29/22 search warrant as being operated by Defendant and was searched in March 2022. However, the 3/8/22 search warrant describes ~~5~~ 2 different Facebooks

operated by Defendant Point being, the Government has repeatedly made false statements and disobeyed discovery Orders by this Court, and rules governing discovery.

4. Although the Government claimed nothing was wrong with the original indictment, a superseding indictment was brought against Mr. Kuhl on 4/15/25. While it expanded the timeframe and added the verbs "persuaded" and "enticed" to Count 1's second statement, the indictment is still clearly defective. Moreover, the expansion of the timeframe for both counts clearly shows the Government improperly presented evidence outside the timeframe of the original indictment to the grand jury in April of 2023. Mr. Kuhl was held in Federal custody for 2 years under misconduct by the Government in a grand jury proceeding. This outrageous misconduct cannot go unpunished.

Defendant does not have access to the actual motion, but believes it is docketed as ECF No. 174. This is Defendant's Motion to dismiss the indictment (superseding) due to its multiple fatal defects. Attached are multiple indictments from this district that also charge §2251(a) violations, which are far more specific in time and conduct, and actually establish the interstate commerce element within the 4 corners of the indictment. Moreover, these indictments display that "used" is improperly applied in Count 1 of Mr. Kuhl's superseding indictment as to the narrative alleged. Several of these issues were presented by Mr. Kuhl in ECF Nos. 100-103, yet the Gov.

blatantly refused to remedy these clear errors.

Moreover, the letter received by standby counsel Scott Graham today (Ex. 2), clearly describes 3 still photographs of a female the Government contends is Minor 1 and plans to introduce at trial. However, Count 1 of the superseding indictment specifically alleges that Defendant received and stored "videos." The original indictment contained the word "photographs" instead of videos, but Mr. Kuhl challenged this because only 1 photograph was described in the original discovery packet which was supposedly Minor 1's buttocks while wearing a thong. Now the superseding indictment states "videos" specifically, but there are at least 3 still photographs. Accordingly, Mr. Kuhl has no idea how many videos or photographs are the basis for Count 1, nor what these videos and photographs are alleged to depict. Thus, Mr. Kuhl is not certain what was presented to the grand jury, nor can he claim double jeopardy in the event of a future prosecution on one or many of these same depictions. The Government may have presented all of the depictions to the grand jury, but only present some at trial, and withhold others to bring a future prosecution. The Government's reckless disregard for Mr. Kuhl's Fifth and Sixth Amendment rights inherent in being charged only by a sufficient indictment passed upon grand jury, compounded with the excessive time and oppurtunity to cure the deficiencies, cannot go unpunished.

5. The Government brought these charges in haste and recklessness, without actually reviewing evidence, investigating the facts, and adequately preparing for a trial. It proceeded on the presumption that Defendant, as most defendants do, would plead guilty. Now, Mr. Kuhl has shown persistence in investigating the evidence, allegations, law enforcement conduct, and investiggation that these charges are founded upon, and the Government needs to get all of its facts straight and actually see what it has.

By withholding discovery and spoonfeeding discovery, while retaining Mr. Kuhl's entire life amongst mountains of digital data that is private, intimate, and sentimental to Defendant, the Government is using this time to comb through data and look into every crack and crevice while Kuhl is left clueless. Indeed, the Government has admitted that it possesses tens of thousands of visual depictions belonging to Mr. Kuhl while only a handful of those depictions are alleged to be related to this case. It is the same for Mr. Kuhl's private communications from phones and Facebooks.

As noted above, this data belonged to Mr. Kuhl and was taken from him, thus under Fed. R. Crim. P. 16 it <u>must</u> be disclosed upon Mr. Kuhl's request. Yet the Government has held this stuff, some of it, for over 3 years, and the rest for over 2 years. Still, they have not parsed the few visual depictions and the conversations with one person, from the multitude of data. As U.S. Magistrate Kent stated during the hearing on 4/29/25, there is no way to ensure the Gov. is

not essentially going through Mr. Kuhl's grocery list.

Accordingly, Mr. Kuhl has asked for return of the data not directly related to this case. Still, the Government is now building its case while Mr. Kuhl is not even aware of one message by him asking for CSAM as Mr. Graham claims the Government will introduce at trial. (Ex 2) Moreover, the Government states there are thousands of texts between Defendant and Minor 1. Indeed, the Government is going through such texts limitlessly and at thier own sweet pace while Mr. Kuhl cannot do so and will have a far shorter period of time. This is clearly prejudicial to Mr. Kuhl in that it places him at a further substantial disadvantage where an insurmountable disadvantage already exists, erodes his right to a fair and speedy trial, and infringes upon his due process. Because of the large timeframe and lack of specificity, some communications could be used at trial in this case and then separate communications from within this same timeframe, to this same individual, could be used in a future prosecution for the same offenses.

