UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
May 22, 2025 12:36 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 5-27

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case No. 1:23-cr-44
Hon. Jane M. Beckering

# MOTION TO SUPPRESS EVIDENCE

For the reasons in this motion, Mr. Kuhl moves to suppress all evidence in this case due to such evidence being unlawfully obtained or deriving from such unlawfully obtained evidence. Thus, all of the evidence is tainted, or in other words, fruit of the poisonous tree. In obtaining this evidence, law enforcement violated Defendant's rights to due process of law and freedom from unreasonable searches and seizures protected by the U.S. and Michigan Constitutions.

Attached is a supporting Memorandum of Law. The facts and background of this case are already known to the Court and are further described in the contemporaneously filed Motions to Suppress. Moreover, the attachments to those Motions are incorporated herein by reference to provide guidance to the Court as Kuhl only has limited copies and the jail's copier is down.

# MEMORANDUM

## I. GENSTERBLUM EXCEEDED THE SCOPE OF THE WYOMING PD SEARCH WARRANT, SO DID MEREDITH

### Legal Standard

"[G]iven the Constitution's requirement that law enforcement officers executing a search warrant remain within the strict bounds of the warrant, the Court must refrain from relying on the approving judge's apparent intent to expand the scope of the warrant." United States v. Bouknight, 467 F. Supp. 3d 1227, 1239 (M.D. Fla. 2020) (quoting United States v. Robinson, 358 F. Supp. 2d 975 (D. Mont. 2005)).

The Supreme Court has instructed, "the plain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S. Ct. 2022 (1971). In order to avoid suppression, evidence obtained under the plain view doctrine must meet three requirements. "First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right to access the object itself." United States v. Stabile, 633 F.3d 219, 241 (3rd Cir. 2011).

However, to apply the plain view doctrine, one must ascertain the evidence was even seizable under the warrant, and actually in plain view. Accordingly, Kuhl looks to United States v. Carey, 172 F.3d 1268,

1273 (10th Cir. 1999), as well as the case of Robinson cited above for partial guidance to the Court when deciding this motion. Indeed, Gensterblum's inconsistent claims as to how he "came across" suspected evidence related to sex crimes involving a minor, makes it extremely concerning to Defendant that any credibility may be given to Gensterblum's testimony.

Accordingly, Mr. Kuhl will also reach briefly into Sergeant Meredith's seizure of data from the Samsung phone to establish that the seizure exceeded the scope of what was authorized under the Wyoming PD search warrant. Indeed as in Bouknight and Robinson, looking to the warrant and the facts stated within pertaining to the Samsung, it is very likely the judge refused to authorize the seizure of any data from the Samsung phone.

1. The Extraction of the Samsung's Contents Exceeded the Scope of the Wyoming PD Warrant

As mentioned in Defendant's contemporaneously filed motion to suppress, the warrant of Wyoming PD does not authorize the Samsung's data to be seized at all. The circumstances here are somewhat closely similar to Bouknight and Robinson cited above.

In Bouknight, officers were investigating delivery of drugs resulting in death. A woman named Haley Bishop died on September 6, 2018, due to suspected fentanyl use. Bouknight was suspected of being the one who sold Bishop the drugs that killed her. Accordingly, officers

applied for a state search warrant to obtain cell phone data for a phone number believed to be associated with Bouknight. The search warrant applied for was intended by police to get the phone's data for the period from 9/1/2018 through 9/7/2018.

However, the last statement of the warrant ordered the phone carrier, T-Mobile, to release data only for 9/6/2018. The Magistrate judge deemed that the reference to the specific date of only 9/6/2018 was merely an oversight, because both the warrant and the affidavit clearly stated the data should be provided for the period 9/1/2018 to 9/7/2018 and thus, obtaining data outside 9/6/2018 did not exceed the scope of the warrant. Observing the analysis of the Robinson case cited above, the District Court Judge went ~~agaird~~ against the Magistrate's recommendation and held that the data obtained outside of 9/6/2018 was not authorized to be seized and was suppressed.

The Court held that "although the Bouknight Warrant includes a probable cause finding for the 'Historically Stored Data' defined as the data from September 1st through September 7th, the Bouknight Warrant ultimately directed T-Mobile to release data only for September 6th, the date of the drug transaction and Bishop's death. In order to conclude that the search in this case did not exceed the scope of the Bouknight Warrant, the Court would have to assume that the issuing judge intended to authorize the release of all data sought in the Bouknight Affidavit and that she failed to notice that the Bouknight Warrant authorized data for September 6th only.

