UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL ALEXANDER KUHL,

Defendant.
_______________________________________/

Case No.: 1:23-cr-044

Hon. Jane M. Beckering
U.S. District Court Judge

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS FOR DISCOVERY AND MOTION FOR CLARIFICATION (R. 171, 172, and 191)**

Kuhl has filed several Motions for Discovery that are now pending. On May 5, 2025, he filed a Motion Requesting Discovery and Clarification along with various exhibits. (R. 171: Motion Requesting Discovery and Clarification, PageID.1179-1189.) Two days later, he filed a Motion for Discovery (R. 172: Motion for Discovery, PageID.1204-1206.) And on May 22, 2025, Kuhl filed an additional Motion for Discovery. (R. 191: Motion for Discovery, PageID.1682-1683.) Each motion will be addressed in turn, but, in large part, the motions ought to be denied.

In his Motion for Discovery and Clarification (R. 171, PageID.1179.) Kuhl requests extraction logs and search warrant returns for the express purpose of future contemplated challenges to the legality of the searches. (*Id.* at Page ID.1183.) This request comes long after the deadline for filing such motions has passed and less than 30 days from trial. (R. 186: Order, PageID.1437; R. 193: Order Dismissing Late Filings,

PageID.1689.) The Court may be aware that Kuhl has appealed to the district court its ruling that he may not demand the interviews of Minor 1, which he makes for the same purpose. (R. 169: Defendant's Objections to Recommended Disposition, PageID.1165.) There is no legal basis for such requests.

There are three bases to request discovery from the government: (1) the Jencks Act, 18 U.S.C. § 3500; (2) the *Brady* doctrine; and (iii) Federal Rule of Criminal Procedure 16. These three generally "exhaust the universe of discovery to which [a] defendant is entitled." *United States v. Sanders*, 106 F.4th 455, 472 (6th Cir 2024)(*citing United States v. Presser*, 844 F.2d 1275, 1285 n. 4 (6th Cir. 1988)); *United States v. Watson*, 787 F. Supp. 2d 667, 672 (E.D. Mich. 2011).

The government will reiterate the argument it makes in opposition to the request for Minor 1's statements. (R. 205: Government's Supplemental response to Defendant's Objections to Discovery Order, PageID.1725-1729.) Although Rule 16(a)(1)(E)(i) requires disclosure of documents and objects "material to preparing the defense," the Sixth and other circuits have determined that this duty relates to information that "refute[s] the Government's arguments that the defendant committed the crime charged" rather than procedural challenges to the conduct of the investigation, like challenges to a search warrant. *United States v. Sanders*, 106 F.4th 455, 473-74 (6th Cir. 2024). The *Sanders* panel reached this decision because of *United States v. Armstrong*, 517 U.S. 456 (1996), where the Supreme Court declined to interpret Rule 16's disclosure obligations more broadly. *Id*. This interpretation has been followed by other courts. *See, e.g., United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000)("Because Rashed's defense here relates not to

refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution, Rule 16(a)(1)(C) of the Fed. R. Crim. P. is inapplicable.") and *United States. v. Arambula*, 82 F. Supp. 3d 1316, 1319 (D. N. Mex. 2014)(defendant's request for agent's notes denied under Rule 16 because the defendant sought to use the information to challenge a search warrant.) Rule 16 does not support Kuhl's request.

The *Brady* doctrine does not help the defendant either. That rule requires the prosecution to disclose exculpatory evidence in its possession in time for the defendant to use it at trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Some courts have extended Brady to suppression hearings. *E.g., United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992). Other courts, like the District of Columbia Circuit, have expressed doubts that Brady applies to a suppression hearing: "[I]t is hardly clear that the Brady line of Supreme Court cases applies to suppression hearings. Suppression hearings do not determine a defendant's guilt or punishment, yet Brady rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or to punishment.'" *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999). Other courts have expressly declined to state a position until the day it becomes necessary to do so. *United States v. Stott*, 245 F.3d 890, 902-03 (7th Cir. 2001)(also citing case split); *United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016). The Sixth Circuit has never decided the issue. *United States v. Henderson*, 661 F. Supp. 3d 725, 729 (W.D. Mich. 2023)(J. Maloney).

No controlling authority under *Brady* supports Kuhl's fishing expedition. Assuming for a moment that this Court were to follow *Gamez-Orduno*, even that expansive interpretation of Brady requires a pending suppression motion implicating the requested material before its version of the *Brady* rule is triggered. This is not the case here. So, there exists no interpretation of the Brady rule that supports Kuhl's requests.

In the same motion, Kuhl also demands to know the exact number of videos that will be introduced at trial. (R. 171, PageID.1179.) This request is premature. Trial exhibits will be provided in accordance with the pretrial order, before June 10, 2025. (R. 186: Order Setting Final Pretrial and Jury Trial, PageID.1438.)

Kuhl further demands to know the materials used to produce each video. (R. 171, PageID.1180.) This request is moot. He has been previously provided with discovery material indicating where the cell telephones were manufactured, and that Facebook Messenger is engaged in commerce.

In another Motion for Discovery, Kuhl makes requests that should, again, be denied. (R. 172: Motion for Discovery, PageID.1204-1206.)

