UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 1:23-cr-44

v.

Hon. Jane M. Beckering
U.S. District Court Judge

SAMUEL ALEXANDER KUHL,

Defendant.
_________________________________/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (R. 189)**

Kuhl has filed a motion to suppress the evidence seized from a Samsung cell phone first seized by Wyoming, Michigan police officers and then examined by the Michigan State Police. Among the many allegations he makes are the claims that the warrant obtained to search it was invalid, and that even if it was valid, the subsequent search of it exceeded the scope of the warrant. This, he says, invalidates the second warrant that was issued for the device. He also makes a variety of other claims seeking to exclude this evidence. These claims should be rejected.

**FACTUAL SUMMARY**

Wyoming police officers encountered Kuhl on October 13, 2022, as the passenger in a car. Officers stopped the car when they observed the driver, Shaquan Coleman, urinating in public and then drive off. When the officer went up to the car, he learned that Coleman was driving on a suspended license and placed him under arrest. The officer searched the car after seeing several packages of marijuana in plain view. Officers

found a total of separately packaged marijuana totaling 179.2 grams, packaging material and a digital scale in the vehicle. The driver had $975 in cash in his pocket. (Wyoming Search Warrant and Affidavit, Attachment A.)

Kuhl was asked to leave the car, but he refused and became belligerent. The officers arrested him for resisting and obstructing a lawful order. He was searched and was found to be in possession of $3,424 in cash and had ten credit cards in the names of different individuals.

On October 14, 2023, Detective April Kroschel applied for a warrant to search three phones associated with this encounter: A white iPhone linked to Coleman, a green iPhone linked to Kuhl, and a Samsung cell phone found in the vehicle. The warrant sought permission to search phones associated with Coleman for evidence of marijuana trafficking. The officer requested that phones associated with Kuhl to be searched for evidence of marijuana trafficking as well as "any or all evidence related to Financial Transaction Device -Illegal Sale/Use." (Attachment A, p.1.) The warrant application requested permission to search the phones for a variety of information related to those offenses, the first of which was "data that may identify the owner or user of the device." (Attachment A, p.1.) The search warrant was signed by a magistrate judge on October 14, 2023.

Wyoming Officer Meredith conducted the extraction of the Samsung phone and the initial extraction data indicated that the phone was Kuhl's. Following the authority granted by the warrant, it was searched for evidence of credit card fraud, specifically including text messages and emails relating to this offense. (Attachment A, p.1.) After

extracting the relevant data, Meredith sent the results to Michigan State Police Detective Gensterbloom, who often works with the Wyoming Police Department when it discovers evidence of fraud offenses. He began to review the messages for evidence of credit card fraud and saw messages between Kuhl and Minor 1 discussing what appeared to be fraudulent activity. Some examples follow:

(owner)
To: +12694214963

I called them this morning same thing 2 phones got hung up on after over 2 hours of holding

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +12694214963 | | | |

**Status:** Sent
**Delivered:** 6/18/2022 23:25:57(UTC+0)

6/18/2022 23:25:57(UTC+0)

Source Info:
EXTRACTION_FFS.zip/data/data/com.google.android.apps.messaging/databases/bugle_db : 0x32BC7F (Table: messages, parts, participants; Size: 10162176 bytes)

(owner)
To: +12694214963

This shit really crazy cause far as they know this is legit 100% and they just an online bank so it's almost impossible shit is crazy

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +12694214963 | | | |

**Status:** Sent
**Delivered:** 6/18/2022 23:26:57(UTC+0)

6/18/2022 23:26:57(UTC+0)

Source Info:
EXTRACTION_FFS.zip/data/data/com.google.android.apps.messaging/databases/bugle_db : 0x32BB90 (Table: messages, parts, participants; Size: 10162176 bytes)




Source Info:
EXTRACTION_FFS.zip/data/data/com.google.android.apps.messaging/databases/bugle_db : 0x3DCD07 (Table: messages, parts, participants; Size: 10162176 bytes)




Source Info:
EXTRACTION_FFS.zip/data/data/com.google.android.apps.messaging/databases/bugle_db : 0x3DC441 (Table: messages, parts, participants; Size: 10162176 bytes)

