~~POCKET BRIEF~~

Motion to REMOVE "CONSENT OF THE CHILD IS IRRELEVANT

RECEIVED - GR
June 26, 2025 8:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

REMOVE "CONSENT OF THE CHILD IS IRRELEVANT" LANGUAGE FROM JURY INSTRUCTION AS TO COUNT 2

* Elements of the underlying state criminal sexual activity are not incorporated into the elements of the Federal crime under §2422(b). See U.S. v. Roman, 795 F.3d 511, 519 n. 2 (6th Cir. 2015); U.S. v. Hackworth, 483 Fed. Appx. 972, 976-77 (6th Cir. 2012).

* This language confuses the issues and allows for a misinterpretation of §2422(b) and allows for a conviction based solely on Kuhl using the phone or internet to commit CSC 3rd Degree, which is not what §2422(b) ~~viola~~ criminalizes.

* In the alternative, Kuhl asks for a special instruction stating that "it is not enough to convict the defendant of Count 2 for simply using a means or facility of interstate commerce to have sexual intercourse with SD in violation of Michigan law, but ~~must~~ you must unanimously agree that defendant persuaded SD for such sexual intercourse using that means or facility of

interstate commerce."

* Accordingly, any testimony from law enforcement witnesses be limited to stating that it is a crime under MI law for Kuhl to engage in sexual intercourse with anyone who is 13, 14, or 15 years old, as to any testimony about the underlying crime of CSC 3rd Degree.

Respectfully
[signature]

~~POCKET BRIEF~~

Motion To EXCLUSION OF DEFINITION FOR "INDUCE"

RECEIVED - GR
June 26, 2025 8:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL,

~~REMOVE CONSENT OF THE MINOR IS NOT A DEFENSE~~

REMOVE DEFINITION OF "INDUCE" FROM JURY INSTRUCTIONS AS TO COUNT 2

* This Court uses Sixth Circuit Pattern Jury Instructions and such instructions for §2422(b) trials do not contain the Government's proposed defining of the term "induce." This also prejudices Mr. Kuhl's defense theory and misleads the jury as to the mens rea element of §2422(b), and essentially adds the terms "employed" or "used" from §2251(a) that are not present in §2422(b)'s language. Indeed, the terms were used in §2251(a) to cover a broader range of conduct that did not require the persuasion or convincing that §2422(b) does.

* For these reasons, Kuhl asks that the definition for the term "induce" be removed from the Jury Instructions.

* "We recognize that it is not sufficient to allege or prove that a defendant intended to persuade an adult intermediary to cause a child to engage in sexual activity." U.S. v. Roman, 795 F. 3d 511 (6th Cir. 2015) "The gravamen of the attempt offense under §2422(b) is

the intention to achieve the minor's assent." Id at 513. Accordingly, it is not enough to ~~cause~~ merely cause the minor to engage in such conduct directly, but must overcome the minor's will. See United States v. Hite, 769 F.3d 1154, 1161 (D.C. Cir. 2014) ("The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that §2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor.").

* For this reason, Kuhl seeks an instruction consistent with the ruling in Hite that ~~the~~ "in order to persuade, induce, entice, or coerce the minor, it is necessary that the will of the minor was overcame," or a similar instruction.

Respectfully

[illegible]

~~POCKET BRIEF~~

Motion for SPECIAL INSTRUCTION AS TO "TRANSMITTED"

RECEIVED - GR
June 26, 2025 9:18 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

SPECIAL INSTRUCTION AS TO TERM "TRANSMITTED"

* 18 U.S.C. §2251(a) states the persuasion of the minor to engage in sexually explicit conduct must be "for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." Accordingly, "transmitting" applies only to broadcasting a live visual depiction, meaning a live performance, by way of means such as live TV, Google Duo, Skype, Facetime, Zoom, etc. Indeed, the terms "mailed" "shipped" or "transported" apply to the sending of such already produced depictions even by use of computer. This is supported by the fact "transmitted" nor "live visual depiction" appear in any other criminal statute involving the receipt, distribution, or production of child pornography. A case that sheds light into the proper meaning of the term "transmitted" in §2251(a) can be found in U.S. v. Hartleroad, 73 F.4th 493 (7th Cir. 2023).

* For this reason, Kuhl requests a special instruction as to the term "transmitted" being applicable only to the live broadcast of live visual depictions of child pornography by means such as FaceTime.

* Indeed, Count 1 alleges Kuhl persuaded, used, enticed, etc. SD to engage in sexually explicit conduct "for the purpose of producing a visual depiction" of that conduct, not "for the purpose of transmitting a live visual depiction" of that conduct.