When Mr. Kuhl is presented with the entirety of the messages between him and Minor 1, as well as a clear description as to what depictions the Government truly intends to introduce at trial, this will most likely result in another adjustment instrategy and further timely research and analysis. All of this would have been avoided had the Government actually reviewed and prepared its case and provided the lawfully required discovery instead of acting

in arbitrary and unnecessary haste and reckless disregard for Mr. Kuhl's rights and the law. Accordingly, this misconduct and injury to Defendant should be remedied by dismissal of the superseding indictment.

## REPLACEMENT OF STANDBY COUNSEL

While Mr. Graham is not representing Mr. Kuhl he is still required to review and stay informed as to the facts and proceedings in case Mr. Kuhl later decides to forfeit self-representation or the Court revokes such status. In such event, Mr. Graham would take over. Additionally, Mr. Kuhl is afforded some guidance by and communication with standby counsel. Indeed, the U.S. Magistrate Kent has ordered the Government and Mr. Graham to facilitate discovery to Mr. Kuhl and told Defendant to "speak" with Mr. Graham about what trial will look like. Moreover, Magistrate Kent has asked Mr. Graham his opinion on matters concerning discovery in this case, and Mr. Graham is paid for his standby capacity just as if he was representing Mr. Kuhl fully.

Accordingly, Mr. Kuhl should at least be able to communicate with standby counsel occasionally. Further, Mr. Kuhl should be able to ask Mr. Graham to get relevant reports such as the complete MSP reports mentioned above and the CCU Report. Also, Mr. Kuhl should be able to utilize Mr. Graham's investigator to interview witnesses

on his behalf. Indeed, Mr. Graham should do this as he has to be prepared to take over at any time.

However, the oppurtunity to communicate with Mr. Graham is nonexistent. While Mr. Kuhl can contact Mr. Graham's secretary occasionally, never once has ~~Mr. Graham~~ Mr. Kuhl been able to contact Mr. Graham directly. This complete lack of communication is part of the reason Mr. Kuhl is now pro se.

The issues go beyond the lack of communication though, which, by the way, Mr. Kuhl has been informed by people other than criminal defendants, is a common issue with Mr. Graham. There is no trust or confidence left for Mr. Kuhl to put in Mr. Graham in any capacity. Tension and animosity has gone beyond repair as can be seen in the letter attached as Exhibit 2.

Mr. Graham mentions Minor 1's testimony and data pulled from her phone being presented regardless if I can get the alleged incriminating evidence seized from my phones and Facebook suppressed. Mr. Kuhl is uncertain of this argument because Minor 1 was only interviewed based on the evidence unlawfully obtained (if suppressed). Accordingly, this investigation is directly a result of exploiting tainted evidence which it seems to Mr. Kuhl would deem all of it inadmissible. Indeed, no one contacted law enforcement on Minor 1's behalf to file any type of sexual complaint against Mr. Kuhl. Moreover, Mr. Kuhl is not even aware that data was pulled from Minor 1's phone, which Mr. Kuhl would know if Mr. Graham actually communicated with him.

Accordingly, Mr. Kuhl does not have any confidence or trust in Mr. Graham proceeding in any capacity standby or representing counsel and asks that he be replaced immediately. Sadly, Mr. Kuhl has uncovered a direct significant lie and withholding by Mr. Graham and his staff in this case which Mr. Kuhl wishes to bring to the Court's attention in chambers. This is not frivolous, this is not a mistake or misunderstanding. It is clear concrete dishonesty and withholding of material information.

For these reasons, Mr. Kuhl seeks immediate replacement of Mr. Graham as standby counsel. Unfortunately, Mr. Kuhl probably lost a good and diligent attorney in Britt Cobb last August due to a misunderstanding. Mr. Graham may be a smart guy, but Mr. Kuhl does not and cannot place any faith or confidence in him and asks for this requested relief as his last and only option. Sadly, this may result in Mr. Kuhl losing the laptop provided to view the body cam footage from Wyoming and other evidence such as his interview with MSP, but Mr. Kuhl requests to keep the laptop to view the MSP interview as it has not been provided yet. Upon conclusion of this case, the laptop can be returned to Mr. Graham.

Respectfully submitted,

[signature] 5/8/25

S. Kuhl 61189510




Court
Court
Bldg.
gan NW
pids, MI 49503

IL

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

Clerk o
U.S. Dist.
399 Fed.
110 Mich
Grand Ra

LEGAL M