Certainly that is possible. However, it is also possible that the judge did read the Bouknight Warrant and determined that the search should be limited to September 6th - the date of the victim's death." Id at 1239.

Similarily, the Wyoming PD Warrant did not list the Samsung phone under the "And to there seize, secure, tabulate..." statement. Seeing as the affidavit did not clearly specify any criminal conduct that the Samsung was suspected of containing evidence of, and did not specifically state who used or controlled the Samsung, it is a likely possibility the judge who authorized the warrant determined that the seizure of any of the Samsung's contents should not be authorized.

Accordingly, section nos. 2 and 3 of the Wyoming PD warrant, which authorized the executing officers to view, photograph, record, copy, forensic image, and conduct forensic analysis of any and all data, and enlist the aid of a law enforcement computer forensic laboratory to do so, applied specifically to the information in item list #1. Section #1 of the Warrant applies to the phones under the "And to there seize, secure, tabulate..." statement, which the Samsung is not a part of.

However, Kroschel did enlist the aid of Sgt. Meredith in a law enforcement computer forensic laboratory to seize, secure, and tabulate the Samsung's data. Indeed, the CCU Report - 2980-22, which the Government did not provide via discovery, does state that Meredith conducted a forensic analysis of the Samsung's entire data and

viewed, photographed, and forensic imaged such data. Thus, the extraction and other conduct performed by Meredith on the Samsung phone, and its data, clearly exceeded the scope of the warrant.

2. Gensterblum Did not Have Authorization to Search the Samsung or its Data

Just as the Wyoming Search Warrant did not authorize the seizure and forensic analysis of the Samsung's data, neither did it allow for the search of evidence related to a specific crime. Indeed, Coleman's phone was to be searched for any and all evidence of PWID and Kuhl's phone (Green iPhone) was to be searched for any and all evidence of PWID and FTD-Illegal Sale/Use. Accordingly, Gensterblum was not authorized to search the Samsung's data for evidence of fraud or any crime. Just as he got an additional search warrant for CSAM, Gensterblum should have gotten another search warrant to search for evidence of fraud prior to going through the Samsung's data.

Because Gensterblum had no lawful right to access the Samsung's data extraction in the first place to "come across" any of the incriminating evidence of a sexual nature. Indeed, Gensterblum violated the Fourth Amendment and due process in arriving at the place where supposedly "came across" this evidence.

Accordingly, such evidence must be suppressed.

3. The Data Pertaining to Fraud had Already Been Identified and Separated Therefore Gensterblum had no Business Looking in Other Areas Such as Text Conversations and Photos not Already Classified as Fraud Evidence

Assuming the extraction of the Samsung's data was lawfully obtained and Gensterblum was authorized to examine such, the looking beyond the substantial incriminating evidence already identified, was a reckless disregard for the limits of the Wyoming search warrant. Indeed, the CCU Report provided to Gensterblum had already identified the 994 images of Photo IDs, a video of a check being printed, Telegram conversations pertaining to fraud, and bank account information for several subjects.

Cellebrite was used to extract this data and analyze such. The program is capable of classifying images and messages to specific subjects. Moreover, this had been already for Gensterblum, but still Meredith had turned over the entirety of the Samsung's data. This clearly ran afoul of clearly established law that the search of entire device's data is unconstitutional. See People v. Hughes, 506 Mich. 512; 958 N.W.2d 98 (2020). Despite this clearly established law Meredith gave over all of the Samsung's data and Gensterblum went on a reckless rummaging of that data. Thus,

not only did they exercise a flagrant disregard for clearly established law, they also flagrantly disregarded any limitations maintained by the warrant.

"A flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search requiring the suppression of all evidence seized during the search." United States v. Lambert, 771 F. 2d 83, 93 (6th Cir. 1985).

Gensterblum went reading through ordinary conversations that were not on Telegram and had no relation to fraudulent activity. Gensterblum just went on an exploratory rummaging of Defendant's text messages. As mentioned above, the AI system within Cellebrite can categorize conversations as religious, sexual, gang-related, drug-related, fraudulent, etc. Moreover, search terms can be used to find conversations about specific topics. All of these features were utilized improperly or not at all, by Gensterblum to limit his search and ensure that data not related to the evidence sought was not searched. Instead Gensterblum was on a limitless rummaging with no care for due process or reasonable searches and seizures mandated by the U.S. and Michigan Constitutions and Meredith assisted him.