In his Motion for Discovery Kuhl demands to know "the exact number of child pornography cases Special Agent Jeff Buttery of the FBI has investigated…" He feels that the answer to this might yield impeachment material consistent with *Giglio v. United States*, 405 U.S. 150 (1972). (R. 172, PageID.1204.) The government will comply with *Giglio* for all its witnesses, and if Agent Buttery 1) is a witness and 2) is subject to impeachment material in the possession of the government, it will be provided as specified by that rule.

Defendant requests additional discovery in his Motion for Discovery. (R. 191, PageID.1682-3.) This motion should be denied.

First, he requests "any evidence obtained from Minor 1's electronic device(s) and/or social media that may be used against [him]." (Id. at PageID.1683.) There is no additional evidence from Minor 1's device(s) or social media that will be used against Defendant at trial. Defendant also requests "evidence which may show a propensity to engage in conduct or conversation of a sexual nature." (*Id.*) Even if such evidence exists, it would be prohibited from use at trial under Fed. R. Evid. 412 which bars evidence of a witness's prior sexual history and alleged sexual predisposition.

Defendant's second request is for "one text" that "discloses [Defendant] attempting to persuade a second minor female to have sexual relations with him." (*Id.*) Text messages showing Defendant's efforts to engage a second minor female in sexual conduct were provided to Defendant via standby counsel in Discovery 5 on May 21, 2025. Additional text messages between Defendant and the second minor female herself were provided on the same day as Discovery 6, again to standby counsel.

In sum, Defendant repeatedly requested Minor 1 arrange for a sexual encounter between himself, Minor 1, and her minor friend. Provided here and attached as exhibits are just a few examples. The excerpts here were provided on May 21, 2025, and are not exhaustive of the various messages that Defendant sent in an effort to engage with Minor 1's friend.

On or about September 16, 2021, Defendant tells Minor 1 to let her (minor) friend know that Defendant wanted to have sex with her.

| | |
|---|---|
| Minor 1: | What u doing later |
| Defendant: | Tell [minor friend] lemme fuck lol |

Around six weeks later, on or about October 30, 2021, Defendant told Minor 1 that he wanted to engage in cunnilingus with Minor 1 while concurrently having sex with the same friend of Minor 1.

| | |
|---|---|
| Defendant: | I wanna eat your pussy while I duck [minor friend] |
| Defendant: | Fuck* |
| Minor 1: | Bae that don't work |
| Defendant: | How it don't? |
| Defendant: | You sit on my shoulders while I fuck her lbvs |

About a half hour later, Defendant offered Minor 1 and her friend money to engage in joint sexual activity with him:

| | |
|---|---|
| Defendant: | You my baby doe you coulda had 4K especially if you was really older though and could be on your shit [Minor 1] I fwy frfr just it's hard for me to love not even talking bout [minor friend] rn just saying you could have whatever |
| | […] |
| Defendant: | I feel you but I'm try and slide on y'all like 1:30 I'm bring a few bands if I can have both y'all for real doe |
| Minor 1: | Lal nah bae not tonight just meet her and chill instead of jumping right into it |
| Minor 1: | An it's crazy u said u don't know how to love but u doing it lmao and your the first that said I love you and u the one that started this whole thing by askin me to be yo girl |
| Defendant: | I mean ain't tryna come straight in and strip I'm just saying we can all chill and lay around smoke watch tv or whatever and if things smooth and I'm talking right we can do that and I know but I'm toxic my head ducked up |
| Minor 1: | She don't want to an bae that could mess up our friendship |
| Minor 1: | So nah maybe a day after yall meet an chill |
| Defendant: | Ight yall playing |

| | |
|---|---|
| Minor 1: | Bae no we not but she should just wanna meet her an chill first then hang |
| Minor 1: | But if she don't want to then we gotta find another girl |

It is clear from later messages that Defendant's efforts to engage in a threesome with Minor 1 and her friend were rebuffed. Eventually Defendant told Minor 1 the following:

| | |
|---|---|
| Defendant: | Blah don't hit me less I can fuck uou and one your buddies lbs |
| Minor 1: | I literally said I will find us someone else |
| Minor 1: | But u wanna act like a fool an not talk |
| Defendant: | Lol naw fuck that |
| Defendant: | I wanna duck [minor friend] she know that |
| | […] |
| Defendant: | Lol I am for real I got her what she want I'm Uncle Sam I print the money |
| | […] |
| Defendant: | I just pick up money for a living shidddd what she want for that fat soft mf I felt it she know she can let a rick dick get in one time [emoji] |

Defendant has already been provided the above messages between himself and Minor 1. Because the government has already complied, his motion should be denied.

Respectfully submitted,

ANDREW BYERLY BIRGE
Acting United States Attorney

Date: May 29, 2025

*/s/ Timothy VerHey*

TIMOTHY VERHEY
OLIVIA KAY GHISELLI
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 2, 2025, a copy of United States' Response to Defendant's Motions for Discovery and Motion for Clarification (R. 171, 172, and 191) was mailed to the defendant at the following address of record:

Samuel Alexander Kuhl Reg. #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

*/s/ Timothy VerHey*
TIMOTHY VERHEY
OLIVIA KAY GHISELLI
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404