As Gensterbloom began to review more messages between Minor 1 and Kuhl, he began to see evidence of a sexual relationship between them, and her young age. Then he saw video recordings depicting Minor 1 unclothed. Gensterbloom stopped and obtained a second search warrant because the original warrant did not allow a search for such material. Gensterbloom did some outside investigation of Minor 1 and then applied for the new warrant on November 9, 2022. In his affidavit, the detective outlined how he came to be in possession of the contents of the Samsung phone and how he encountered the new information while searching for fraud evidence. (Attachment B: Gensterbloom

Affidavit and Warrant.) The warrant was granted and Gensterbloom continued the search, ultimately finding many nude images of the girl, three of which constitute Child Sexual Abusive Material ("CSAM") and will be offered as exhibits to prove Count 1.[1]

**LEGAL ANALYSIS**

**1. Warrants and Probable Cause**

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A valid warrant under the Fourth Amendment requires three things:

> (1) it must be issued by a neutral, disinterested magistrate or judge; (2) those seeking the warrant must demonstrate to the magistrate or judge their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) the warrant must particularly describe the things to be seized, as well as the place to be searched.

*United States v. Whiteside*, No. 24-1173, 2025 WL 1431109, at *4 (6th Cir. Sept. 9, 2022) (*quoting Dalia v. United States*, 441 U.S. 238, 255 (1979)) (internal quotation marks and brackets omitted).

When a magistrate judge is presented with an application for a search warrant, their task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462

[1] Three of the four images containing CSAM come from the Samsung phone. The other originated with an iPhone seized from the defendant by the Indiana State Police when they were called to investigate a possible abduction and fraudulent activity.

U.S. 213, 238 (1983). "In other words, there must be a probable cause nexus between the place to be searched and the evidence sought." *United States v. Smith*, 2022 WL 4115879, at *3 (6th Cir. Sept. 9, 2022)(cell phone search)(*citing United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).

Notably, probable cause is "not a high bar" to clear and requires "only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019)(en banc) (citations omitted). A reviewing magistrate should view the information in an affidavit considering the "totality of the circumstances" and "through the lens of common sense" to determine if probable cause exists. *Christian*, 925 F.3d at 309. Neither the magistrate nor the reviewing court should engage in "hypertechnical... line-by-line scrutiny" of an affidavit. *Christian*, 925 F.3d at 311 (citation omitted). This is because "search warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Dutton*, F.4th, No. 24-5200, 2025WL 769639 *3 (6th Cir. Mar. 11, 2025)(relying on *United States v. Ventresca*, 380 U.S. 102, 108 (1965) and *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010)). Many affidavits can be better and many can be more precise, but that is not a reason to determine them invalid. If the information in the affidavit meets the "degree of suspicion need to establish probable cause" it is sufficient. *Christian*, 925 F.3d at 310 (*citing United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018))(interior quotes omitted).

Moreover, the task of a court reviewing a magistrate judge's decision to issue a search warrant "is simply to ensure that the magistrate had a substantial basis for...

conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238–39 (citation omitted); *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (magistrate judge's decision accorded "great deference."). The Sixth Circuit "has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Allen*, 211 F.3d at 973. This discretion is granted because "reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause" and the Supreme Court determined that the issuing magistrate's assessment should be upheld in all except egregious cases. *Leon,* 468 U.S. 914 (*citing Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Some of Kuhl's claims allege that the police exceeded the scope of the warrant's authority. "A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018). In *Castro*, the Court found a search warrant permitting a search of broad categories of data on a cell phone was sufficiently particularized because it was constrained to a search for evidence of the particular crime of aggravated burglary. *Id.* However, the Court in *Castro* excised a "catch-all" phrase allowing officers to search for evidence of "a crime." *Id.* at 964–65. Broad search language is not necessarily inappropriate where the circumstances indicate that the evidence on a phone can be located in a number of areas. In *United States v. Bass*, the Court found scope of the warrant authorizing search for "any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs" was "reasonable under the circumstances at the time" because officers could not have known at the time of execution of the warrant where the information was

located in the phone or in what format. 785 F.3d 1043, 1049–50 (6th Cir. 2015). Casting a wide net in the context of searching a electronic media is reasonable, because the officers had no way to know beforehand where relevant identity information could be found. *Bass*, 785 F.3d at 1049-50.