* Not including this instruction will result in misleading of the jury, and confusing the issues as to what constitutes a violation of §2251(a), because simply receiving depictions on a device that has traveled in interstate commerce is not a violation of §2251(a). Indeed, as will be shown and can be seen by the messages Kuhl never directs SD to send him the charged depictions.

Respectfully,

/s/ [signature]

~~POCKET BRIEF~~

Motion to DEFINE TERM "USED"

RECEIVED - GR
June 26, 2025 8:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

DEFINE "USED" AS TO COUNT 1 IN ACCORDANCE WITH SIXTH CIRCUIT PATTERN INSTRUCTIONS

* According to the Information and Guidelines for Criminal Procedure before The Honorable Jane M. Beckering United States District Judge, subsection 8, of D, on page 5, "this Court uses the Sixth Circuit's Criminal Pattern Jury Instructions." The Sixth Circuit Pattern Instruction 16.01 for Sexual Exploitation 18 USC §2251(a), contains the explicit instruction as to the term "uses" as follows: "A defendant 'uses' a minor if he photographs the minor engaging in sexually explicit conduct." This instruction clearly displays to apply the term "use(d)(s)" as to §2251(a), the defendant must be the personal producer directly involved and is also in line with Kuhl's many motions discussing "used" in Count 1, (ECF No. 103, 174, 101, and 102), and cases cited.

* For this reason Kuhl asks for the proper definition as to the term "used/uses" be given in the instructions for Count 1.

Respectfully, S. Kuhl

~~POCKET BRIEF~~

Motion to CHALLENGE TO CSC 3rd INSTRUCTION

RECEIVED - GR
June 26, 2025 8:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

REMOVE NO MISTAKE OF AGE INSTRUCTION FOR CSC 3rd

* Misleads the jury because it essentially creates a misstatement of §2422(b). It removes the "knowingly" from §2422(b) and makes §2422(b) a strict liability crime, which it is not. Just as the 6th Circuit held in U.S. v. Jakits, 129 F.4th 314 (6th Cir. 2025), when addressing the phrase "sexual activity" being distinguishly defined by Ohio law from Federal law. Being that "sexual activity" under Ohio law, Jakits argued that attempting to produce child porn without interpersonal physical contact was not "sexual activity" under Ohio law. Thus, Jakits argued he did not violate §2422(b) by his conduct because the differing definitions. The Circuit held: Ohio law "does not constrain the definition of 'sexual activity' under federal law. Ohio law is relevant to whether Jakits violated §2422(b) with respect to only the separate element that 'any person can be charged with a criminal offense.'" Accordingly, stating that Kuhl can be charged under MI law CSC 3rd Degree by having sex w/ a minor 13, 14, or 15 is enough. Not removing the extra instruction will confuse the issues, mislead the jury, and cause misinterpretation of federal law. Michigan's strict liability cannot impede on the scienter

requirement of federal law. This is why the Sixth Circuit pattern instruction mandates the age change for §2422(b) depending on the underlying offense's age stipulation and does so in accordance with the U.S. Supreme Court decision in U.S. v. X-Citement Video.

* Referring to §2422(b) elements not being effected or altered by underlying state criminal sexual activity, U.S. v. Roman, 795 F.3d 511 at 519 n. 2 (6th Cir. 2015) held that "[t]he elements of these state offenses, however, are not incorporated into the elements of the federal crime under §2422(b)." citing U.S. v. Hackworth, 483 Fed. Appx. 972, 976-77 (6th Cir. 2012).

Respectfully

[signature]

RECEIVED - GR
June 26, 2025 8:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

~~POCKET BRIEF~~

Motion To Exclude Ex. 12 & "A" Testimony

USA

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

SEEK TO EXCLUDE EX. 12
AND "A" TESTIMONY

* Under FRE 403 Even if Ex. 12 is relevant, its probative value is substantially outweighed by, (1) unfair prejudice Because it did not reference a 3some between Minor 1 & "A" with Kuhl and only shows Kuhl being rude & derogative toward a female which is just a form of character evidence to paint Kuhl as rude, verbally abusive, and chauvanistic; (2) confuses the issues because it draws more light to "A" who was of legal age to consent and will be likely weighed by the jury improperly as an ~~as an improper~~ attempt to violate §2422(b); (3) misleads the jury because convo between "A" and Kuhl is not even it timeframe of any texts between SD & Kuhl, but is July & August of 2021 and this convo is to build personally between "A" and Kuhl; (4) needlessly cumulative due to the vast texts between Kuhl & SD where Kuhl references "A" which Kuhl does not dispute.