Furthermore, subsection F of #1 in the Wyoming warrant described "Text messages (SMS), multimedia messages, recorded messages, and subscriber information modules (SIM cards), but did not state that such data be "related to the above-described

criminal activity." Because the text messages, etc. were not restricted to, or believed to be, related to criminal activity, Gensterblum's reading of such went beyond the scope of the warrant.

4. The Text Messages READ by Gensterblum Were Months Old

Due to Defendant's own strenuous digging, parts of the interview between Gensterblum and Minor 1 were revealed to Mr. Kuhl and Gensterblum states in his summary of the interview, that the last messages he could find between Kuhl and Minor 1 were several months prior. Thus, before ever opening the conversation between Kuhl and Minor 1, Gensterblum could see they were not recent. Indeed, Cellebrite has a very friendly and informative graphic user intaface that displays dates of correspondence and a timeline of frequency. Accordingly, Gensterblum opened these messages seeing that there was no recent correspondence and the relevance was not there.

5. The Incriminating Character of the Texts Were not Immediately Apparent

Gensterblum claims, inconsistently, that he "came across" a conversation between Defendant and Minor 1 where Minor 1 stated she was a sophomore in highschool and was going to start

drivers training soon, or had not yet attended drivers education. Gensterblum for some reason continued reading this conversation and claims Minor 1 revealed her full name and sent numerous "selfies" of herself to Mr. Kuhl. Clearly this is not incriminating evidence and thus, Gensterblum should have immediately turned his attention elsewhere.

Instead, Gensterblum abandoned any search related to fraud and began investigating who Minor 1 was ~~and~~ as well as continued to read through this conversation. Eventually Gensterblum claims the conversation turned sexual in nature and he "came across" a video sent from Minor 1 to Defendant of a vagina being digitally penetrated by a black female. Gensterblum claims he "came across" another video of Minor 1 nude in the shower touching her breast.

Accordingly, a conversation discussing being a sophomore and drivers training is not incriminating in any sense. Especially seeing as the age of consent in Michigan is 16 and sophomores are typically 15 or 16, as Gensterblum states in his affidavit to obtain a search warrant for the Samsung's data to search for CSAM. Regardless, age of consent is not even a factor because the conversation was not immediately sexual in nature. Indeed, by the time Gensterblum applied for the second search warrant he had far exceeded the scope of the Wyoming Warrant. Due to Gensterblum's flagrant disregard for the protections of the Fourth Amendment and limitations, if any, that the Wyoming

warrant had, suppression must be applied to deter ~~and~~ him and other law enforcement officers, including Kroschel and Meredith, from such unconstitutional conduct.

6. Due to Gensterblum's Inconsistent Account of how he "Came Across" Incriminating Evidence of a Sexual Nature he Deserves no Credibility

There are two separate investigations that Gensterblum initiated after receiving the Samsung and the flash drive containing the extraction of its contents. One was for fraud and the other for CSAM. An incident report was prepared for each. The fraud report is FIT-0000087-22 and the CSAM report is FIT-0000091-22. There are also supplemental reports for each investigation as well.

Page 1 of the fraud supplemental report #001, states that an initial examination of the Samsung extraction revealed images of possible CSAM. Page 1 of the original CSAM report is consistent in that it states Gensterblum "came across" CSAM after analyzing the phone extraction from Meredith. However, this differs from Gensterblum's affidavits to search Minor 1's Facebook and Kuhl's Samsung extraction, where he claims to have came across a sexual conversation between Minor 1 and Kuhl.

Indeed, the Government seems to stand by the claim that

Gensterblum "encountered messages between Kuhl and Minor 1 and quickly realized that it could relate to sexual contact with a minor" (ECF No. 123 at PageID.773). However, Gensterblum did not quickly realize anything, but instead kept reading through this conversation although it did not immediately appear incriminating. Quickly is not the standard to consider, the incriminating nature of the material must be immediately apparent. This numbered section intertwines with no. 5 above. Gensterblum kept reading through this conversation to discover Minor 1's name and discover multiple selfies, and eventually videos after the conversation had turned sexual.

So the conversation supposedly started off discussing Minor 1's grade in highschool and not taking drivers education yet. Gensterblum read on to find her name and selfies sent from her to Kuhl that were not sexual. Then, the conversation took on a sexual nature and Gensterblum continued to read. After this continuous unlawful reading, Gensterblum stumbled across a video sent to Kuhl from Minor 1 of a vagina being digitally penetrated. However, Gensterblum does not stop there but continues to go through the conversation and discover a video sent from Minor 1 to Kuhl of a nude female in the shower touching her breast. According to page 5 of 8 of the original MSP report FIT-0000091-22, these 2 videos were sent over 3 months apart from one another.