The recent case of *United States v. Hughes*, 2025 WL 1191027 (S.D. Ohio April 24, 2025) provides an example of how flexible the particularity requirement must be. There, a defendant's cell phone was searched pursuant to a warrant that allowed the search of the entire contents of the phone. When the defendant objected to this language as being overbroad, the court disagreed saying "[t]he search language is broad, but broad searches are appropriate in certain circumstances." 2025 WL 1191027 *6. The court noted that the law accounts for the fact that it is not always evident where within an electronic device the evidence of a crime may be located. Citing *Bass*, 785 F.3d at 1049–50, *Hughes* stated that broad search parameters are necessary where the officers cannot know beforehand where in the device, or in what format, the relevant material can be found. *Hughes*, 2025 WL 1191027 *6.

Kuhl also suggests that the search was invalid because it was not limited to certain dates. The Sixth Circuit has rejected the idea that it should declare a search of an electronic device unreasonable based on failure to use a date filter, noting that "we will not get involved in the minutiae of determining specifically what methodologies should be taken, but will rather examine whether the search executed under the facts of this case was reasonable." *United States v. Rarick*, 939 F. App'x 911, 916 (6th Cir. 2016); *see also United States v. Neuhard*, 770 F. App'x 251, 254 (6th Cir. 2019) (rejecting the argument that the

Fourth Amendment requires search protocols; rather, the court must undertake a "reasonableness analysis on a case-by-case-basis").

**2. The Good Faith Exception**

Even if the warrant or its execution is in some way deficient, it will likely fall within the good faith exception of *United States v. Leon*, 468 U.S. 897, (1984). Under *Leon*, the exclusionary rule does not bar from admission "evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id*. at 905; *Christian*, 925 F.3d at 312.

Pursuant to this good faith exception, evidence "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant" need not be suppressed where an officer acts in good faith reliance on the warrant. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)(*quoting Leon*, 468 U.S. at 922). The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. As the Supreme Court explained in *Leon*, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922.

This balance supports the principle that the good-faith exception requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *Christian*, 925 F.3d at 313 (*quoting United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir. 2004)). The objective reasonableness determination "inquires 'whether a reasonably well-trained officer would have known

that the search was illegal despite the [judge's] decision'" to the contrary. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008)(*quoting United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)). "[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *United States v. Merriweather*, 728 F. App'x 498, 505 (6th Cir. 2018) (quoting White, 874 F.3d at 500).

The Supreme Court in *Leon* identified four situations in which an officer's reliance cannot be considered "objectively reasonable:" (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23). Thus, if one of these situations applies, the evidence must be suppressed even if officers executing the warrant believed it to be valid.

**3. The search warrants issued here were valid.**

The Wyoming warrant established probable cause to demonstrate that the Samsung phone could contain evidence of drug trafficking and credit card fraud.[2]

---

[2] The government acknowledges that at the end of the affidavit, Detective Kroschel apparently left in verbiage relating to an earlier criminal sexual conduct affidavit that must have been the template for the Samsung warrant. (Attachment A, p.5). However,

Judging it "on the adequacy of what it does contain, not on what it lacks, or what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000), the affidavit establishes that: 1) Kuhl and Coleman were in a vehicle together, 2) there was a significant amount of marijuana, packaged in twelve separate baggies of various sizes inside the vehicle, 3) there was a digital scale in the vehicle, 4) there were other baggies inside the vehicle, 5) Coleman had $975 in his pocket, 6) Kuhl had $3,424 in his pocket, and 7) Kuhl had ten credit cards in his pocket, all in different names. (Attachment A.) The judge issuing the warrant was entitled to draw reasonable inferences from this information, including that phones are recognized tools of the drug trafficking trade. *E.g., United States v. Darden*, 353 F. Supp. 3d 697, 719 (M.D. Tenn. 2018)(collecting cases) and the commonsense notion that someone engaged in credit card fraud would need a phone to carry out the fraud. At a minimum, as noted in the affidavit, access to cell phone information could provide location information that could link up to other evidence related to these crimes. (Attachment A, page 5.) The warrant limited the search of any phone associated with Kuhl to drug trafficking and illegal use of a transaction device. (Attachment A, p. 1.) Once the Samsung phone was initially identified as belonging to Kuhl, the warrant appropriately tied the scope of the search to the evidence of drug trafficking and fraud. *Castro*, 881 F.3d at 965.