* Relevancy of Ex. 12 is attenuated too far from conduct accused because Kuhl was not trying to use communication with "A" to

persuade SD to do anything. "A" was of legal age to consent, and these messages are not phone service texts or Facebook messages. Thus, this also confuses the jury/misleads them because the platforms of communication alleged by Government are phone and Facebook messenger specifically. Accordingly, Government has no evidence as to Instagram being internet platform.

* Evidence was seized from Instagram App and is not evidence of CSAM or §2422(b). It was not seized from FB and while maybe found on iPhone was not a text of the phone itself but the separate app & platform of Instagram. Thus, it was not covered by SW of Feds on 1/25/23 or 2/8/23.

* Testimony of "A" should be excluded because it wastes time and is needlessly cumulative. Again, testimony will drift into communications between "A" & Kuhl which have no relation to SD or the charges only so much that SD introduced Kuhl and "A" to each other. These communications between "A" and Kuhl will only show Kuhl being derogatory and rude but only towards "A" because of issues between "A" and Kuhl w/ little to no relation to SD personally. Thus, "A" testimony will only be prejudicial and confuse the issues and mislead the jury to believe Kuhl's conduct stemmed from the 3some matter, when truly his conduct only stems from personal matter between Kuhl and "A."

Respectfully, [signature]

~~POCKET BRIEF~~

Motion To PRESERVE RIGHT TO JURY TRIAL

RECEIVED - GR
June 26, 2025 8:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-26

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

PRESERVE RIGHT TO JURY TRIAL

* Two issues are addressed which are imbedded in the Sixth Amendment's right to a jury trial: 1) Informing the jury of its right and power to nullify; and 2) Informing the jury of Kuhl's sentencing guidelines and the statutory penalties of §2251(a) and §2422(b).

* Historical sources and precedent show that the common-law jury at the Founders' time knew the ramifications of a guilty verdict and used that knowledge in reaching a verdict, frequently choosing a verdict because it would mitigate a defendant's punishment. Indeed, recent Supreme Court decisions about the Sixth Amend. show that the modern jury trial right must be as it was when the States ratified the Sixth Amendment.

* The common-law jury in Framers' era knew about and exercised its power to acquit even when the government proved beyond a reasonable that the defendant was guilty, or to mitigate the defendant's sentence, regardless whether application of the law given

by the court to the facts which the jury found provided otherwise.

* In Apprendi v. New Jersey, 530 U.S. 466, 484 n. 11, 120 S.Ct. 2348 (2000), the Supreme Court quoted its recognition in Jones v. United States, 526 U.S. 227 at 248 (1999) that the Sixth Amendment's substance, as the Founders saw it, is its protection against substituting new methods of trial in place of the jury trial: "As we stated in Jones: 'One contributor to the ratification debates, for example, commenting on the jury trial guarantee in Art. III, § 2, echoed Blackstone in warning of the need 'to guard with the most jealous circumspection against the introduction of new, and arbitrary methods of trial, which, under a variety of plausible pretenses, may in time, imperceptibly undermine this best preservative of LIBERTY.' A [New Hampshire] Farmer, No. 3, June 6, 1788, quoted in The Complete Bill of Rights 477 (N. Cogan ed. 1997)."

* In Booker v. United States, 543 U.S. 220, at 238-239, 125 S. Ct. 738 (2005), the Supreme noted that "The Framers of the Constitution understood the threat of 'judicial despotism' that could arise from 'arbitrary punishments upon arbitrary convictions' without the benefit of a jury in criminal cases." (quoting The Federalist No. 83 at 499 (C. Rossiter ed. 1961)).

* Refusing to inform the jury of its nullification power ignores the historical roots of juries and denigrates the jury's sacred role as the people's last defense, and lays the foundation for the return of tyranny by refusing to accept the jury in its entirety as envisioned by the Founders. Indeed, refusing Kuhl the right to inform the jury the ramifications behind a guilty verdict promotes the same injustice. Further, it denies Kuhl, Due Process of law, freedom of speech, as well as denies him and the jurors their right of decency and morality they retain under the Ninth Amendment, and subjects Kuhl to cruel and unusual punishment by not being able to beg for mercy and understanding and foregiveness. The overreach of the Federal government in enacting over 3,000 criminal laws, most of which can and are prosecuted by the States mandates that Kuhl be able to address such matters and the jury be informed of such. Especially where Kuhl is being prosecuted by the State of Michigan and the U.S. for the same conduct. Even more so where the federal punishment exceeds, by far, the State's reasonable and substantial punishment.

* The State of Michigan has allowed for criminal defendants to argue for nullification as can be seen in Salem v. Yukins, 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006).