This continuous limitless rummaging of this conversation went beyond any scope of the Wyoming PD warrant and is similar to <u>United</u>

States v. Carey cited above, and United States v. Armstrong, 23-cr-324 (NEB/LIB) (D. Minn. Mar. 12, 2024). Indeed, Gensterblum did not seek a seek warrant for evidence of sexual contact with a minor as the Government deceitfully states (Page ID. 773), but sought a search warrant specifically for CSAM. This is because Gensterblum could not ascertain Minor 1's age and only had any possible incriminating evidence once he kept unlawfully reading through the conversation and discovered the videos, because only such visual depictions of someone able to consent sex but under 18 would be illegal.

Accordingly, Gensterblum flagrantly disregarded the limitations of the Wyoming warrant, clearly established law under Hughes, and the guarantee to be free from unreasonable searches and seizures under the U.S. and Michigan Constitutions. To prevent and deter such misconduct, suppression must be granted.

7. Was Gensterblum Truly Searching for Evidence of CSC

Due to Gensterblum's unlawful reading of the text conversation between Kuhl and Minor 1, and the reference to CSC in the Wyoming PD affidavit prepared by Kroschel, it seems like Gensterblum was indeed searching for evidence of CSC. Clearly this reference left open and even encouraged officers executing the search to look for evidence of CSC whether such reference was a mistake or intentional.

Moreover, Gensterblum should have noticed this substantial inconsistency and stopped his search to question what was truly being searched for and obtained a proper warrant before examining the phone extraction at all.

Additionally, statement no.7 of Gensterblum's affidavit leaves it possible that Gensterblum originally felt he was authorized to search for evidence of CSC but not CSAM. "Due to the original search warrant not containing a request to search for CSAM, Affiant is requesting this search warrant."

Regardless, whatever the situation truly was, whether Gensterblum exceeded the scope of the warrant, or thought he could search for CSC evidence, both situations create unconstitutional conduct. Clearly no probable cause was established for a search of CSC evidence and Gensterblum should have known the entire warrant was defective. No reasonable officer would have relied on the Wyoming warrant to search the Samsung's contents for any crime including CSC.

## II. THE MSP SEARCH WARRANT AND ~~AFI~~ AFFIDAVIT ARE INVALID

a. The warrant and affidavit did not particularly describe the place to be searched and things to be seized

A search warrant and affidavit prepared by Gensterblum was issued on 11/09/22 by the same mysterious judge who authorized the Wyoming PD search warrant. The MSP warrant states that "the person, place, or thing to be searched is located at Michigan State Police - Grand Rapids Post" and gives the Post's address. It then goes on to state that the "PROPERTY to be searched for and seized, if found, is specifically, described as: The contents previously downloaded from Samuel Alexander Kuhl's Samsung Cellular device." There is no description of the medium (16 GB Lexar Flash Drive) holds the contents previously downloaded, nor does it state the download such contents were downloaded or the date such download came into possession of the MSP. It also does not state where in the Post the download is located.

While the search warrant states that Gensterblum "has sworn to the attached affidavit," it does not state that the affidavit is incorporated by reference. Even if the affidavit is appropriately incorporated, the warrant still fails to particularly describe the place to be searched and things to be seized for the following reasons: (1) Inconsistencies as to when Gensterblum reviewed the contents turned over to him from Wyoming PD. Statement no. 2 of the affidavit states Gensterblum began

investigating an ~~id~~ identity theft case on 10/26/22, but the MSP fraud report states that Gensterblum received the phone and the extraction on 10/31/22 from Meredith. The date of 10/26/22 is also inconsistent with the MSP CSAM report which states Gensterblum received the extraction on 10/28/22 from Meredith. It is impossible to tell when Gensterblum received the phone extraction or how many extractions he truly received. Thus, the lack of particularity as to what device held the contents previously downloaded from Kuhl's Samsung Cellular device fails to adequately describe the place to be searched; (2) The affidavit does not state anything about an extraction being taken from Kuhl's phone. Indeed, statement 2 says a warrant was obtained to search Kuhl's phone for drug trafficking and statement 3 says Gensterblum came across a conversation between Kuhl and Minor 1 while searching the contents of Kuhl's phone; (3) Affidavit does not particularly describe the Samsung phone and the MSP report incorrectly describes the phone as a Blue/Green S21 when it was a Blue S22; (4) Affidavit does not describe the device that contains the Samsung's extraction; (5) Affidavit does not describe where in the MSP Post the contents previously downloaded from Kuhl's phone is being kept; (6) Section B of the warrant and affidavit state that the "property to be for and seized" is "the contents previously downloaded from" Kuhl's "Samsung cellular device including, but not limited to, text messages, photographs, videos, downloaded items, social media account downloaded information, any and all applications that could