It is not at all unusual for courts to conclude that probable cause exists to seize cell phones found in vehicles linked to criminal activity. *See e.g., United States v. Lavallis*, 515

---

it must be recalled that affidavits are written by nonlawyers and often in haste. *Dutton, Ventresca*, and *Brooks, supra.*

F.Supp3d 686, 692 (E.D. Mich.2021)(recognizing "[a] number of decisions have concluded that probable cause to search a cell phone exists simply because cell phones discovered in proximity to crime or contraband almost invariably contain incriminating evidence") *and United States v. Pressley*, 541 F. Supp. 3d 825, 833 (S.D. Ohio 2021)(there was probable cause to seize cell telephones lying inside car linked to criminal activity). Thus, the judge signing the warrant was entitled to conclude that there was probable cause to search the Samsung and other two phones. This conclusion should not be disturbed because it is entitled to great deference and was not done arbitrarily. *Allen,* 211 F.3d at 973.

Kuhl also suggests that it is possible that the issuing judge did not mean the Samsung phone to be searched at all. (Motion, PageID.1547.) This argument is belied by the warrant itself, which clearly includes the Samsung phone as one of the devices to be searched, as does the affidavit. (Attachment A, pp. 1, 3.) To the extent that Kuhl finds fault with the absence of attribution to that phone to a particular person the cases cited above, recognizing that probable cause can extend to phones in a vehicle linked to illegal activity, support the conclusion that the judge issuing the warrant reached the same conclusions. *Lavallis*, 515 F. Supp. 3d at 692 *supra*; *Pressley*, 541 F. Supp. 3d at 833 supra.

Kuhl seems primarily concerned that the officers were focused upon his communications with Minor 1, which he contends were outside the scope of the warrant's requirement that communications be limited to drug or fraud activity. He claims that the illegal nature of the communications was not readily apparent and so the search was outside the search parameters and not subject to plain view. (Motion, PageID.1549-53.) As noted above by *Castro, Bass and Hughes, supra,* a phone search warrant must give

officers sufficient latitude to search for the targeted information. In this case, officer Gensterbloom properly limited his search to fraud information, and encountered messages to Minor 1 in that context, as noted in the examples above. That indicated that messages with Minor 1 could lead to more fraud information and so he read more. It was only later that these revealed the sexual relationship, and Gensterbloom properly stopped to get another warrant. (Attachment B.)

Kuhl also complains that his messages with Minor 1 were months old. (Motion, PageID.1551.) Kuhl relies upon *United States v. Bouknight*, 467 F. Supp. 3d 1227 (M.D. Fla. 2020) to argue that the scope of the search here exceeded what was permitted by the warrant. (Motion, PageID.1544.) This and similar cases do not assist him because the warrant and *Bouknight* permitted the search for only a single day's worth of data and the officer obtained several days' worth. 467 F. Supp. 3d at 1238. The warrant here placed no time constrictions on the permitted search for drug and fraud messages. As noted above, the Sixth Circuit has not required such limitations, preferring to address the matter on a case-by-case basis. *Rarick*, 939 F. App'x at 916; *Neuhard*, 770 F. App'x at 254. The lack of time limitations in warrant does not render the warrant invalid, particularly in a fraud investigation, because frauds can last a long time and there is little way for investigators to know beforehand the temporal scope of the crime. *E.g., United States v. Marinelli*, No. 3:20-CR-282, 2022 WL 3371326 *7 (M.D. PA. 2022)(citing cases). This claim should fail.

Kuhl next claims that Detective Gensterbloom lacks credibility because the defendant believes he has found discrepancies in his statements. (Motion, PageID.1553.)

This claim fails. Search warrant affidavits carry a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978): *United States v. Bateman*, 945 F.3d 997, 1008 (2019). A defendant seeking to overcome this presumption bears a heavy burden and must make a substantial preliminary showing that the affiant intentionally or recklessly made a false statement that was necessary for establishing probable cause. Innocent mistakes or negligent false statements will not suffice. *Bateman*, 945 F.3d at 1008.