* The Sixth Amendment guarantees to a criminal defendant the right to "an impartial jury." U.S. Const. Amend. VI. "That right is no mere

procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." Blakely, 542 U.S. at 305-06, 124 S. Ct. 2531. Indeed, the jury trial right as preserved in the Bill of Rights was passed down from the right as enshrined in the Magna Carta. See Booker, 543 U.S. at 239 ("The Founders presumably carried this concern from England, in which the right to a jury trial had been enshrined since the Magna Carta.").

* "The colonial jury played a vital and celebrated role in American resistance to British tyranny leading up to the revolution. American counsel regularly argued the validity of laws directly to juries, which often refused to enforce British laws they felt were unjust." Andrew J. Parmeter, Nullifying the Jury: "The Judicial Oligarchy" Declares War on Jury Nullification, 46 Washburn L.J. 379, 382-83 (2007).

* The Supreme Court has recognized that the jury trial right that the Sixth Amendment affords to defendants was understood at the Founders' time to provide essential protections against government tyranny and to safeguard liberty: "the historical foundation for our recognition of these principles extends down centuries into the common law. '[T]o guard against a spirit of oppression and tyranny on the

part of rulers,' and 'as the great bulwark of [our] civil and political liberties,' 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours....' 4 [Sir William Blackstone, Commentaries on the Laws of England: In Four Books 343 (William D. Lewis ed., 2007)] (1769)...." Apprendi, 530 U.S. at 477.

* In Georgia v. Brailsford, 3 U.S. (3 Dall.) 1, 1 L. Ed. 483 (1794), a civil case, Chief Justice John Day charged the jury: "It may not be amiss, here, Gentlemen, to remind you of the good old rule, that on questions of fact, it is the province of the jury, on questions of law, it is the province of the court to decide. But it must be observed that by the same law, which recognizes this reasonable distribution of jurisdiction, you have nevertheless a right to take upon yourselves to judge of both, and to determine the law as well as the fact in controversy. On this, and on every other occasion, however, we have no doubt, you will pay that respect which is due to the opinion of the court: For, as on the one hand, it is presumed, that juries are the best judges of facts; it is, on the other hand, presumable, that the court are the best judges of law. But still both

objects are lawfully, within your power of decision." 3 U.S. at 4.

* Kuhl urges the Court to read Hamilton's argument in People v. Croswell, 3 Johns. Cas. 337 (N.Y. Sup. Ct. 1804) at 355-56.

* This urging furthers to the publishing of the late Professor Julius Goebel, Jr., George Welwood Murray Professor of Legal History at Columbia Univ. School of Law and Director at the Foundation for Research in Legal History, and T. Raymond Naughton, Law Enforcement in Colonial New York 604 n.7 and supra at 751, to support his request that the jury be informed of his potential punishment upon a verdict of guilty. Also see, John H. Langbein, Shaping the Eighteenth-Century Criminal Trial: A View from the Ryder Sources, 50 U. Chi. L. Rev. 1, 22 (1983), at 22 and 41, 55. Whether the Court informs them, or Kuhl be allowed to, the jury should be informed of each crime charged in its entirety, including punishment and Kuhl's likely guideline range, before reaching their verdict.

* "There is little doubt that juries have the power to 'nullify' the law by returning an acquittal 'in the teeth of both law and facts.'" U.S. v. Krzyske, 857 F. 2d 1089, 1094 (6th Cir. 1988) (Judge Merritt dissenting). Indeed, the Sixth Circuit has held that a defendant shall be given "some leeway in persuading the jury to acquit out of mercy

or obedience to a higher law." United States v. Burkhart, 501 F.2d 993, 997 n. 3 (6th Cir. 1974)(quoting

* For these reasons and historical precedent, Kuhl should be allowed to argue for nullification and inform the jury of the crimes' punishments and his applicable guideline range.

* In accordance with this request, Kuhl seeks that the Instruction as to the Jurors' duties be modified. Specifically, the second sentence of paragraph 2 be amended to state: "It is my job to instruct you about the law, and you are instructed to consider law as I have instructed and apply them in arriving at a verdict unless you are left with a firm belief that application of those instructions in this case would be fundamentally unjust." Paragraph 3 should read "The lawyers have talked about the law during their arguments, which may differ from what I say, however, you should apply my instruction on the law unless you are left with a firm belief that the application of the law as I have instructed you in this case would be fundamentally unjust." Paragraph 4 should strike the second sentence. Paragraph 5's first sentence should read "I discourage you to be influenced by personal likes or dislikes..." Instruction 8.05 as to Punishment should be excluded.

Respectfully, S. Kuhl