contain photographs or videos or child pornography/sexually abusive material." This is not particular because it states including but not limited to, which means any and all data within the contents. Moreover, it states any and all apps that could contain photographs or videos or child porn/CSAM. Thus, it is not limited to child porn/CSAM at all but is limited to any photos or videos or child pornography which allows for a general rummaging. Further, none of the described items, i.e., text messages, downloaded items, etc. are limited to child porn by the languge of the warrant and affidavit; (7) Below paragraph no. 7 of the affidavit it states "Affiant requests this Honorable Court issue a warrant to search for and seize the property specified in Section 'A' above." This does not request a warrant to search for and seize the contents of Kuhl's phone. Indeed, Section "A" specifically describes only the "Michigan State Police - Grand Rapids Post" and the address of that location. Meanwhile, Section "B" describes "the contents previously downloaded from" Kuhl's "Samsung cellular device." Thus, the affidavit only requested, and the warrant only authorized, Gensterblum to search for and seize the MSP - Grand Rapids Post, nothing else; (8) No time limit was placed for the search as to how far back the contents could be examined.

## III. THE JUDGE WHOLLY ABANDONED THE JUDICIAL ROLE

As noted above, the same judge that authorized the clearly defective Wyoming PD Search Warrant, also authorized the search warrant prepared by Gensterblum for the contents previously downloaded ~~for~~ from Kuhl's phone. Again, this judge has displayed he/she is simply a rubber stamp for police.

(1) This judge knew that the Samsung phone referenced in the MSP affidavit and search warrant was the same Samsung phone from the 10/14/22 Wyoming PD warrant authorized by him/her less than a month earlier. Thus, the judge would've known that the Samsung was never authorized to have its data seized in the first place if he/she actually read Gensterblum's affidavit, which referenced the Wyoming incident and warrant authorized by the same court - 62A District Court. By allowing this further search, of that same Samsung phone but for CSAM now, without asking any questions or raising any concern, is an issue that displays the judge's reckless disregard for Fourth Amendment rights.

(2) The judge failed to notice, correct, or question the fact that the term "or" preceded "child pornography/sexually abusive material" in Section "B" of the search warrant and affidavit. This clear and noticeable error, made not once, but twice, taken into account with the clear and numerous errors of the Wyoming PD warrant and affidavit, just less than a month prior, further displays

this judge's reckless disregard.

(3) The fact that the Affiant requests a warrant be issued to search for and seize the property specified in Section "A," and that section only describes the MSP-Post, and the judge failed to notice, question, or correct this error just further proves his/her reckless disregard.

(4) The judge's failure to ask for any identifying identify information as to the Samsung phone or device containing the contents previously downloaded shows that this judge is a rubber stamp for police.

(5) Seeing that this was a completely unrelated crime to that for which the affidavit states was originally being investigated by Wyoming PD, the judge abandoned the judicial role by not asking for some type of search protocol and temporal limit for the search.

## IV. WYOMING PD AND MSP TAMPERED WITH/ ALTERED EVIDENCE AS WELL AS RECKLESSLY DISREGARDED POLICY FOR EVIDENCE MAINTAINING AND CHAIN OF CUSTODY

Wyoming PD/ Meredith of CCU/ICAC illegally obtained evidence, mixed phone extractions, and have deliberately tried to cover it up. Moreover, officers of Wyoming PD and MSP failed to properly follow departmental policies and procedures set in place to ensure a proper chain of custody and integrity of evidence. The following facts establish this claim.

1. The inconsistencies as to when and how many phonextractions Gensterblum recieved from Meredith. MSP Search Warrant affidavit states 10/26/22, the MSP Fraud Report says 10/31/22, the MSP CSAM Report says 10/28/22, and the Wyoming Police report says the evidence and case was turned over to MSP on 11/01/22.