The proof Kuhl offers to satisfy this burden is woefully inadequate. He quibbles with what Gensterbloom meant when he says he "came across" sexually explicit messages and goes on to assert that the officer spent too much time "rummaging" through this conversation before stopping to get a second warrant. (Motion, PageID.1553-54.) At bottom, Kuhl's claim amounts to a challenge to the timing of when the officer sought a new warrant, which does not amount to proof of an intentional lie or reckless falsity, much less one that would negate probable cause. As noted above, the Kuhl-Minor 1 messages were firmly linked to his fraudulent activity. It only became clear that they contained other crimes when the detective read further; then he got a new warrant. This claim should be rejected.

**4. Even if the warrants were defective Detective Gensterbloom relied upon them in good faith.**

Based on the discussion above, there is no reason to invalidate either warrant leading to the collection of evidence from the Samsung phone. However, even if the Court finds the Wyoming warrant defective, Detective Gensterbloom was entitled to rely on it in good faith to search for communications relating to fraud. *Leon* teaches that,

absent four exceptions, search warrants are presumed to be valid. *Laughton*, 409 F.3d at 748; *Leon,* 468 U.S. at 914–23. The warrant clearly allowed the search of phones associated with Kuhl to be searched for fraud activity, and the affidavit laid out facts that made this conclusion a reasonable one. He was entitled to rely on it.

Kuhl seems to claim that the Wyoming affidavit was bare bones. He faults the affidavit for not identifying exactly who possessed that phone and speculates that it is possible that the issuing judge did not authorize its search at all. (Motion, PageID.1547.) To the extent that this is a claim that the warrant was bare bones, it should fail. A bare bones affidavit is so lacking in indicia of probable cause that an officer's belief in the warrant's validity objectively unreasonable. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). The en banc decision in *Christian* is instructive here. One reason the Sixth Circuit met en banc was to clarify what the term "bare bones" means in the *Leon* context: "We reserve that label for an affidavit that merely "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." 925 F.3d at 312. In reversing the panel decision that the warrant before it was bare bones, *Christian* said, "[a]lthough one can split hairs with the affidavit in this case, it is impossible to deny that it contains factual allegations, not just suspicions or conclusions." *Id*. at 313. The same is true here. The Wyoming affidavit lists the facts recited above about what the officers found in the vehicle and on Kuhl's person. It did not simply state that the officer suspected Kuhl was engaged in fraud without specifying why. Those facts allowed the issuing judge to arrive at reasonable and permissible

conclusions concerning probable cause. This warrant does not run afoul of *Leon* by being bare bones.

Kuhl tries to find another exception to *Leon* by claiming that the issuing judge wholly abandoned the judicial role and became a rubber stamp for the police. (Motion, PageID.1560.) The burden of proving this allegation lies with Kuhl. *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005). He has failed to carry it. Here, Kuhl again claims that the Samsung phone should not have been searched at all. He does not fully explain why, but he presumably relies on the fact that the phone was only present in the vehicle when it was stopped, and it was not tied to him or the driver. This assertion has been shown to be faulty earlier—probable cause can exist for such a phone and it existed here. *See Lavallis*, and *Pressley*, *supra*. Kuhl also faults the judge for missing an alleged typographical error in Gensterbloom's warrant. (Motion, PageID.1560.) This error, if it was one, does not render the judge a rubber stamp. Nor does the claim that there was no temporal limit on the messages that could be searched. (Motion, PageID.1561.) As argued above, there is no requirement that such restrictions be placed on a search like the one here. Kuhl has failed to show the judge abandoned his role as a neutral and detached magistrate.

In sum, Kuhl has failed to demonstrate why the *Leon* good faith rule should not apply here. Therefore, the search should be upheld on this basis.

**CONCLUSION**

The search of the Samsung phone was valid, both substantively and by virtue of the *Leon* rule. For both reasons, the motion to suppress should be denied.

Respectfully submitted,

ANDREW BYERLY BIRGE
Acting United States Attorney

Date: June 10, 2025

*<u>/s/ Timothy VerHey</u>*
TIMOTHY VERHEY
OLIVIA KAY GHISELLI
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 10, 2025, a copy of United States' Response to Defendant's Motion to Suppress (R. 189) was mailed to the defendant at the following address of record:

Samuel Alexander Kuhl Reg. #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

*<u>/s/ Timothy VerHey</u>*
TIMOTHY VERHEY
OLIVIA KAY GHISELLI
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404