2. Meredith is referred to as Wyoming PD CCU member, which is Computer Crimes Unit, however Wyoming PD refers to Meredith as as a member of Internet Crimes Against Children (ICAC). This supports that Kuhl's phones were searched prior to obtaining a warrant because Drug dealing of Marijuana and Fraud do not constitute Internet Crimes Against Children.

3. On MSP's Incident Property Report for the fraud investigation, FIT-0000087-22, Journal entry 0003 for the Samsung phone describes the phone being transported from Grand Rapids to Kalamazoo on 11/09/22. However, there is only one entry and thus, one does not know when the phone was taken from Grand Rapids nor when it arrived in Kalamazoo. This is the same day MSP went and interviewed Minor 1 and presented the phone to Minor 1 to show her depictions on the phone and did not have a warrant to go in the phone, only to go in the download of the phone's contents. Moreover, the failure to enter in the property report exactly when the Samsung left Grand Rapids and arrived in Kalamazoo was a violation of MSP Procedure Manual 12-01 pages 5-6 of 9. ~~MSP states the phone was stored at Kalamazoo and was released~~

4. An example of how the transfer of the Samsung phone from Grand Rapids to Kalamazoo should have been recorded can be seen in Journal entries 0003 and 0004 of the MSP Incident Property Report for the CSAM investigation, FIT-0000091-22. These two entries record the removal of the 16GB Lexar Flash Drive containing the extraction from the Samsung phone from Kalamazoo and its arrival at Grand Haven MSP location.

5. Journal entry 0002 for the 16 GB Lexar Flash Drive in the Incident Property Report for FIT-0000091-22 does not comply with the MSP

Procedure Manual 12-01, Section 4.2. This is because there is only a single entry for the transportation of the Flash Drive from Grand Rapids to Kalamazoo. Accordingly, one does not knew when this property left or arrived at either location.

6. There is no mention of the SIM Card that was supposedly taped to the back of Kuhl's Samsung phone when seized by Wyoming PD in either the CCU Report or MSP reports.

7. The CCU Report does not contain a Mobile Device Examination and Seizure Checklist for Kuhl's Samsung phone, but does contain such checklist for the Green iPhone.

8. The CCU Report Mobile Device Examination and Seizure Checklist states the Green iPhone was in Airplane mode, but does not state that this setting was changed. However, Kuhl knows for 100% fact that iPhone was not in Airplane mode when seized by Wyoming PD at the traffic stop.

9. CCU Report states that the Green iPhone was searched and an instant AFU was obtained on 10/17/22 and returned to Wyoming PD the following day. However, the Wyoming PD Chain of Custody report describes the Green iPhone being turned over to ICAC Meredith on 10/17/22, but does not get returned to

Wyoming PD until 12/06/22. However, the ~~MSP~~ CCU report by Meredith seems to describe 2 iphones, Green in color, being examined. One is an iPhone 11 which is not related at all to any incident involving Kuhl, and the other is an iPhone 13, the iPhone seized by Wyoming PD during the traffic stop.

10. Meredith mixed the extraction from the Samsung and iPhone seized at the Wyoming Traffic stop and both were turned over to Gensterblum who only obtained the additional erroneous Search Warrant for a download of the Samsung's contents. Indeed, the Samsung was blue, but MSP reports for the fraud and CSAM investigations describe a Blue/Green Samsung. Moreover, the MSP reports describe the phone as an S~~21~~ 21 but it is actually an S22.

For these reasons, Kuhl is not able to ensure the proper chain of custody and has displayed a clear tampering of evidence and violations of procedure guidelines mandated by the departments for evidence handling. Accordingly, this misconduct deprived Kuhl of due process and freedom from unreasonable search and seizure and to deter and prevent such constitutional violations, suppression is a must.

## V. CONCLUSION

Because the FBI exploited the evidence and investigation of MSP which all derived from the illegalities outlined in this motion, all of the Government's evidence seized under the 1/25/23 and 2/8/23 search warrants is fruit of the poisonous tree and must be suppressed. Additionally, the evidence the Government relies on that was seized and obtained by Gensterblum derived directly from the illegalities described in this motion and must also be suppressed.

If the Court feels additional facts or discussion is required, Kuhl requests an evidentiary hearing. Indeed, oral argument is requested to be granted by this Honorable Court regardless.

Respectfully Submitted,

S. Kuhl May 15, 2025

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349

Samuel A. Kuhl #61189510
Newaygo County Jail
1035 James St.
White Cloud, MI 49349



Clerk of Court
U.S. Dist. Court
399 Fed Bldg.
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL