# 1

UNITED STATES OF AMERICA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL Hon. Jane M. Beckering

# MOTION FOR NEW TRIAL

Defendant now comes before the Court requesting a new trial under Federal Rule of Criminal Procedure 33. The reasons supporting a new trial are as follows:

1. Erroneous Court Rulings and Mistakes During Trial

2. Prosecutorial Misconduct

3. Newly Discovered Evidence

4. Ineffective Assistance of Counsel

## ERRONEOUS COURT RULINGS AND MISTAKES DURING TRIAL

1. Court abused its discretion and committed plain error in refusing to decide Kuhl's Motion To Sever (ECF No. 227) as untimely. Reasons supporting this argument are as follows:

a) The messages surrounding the depictions, and the incidents underlying these charges, are over 3 years old.

b) Kuhl did not receive the messages surrounding the depictions until 5/30/25. Accordingly, Kuhl moved with due diligence and in good faith by bringing Motion To Sever to the Court's attention the next day 5/31/25.

c) The Court's finding that good cause did not exist to file the untimely Motion To Sever was unreasonable and arbitrary.

d) The Motion To Sever was meritorious and by not granting it, the Court enabled unnecessary prejudice to be present at trial.

e) The length of the charged timeframe and the lack of evidence to Count 1, which the Court even acknowledged, strongly supported severance of the charges. Further, the direct temporal attenuation, as well as the direct contextual attenuation of the dates of the depictions under Count 1, and the dates of enticement under Count 2, supported severance.

2. Court abused its discretion and committed plain error by refusing Kuhl's request that the Government be ordered to disclose the date and time the depictions of Count 1 were produced, as well as the materials used to produce the depictions.

a) The depictions and physical data pertaining to them was subject to disclosure under all three subsections of Rule 16(a)(1)(E).

b) Materials used to produce the depictions had traveled in interstate commerce was the jurisdictional element of Count 1 as charged in the superseding indictment. Thus, the Court's refusal resulted

in surprise at trial, because the Government presented the theory that the jurisdictional element was proved by SD stating she used an iPhone purchased by Kuhl to produce the depictions. Accordingly, multiple Government witnesses stated they knew of no iPhone produced in Michigan or the U.S.

c) Kuhl strenuously urged this matter at the 6/5/25 hearing. Yet, the Government's misleading response was that they showed to Kuhl, and ~~presented~~ intended to show at trial, that Kuhl's phones were manufactured outside the U.S. However, Kuhl's phones did not produce the depictions.

d) This information is exculpatory because the evidence shows it is likely at least some of the depictions were not created at the time they were sent. Specifically, the context and circumstances displayed by the texts in discovery surrounding the 5/27/22 depiction (Exhibit 22), reasonably infer that SD had previously created this video.

3. Refusal to define the term "transmitted" is reversible error warranting a new trial. Reasons supporting this argument are:

a) Allowed the jury to be misled that "transmitting" a depiction in the context of §2251(a) applies to the mere transfer of a digital depiction, when truly it only applies to the broadcasting or streaming of a <u>live</u> visual depiction.

b) Amended the indictment as to Count 1 because nowhere is Kuhl

accused of "transmitting" any depiction. Indeed, the element of interstate commerce nexus was that the materials used to <u>produce</u> the depictions had traveled in interstate commerce.

c) This issue was exacerbated and permeated the trial due to the second element description in the jury instructions for Count 1, the third sentence of the first paragraph in the Statement of The Case (ECF No. 250 at PageID. 2184), the second element description as to Count 1 in the Statement of The Case (PageID. 2185), and the ~~term~~ definition of "visual depiction" in the jury instructions.

4. Verdict Form as to Count 1 allowed for the jury to convict Kuhl without unanimously agreeing on the same offense, which was compounded by the superseding indictment, circumstances and evidence of the case, and the jury instructions. Reasons supporting this argument are:

a) 2251(a) criminalizes the act of production itself, as well as conspiring or attempting to do so. However, as the Court stated during the Statement of The Case (PageID. 2185), it does not matter if the defendant produced the image or if he caused a minor to produce the visual depiction. (Though this specific wording allows for a misinterpretation of the law, we will assume it is correct for this portion of this pleading.) Here, Kuhl is not accused of producing visual depictions himself, but that he

persuaded, induced, enticed, or coerced SD to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. Thus, the conduct charged for Count 1 in this case is identical to conduct under §2422(b). Accordingly, each time Kuhl moved SD's mind from a state of hesitation to one of agreement, and thus ~~a depi~~ SD engaged in sexually explicit conduct, and produced visual depictions of that specific instance of conduct, §2251(a) was violated. However, the verdict form did not require that the jury unanimously decide on the specific moment, over the 16 month period, that Kuhl persuaded SD to engage in sexually explicit conduct and produce depictions of such conduct. Indeed, the Statement of the Case nor the jury instructions repaired this duplicity. The jury was instructed overall to find that any time during the 16 month period Kuhl violated §2251(a) and that each depiction was or wasn't sexually explicit conduct. The jury was not instructed to unanimously decide that Kuhl sexually exploited SD as to each specific image, nor unanimously agree on the specific instance when Kuhl sexually exploited SD. The issue here is analogous to United States v. Pulido, 22-10709 (11th Cir. Apr. 8, 2025).

b) The verdict form did not contain the mens rea terms of §2251(a) for Count 1 as it did for Count 2. Further, the Statement of The Case amended the indictment by stating

that the government says the defendant "persuaded" SD to transmit him videos.... However, the superseding ~~indicted~~ indictment specifically alleged Kuhl "used, persuaded, and enticed" SD to "engage in sexually explicit conduct," not that he "used, persuaded, enticed" her to "transmit" videos to him. The amendment is twofold. First, "used" as applied in the context of §2251(a) means that the accused produced the depiction himself. By omitting this verb from the verdict form and statement of the case, the Government was allowed to present an alternative theory than that passed upon by the grand jury. This violated the due process and grand jury clauses of the Fifth Amendment, as well as Kuhl's right to be informed of the nature and cause of the allegations against him under the Sixth Amendment. Further, it violated Kuhl's right to a fair trial on the charges against him. Second, the superseding indictment alleged specifically in Count 1 that Kuhl "used, persuaded, and enticed" SD to "engage in sexually explicit conduct," not to produce or "transmit" videos to him. Indeed, Count 1 does not even allege SD sent the videos to Kuhl or that she even produced the videos.

c) Neither the verdict form nor statement of the case mention an attempt offense as to Count 1. This amended the superseding indictment as to Count 1. Further, it confused the issues, misled the jury, and did not lay a foundation for an attempt offense.

The fact that that the jury instructions and the superseding indictment stated that defendant was charged with a complete and attempt offense under §2251(a), only heightened the confusion, misleading, and amending caused by this issue. Some jurors may have found that Kuhl attempted to violate §2251(a), while others found he did violate the statute. This is supported by the only texts presented, by Kuhl, possibly being even minimally associated with any depictions are so far attenuated contextually and temporally from the depictions presented, that they would only create a weak case for an attempt offense. These specific texts by Kuhl ~~occur~~ appear on pages 17, 18, and 93 of Government Exhibit 11A, and the charged depictions appear on pages 67, 121, 125, and 142 of Gov. Ex. 11A. Because there are no texts of Kuhl directing or requesting SD to send any of the charged videos it is possible that some jurors found Kuhl attempted to violate §2251(a), while others found that he did.

d) This case differs substantially from United States v. Sibley, 15-4232 (6th Cir. Mar. 7, 2017), because in Sibley the time period charged for the violation of §2251(a) was only ten days. Further, Sibley actually produced the depictions at issue himself using his own phone.

5. Statement of The Case laid the foundation for the Government to produce alternative theories not passed upon by the grand jury and misstated the law. Reasons supporting this argument are:

a) The language "The government also says it will prove that the defendant used electronic devices affecting interstate commerce to persuade Minor 1 to engage in sexual activity with him that is illegal under Michigan law," ~~[illegible]~~ is improper. Indeed, the interstate commerce category invoked under §2422(b) is not one of "affecting" interstate commerce, but it instead invokes the "means or facility" of interstate commerce category to establish federal jurisdiction. United States v. Acif, 4:20-cr-35-DPM (E.D. Ark. May 24, 2024) goes into a logical in-depth analysis of the difference between these commerce categories along with cited cases therein. This confused the issues and enabled the government to present an affecting interstate commerce theory, instead of a use of means or facility of interstate commerce theory, and misled the jury to believe that was the requisite standard as to §2422(b) violations.

~~b) The language "The government says ... the defendant persuaded~~

b) There is no reference to an attempted offense as to either Count in the Statement of The Case. This misstated the charges against Mr. Kuhl, removed the possibility of introducing an

attempt offense in the verdict form, amended the superseding indictment, and misled the jury as to what it was required to find. This issue is compounded by the multiple inconsistencies amongst the jury instructions, verdict form, statement of the case, and superseding indictment about this matter

6. Court acted improperly by leading and allowing the Government to amend the verdict form mid trial as to the first date of enticement for Count 2 from 6/1/2021 to 10/31/2021. Reasons supporting this argument are:

a) This violated Kuhl's due process and equal protection rights.

b) This violated Kuhl's right to a fair trial and impartial judge.

c) This violated Kuhl's right to be informed of the nature and cause of the charge against him.

d) The Government knew by 6th Circuit pattern instructions that it must be proven beyond a reasonable doubt that Kuhl knew SD was under 16. Yet the Government chose to stick with the date of 6/1/~~2025~~ 2021 until mid-trial due to the Court's leading.

e) This impaired Kuhl's defense as it caused him to have to change strategy mid-trial.

f) All of this could've and should've been avoided by a granting of Kuhl's Motion For Bill of Particulars (ECF No. 97).

7. The Court's answer to the jury's question during deliberation was improper. Reasons supporting this argument are:

a) The second bold paragraph that Kuhl objected to unfairly swayed the jury to weigh texts not directly related to the specific date and instance of alleged enticement resulting in illegal sexual activity on 8/24/22. This correlates with the previous argument, but as to Count 2, and reference to United States v. Pulido. Each time that a minor's mind is moved from hesitation to agreement §2422(b) is violated. Indeed, the jury felt there was no use of a facility of interstate or foreign commerce directly related to 8/24/22 by their question. The Court's answer led them to rely on prior use of phone/internet, unrelated to this instance of enticement, to convict Kuhl of Count 2. Indeed, there was no enticement presented as to 8/24/22 and especially not by use of phone or internet because the messages in evidence ceased on 8/22/22, there was no reference by Kuhl to anything sexual in those messages on 8/22/22 and in fact showed SD's strong wanting desire to see Kuhl, and the only messages prior to 8/22/22 in evidence took place over a month prior on 7/11/22 (Exhibit 11A at page 140).

b) The Court's answer should have simply been "yes, look to the second element of your instructions as to 18 USC §2422(b).

c) The Court's answer already told the jury to consider all of

their instructions. Thus, stating the bold portion of the answer Kuhl objected to was unfair and improper under the circumstances.

8. The Court's repeated preventing of Kuhl presenting his defense through cross-examination was improper, intentional, and a violation of Kuhl's right to present his defense under the Sixth Amendment and Due Process under the Fifth Amendment. It also violated Kuhl's right under the First Amendment to freedom of speech. Reasons supporting this argument:

a) The Court repeatedly interrupted and prevented Kuhl's questioning of law enforcement officers as to negligence and misconduct in handling evidence and investigation. This was an intentional move to prevent Kuhl from showing the conspiracy underlying this case. An instance is the Court's refusal to allow impeachment or correction of Meredith's false testimony that the Wyoming Search Warrant listed Kuhl as the owner of the Samsung.

b) The Court stopped Kuhl from questioning Meredith as to why no Mobile Device Seizure and Examination Checklist had been created for the Samsung, but one had been created for the iPhone searched under the same warrant.

c) Stopped Kuhl from showing Meredith incorrectly stated that the CCU Report prepared by him did not state he

specifically removed the SIM card from the iPhone. This is important because the CCU Report makes no such mention of removing the SIM from the Samsung. Thus, the removing of the SIM from the Samsung before the Search Warrant was issued was illegal.

d) Stopped Kuhl's questioning of Meredith as to his execution of the Search Warrant without the affidavit. This is very important for multiple reasons. First, the Samsung was not listed on the Search Warrant as being linked to nor owned by Kuhl, and was not in the seizure portion of the warrant describing what criminal evidence was sought from the Samsung. Second, it shows intentional with holding of the affidavit because they jumped the gun and put CSC by accident because they already knew all about Serenity.

e) "When mere negligence is involved, no sanctions are imposed, but the defendant can still examine the prosecution's witnesses about the investigative deficiencies." Daniels v. State, 114 Nev. 261, 267, 956 P.2d 111, 115 (1998).

f) Stopped Kuhl from questioning SD as to messages displaying her want and desire to spend time with and have sex with Kuhl.

g) Stopped Kuhl from questioning SD as to why she and Kuhl ceased communicating in 2022.

h) Stopped Kuhl from questioning Gensterblum as to discrepancies

about the date he received the Samsung Extraction and began searching it.

9. Court Erred by refusing to allow Kuhl to call Buttery, Stolsonburg, and all Wyoming PD officers involved in the underlying arrest and Search Warrant. Reasons supporting this argument are:

a) Kuhl's subpoena for such witnesses was entered into the jail's outgoing mail on 6/10/25. Thus, it complied with the 14 day subpoena rule of the Court.

b) Buttery was the original case agent in this matter and Kuhl had a right to question him about this case. Such questions are: why he waited over 6 months to search the iPhone seized by Indiana; who turned the iPhone on 7/3/22 and 7/13/22 and why; did you ever follow Kuhl prior to this case; did you follow Kuhl to Bangor; how do you know Shane is Kuhl's biological father's name; as of January 2023 how many child pornography cases has Buttery been involved and in what capacity; did you go back through the Facebook data seized under the 3/8/22 warrant to locate messages between Kuhl and SD; other relevant questions pertaining to statements in Buttery's Search Warrant applications and the investigation of this case and reviewing of the iPhone Extraction.

c) Wyoming PD officers needed to be questioned to show errors

in chain of custody and unlawful arrest and false statements in reports. For instance, Bernard lied and stated he took photos of the evidence in the location of where it was found, which is false. Kroschel needed to be examined about why she omitted the material information of where the marijuana and scale was located from her affidavit, and why CSC was listed as the crime on the affidavit. This reveals the conspiracy here and prior knowledge of SD which lays foundation of entrapment defense.

d) This prevention of subpoenaing witnesses violated Kuhl's due process and right to face his accusers and present his defense. Also violated compulsory clause.

10. Court Erred in refusing to allow Kuhl to question SD about the reason they stopped communicating in 2022 was because of SD's self-recorded video of her having sex with a man. Reasons supporting this argument are:

a) This violated the Confrontation Clause of Sixth Amendment.

b) Government opened the door by eliciting testimony from SD as to why she and Kuhl ceased communicating.

c) This was intrinsic evidence under the circumstances and would compound negation of SD's credibility because she told MSP she broke off communication with Kuhl because they argued too much and she wanted to work on herself. Truly, Kuhl

broke off communication due to learning of the video.

d) Due to the lack of evidence showing Kuhl persuaded SD to engage in sexually explicit conduct, record it and send him those recordings, it was imperative that Kuhl be allowed to show SD's habit and liking of depicting herself engaged in sexually explicit conduct. This is further supported by the context of all the videos charged were produced by SD and sent to Kuhl at times she reached out seeking to see him.

e) Under the circumstances Kuhl should have been allowed to question SD about this matter regardless of FRE 412. Indeed, this stood to support proof that the physical evidence (videos) was the result of someone else (SD) and thus was admissible under FRE 412(b)(1)(A).

11. Kuhl's right to a jury trial was violated when the Court prohibited him from arguing for nullification and discussing his applicable guideline range. Reasons supporting this argument:

a) Reasons stated on the record including the quote from the Supreme Court case Georgia v. Brailsford, 3 U.S. (3 Dall.) 1, 1 L. Ed. 483 (1794).

b) The Sixth Circuit has held it is proper to "allow a defense attorney some leeway in persuading the jury to acquit out of considerations of mercy or obedience to a higher law."

c) Indeed, the courts of Michigan do permit defendants to argue for nullifcation. See Salem v. Yukins, 414 F. Supp. 2d 687 (E.D. Mich. 2006).

12. Court erred in refusing Kuhl's request to insert messages before the 5/27/22 video unless SD's text that only 11th and 12th graders can sign out also be admitted. Reasons supporting this argument are:

a) Knowledge of age is not required to prove a violation of §2251(a), so the text sought by the Government was needlessly cumulative and irrelevant to the production of the depiction.

b) Kuhl conceded to allow SD's text directly after his "I'm tryna come see u now!" text in which SD states "To bad I'm at school." Evidence already showed SD was in high school and Kuhl never claimed to believe SD was at least 18.

c) The texts Kuhl sought to enter also established SD was in school which was part of Kuhl's defense as to this video not being produced at that time. Further, the texts again would've displayed a pattern of SD trying to see Kuhl and at these times she sends these videos of her own volition. Moreover, the texts sought to be introduced would have displayed SD was sending Kuhl several depictions at

this time because she was bored in class. The texts would have shown was not seeking or directing SD to send any depictions at all and she was just sending videos already in her phone and this was likely the case for the video of her vagina at issue here and entered as Exhibit 22.

## PROSECUTORIAL MISCONDUCT

1. Prosecution knowingly admitted multiple instances of false testimony. Reasons supporting this argument are:

a) The government's presentation of perjured testimony or failure to correct false evidence violates due process. See Giglio v. United States, 405 U.S. 150, 153-155, 92 S. Ct. at 766 (1972).

b) Allowed Meredith to falsely testify that the Wyoming SW listed Kuhl as the owner/user of the Samsung.

c) Allowed SD to falsely testify that she did not have a phone when she initially began communicating with Kuhl. This lie is known by the prosecution because SD's statement during the MSP interview that she had an android she bought with money from her job when she began talking to Kuhl "because that's how long ago it was." The prosecution also knew this testimony was false due to SD's FB message on page 18 of Exhibit 11A. Another reason the prosecution knew this was a lie is because of the exchange between Kuhl

and SD on page 2946 of the Facebook Messenger transcript. This exchange took place on 5/26/21 at 10:34 PM and 11:53 PM (02:34 UTC and 03:53 UTC on 5/27/21). Further, the government knew this was false testimony due to the late and early morning hours SD was sending messages which could not have been from a computer at school as the government claimed at trial. The prosecution exploited this false testimony to support that Kuhl knew or recklessly disregarded SD's age from the start and to establish Kuhl purchased her a phone to continuously be able to communicate and entice SD to engage in illegal sex, as well as lay the foundation that the phone purchased by Kuhl for SD was the material used to produce the depictions of Count 1.

d) Allowed SD to falsely testify that I only mentioned that I was not really seeking a threesome with "A", but just wanted to have sex with "A" one time. This is known by the government to be false testimony due to my text on page 54 of Exhibit 11A. Further proof the government knew this was false testimony can be seen on pages 114 and 116 of iPhone Extraction report (BATES 1348 and 1350), as well as pages 30-31, 35, and 41 of Android Extraction Report (BATES 2182-83, 2187, and 2193). My messages there repeatedly display I don't really care about a threesome, but just want

to have sex with "A" one time. This was material because the government and jury placed substantial weight on the theory Kuhl persuaded and enticed SD in an attempt to have a threesome with "A."

e) Allowed SD to falsely testify that she only discussed being 17 one time, and attempted to prohibit me from providing proof otherwise on cross-examination. This is material because the government did this to falsely portray that Kuhl knew or recklessly disregarded SD's age initially to ensure a guilty verdict as to the original first date of enticement on the verdict form 6/1/21. Only upon disclosure of SD's multiple texts claiming to be 17 did the prosecution amend the verdict form due to the Court's erroneous authorization to do so.

2. Prosecution made an improper and leading statement during Kuhl's cross-examination of SD. Reasons supporting this argument are:

a) The prosecution intentially made an improper objection to make a leading statement to guide SD's testimony. This occurred as Kuhl was questioning SD to the absence of any texts, surrounding one of the depictions, that displayed Kuhl directing or requesting such depiction. The government objected to say that SD already stated she communicated with Kuhl by multiple means like Facetime, textnow, phone

calls, and Instagram. This was the basic statement because at this time Kuhl does not have the transcript to quote verbatim.

b) The prosecution capitalized on this theory of alternate means of communication during different times of the trial.

c) This improper statement comes full circle and weighed heavily in the jury's question submitted during deliberation. Indeed, the jury remembered this instance of misconduct due to the interruption being at the most crucial and emotional time of the trial - SD's testimony. Further, Kuhl's complaint of this matter was clear and VerHey simply smirked.

d) This improper statement did lead SD's future testimony and discouraged and overwhelmed Kuhl. Indeed, this misconduct shaped the development of the record evidence and the trial strategy of the government at trial. Especially as to Count 1 and the second date of enticement 8/24/22 of Count 2.

3. The Government's summary of messages in Exhibits 11 and 11A ~~were~~ was misleading and contained irrelevant, cumulative, and unnecessary prejudicial messages. Reasons supporting this argument are:

a) Even relevant evidence may be excluded when its probative value is substantially outweighed by a danger of unfair

prejudice, confusion of the issues, or misleading the jury. FRE 403.

b) Several instances of how the summary was misleading and encouraged inferences and and conclusions that were improper.

c) Page 61 of Exhibit 11 A displays the context and timing of these messages misleadingly and incompletely. The Government makes it seem as if all these texts occur on 9/19/21, when truly the only text on this page that was on 9/19/21 is the blue text up top. SD's message about her age did not take place until over 24 hours later on 9/21/21 at 1:05 AM. (UTC 05:05) Then the bottom 2 texts on this page by SD are sent almost 1 month later on 10/17/21 at 1:01 PM (UTC 5:01 PM). Kuhl's immediate response is "This why I said just leave me alone bro damn" also on 10/17/21 at 1:01 PM (UTC 5:01 PM). SD responds at 1:04 PM (UTC 5:04 PM) "I can't dick too good nah let me stop but okay." Kuhl responds "Get your bum ass off my shit fr (for real)." This clearly displays Kuhl trying to distance himself after learning SD's ~~15~~ supposedly 15 even though she reinitiates ~~cond~~ contact. It also displays Kuhl's anger and frustration at being lied to. This exchange ends on 10/17/21 and it is SD who reaches out again almost ten days later as shown on page 62 of Exhibit 11A. This intentional misleading by the jury is material because it shows that Kuhl is not seeking out further sex with SD after learning her age and is upset about

the situation. Yet the government presented very prejudicial texts by Kuhl prior to learning of SD's age to paint him in a bad light. This omission of material context was ~~only~~ also done to negate Kuhl's entrapment defense and exclude one of many instances showing that SD is not only willing but wanting to continuously engage in sexual activity with Kuhl. Such evidence is also key that Kuhl was not moving SD's mind from a state of hesitation to agreement or attempting to do so. This intentional misleading is only compounded by the government's ~~intentiat~~ intentional omission of SD's multiple texts claiming to be 17 in the Facebook messages.

d) Page 70 of Exhibits 11 and 11A is not relevant because it is not displaying Kuhl ~~to engage~~ try to persuade SD into sexual activity. As can be seen in the messages leading up to page 70 (62-69) SD initiates contact and states she is wanting to see Kuhl. Kuhl does not say anything about sex specifically at all, only that he also wants to see SD. But, again, the messages of page 70 do not relate to Kuhl enticing or coercing SD to engage in sexual activity using the phone or internet. Further, the messages on page 70 are not related to the production of the depiction prior to page 70 on page 67.

e) Between pages 70-71 of Exhibits 11 and 11A the government omits SD's text "well I wanna fuck but u ain't fucking her." This displays more than mere consent or willingness, but actually a wanting desire and seeking of sexual activity with Kuhl by SD. This is material and very relevant as it negates the theory that Kuhl was

moving SD's mindstate from hesitation to agreement, which is an essential element of §2422(b). Omitting this message by SD stood to substantially support the government's case while unfairly negating Kuhl's defense.

f) Between pages 70-71 of Exhibits 11 and 11A, government omits Kuhl and SD's texts just minutes before on 10/29/21 at 10:46 and 10:49 PM which show Kuhl trying to distance himself, upset that he loves SD who lied about her age, and how the whole situation is messed up. These messages support Kuhl's theory that he wasn't persuading SD and wanted to break things off and tried to do so, but that he loved SD and she would not leave him alone.

g) Pages 98-114 of Exhibits 11 and 11A are irrelevant because SD had already said she wanted to fuck and argument is not related to any failure to have a threesome with SD and "A" but it misleads the jury to make that conclusion or inference, and prejudicially paints Kuhl as aggressive, rude, and abusive. However, the aggression and rudeness is not due to any refusal of SD to have sex but is due to Kuhl being angry that he'd gotten a room and the time for check in had passed. If these messages are deemed to be admissible, Kuhl's messages in this timeframe showing his mental instability, love for SD, and anger that SD lied about her age on BATES 1523, and 1525-27 should have also been presented, as well as his text on BATES 1532.

h) Page 115 of Exhibits 11 and 11A is misleading and irrelevant. It is beyond the date of enticement of 10/31/21 and unrelated to this incident and that of 8/24/22. Also, it creates a misleading conclusion that I reached back out to SD seeking relations when SD reinitiated contact with Kuhl after 10/31/21 on 11/13/21, as can be seen on BATES 1545. Indeed, SD says she is trying to see Kuhl on

BATES 1546.

i) Several of the excerpts are ommitting material texts to improperly shape the narrative of the content in a prejudicial manner. Further, numerous excerpts are unrelated to the specific periods of enticement dates presented to the jury of 10/31/21 and 8/24/22 and completely unrelated to the context and circumstances pertaining to the depictions. Due to the page limit for briefs, Kuhl requests a hearing to allow for the Court to review this matter thoroughly and review the texts Kuhl wishes to present to support his argument.

j) Due to the government not providing Exhibit 11 until 6/17/25 Kuhl did not have ample oppurtunity to address all of these matters along with trying to prepare challenges to ~~in~~ the jury instructions and make preparations for trial.

4. Government withheld exculpatory evidence in violation of Brady and Giglio. Reasons supporting this argument are:

a) Government did not disclose their interview and witness preparation of SD, where it is believed they went over messages with SD outside of those in the exhibits 11 and 11A to convince SD to testify and do so by intentionally preying on her emotions and insulting Kuhl to do so.

b) Government did not disclose payments made to SD and "A" to ensure their presence and testimony.

c) Government did not disclose messages on Facebook of SD where she tells a friend Kuhl is her boyfriend and bought her a phone. MSP references this on Supplement 005 of MSP Incident Report 0000091-22, which is

state CSAM investigation underlying this case. This is material because depending on the date of the message it will prove that SD got this phone after the depictions were produced which negates the theory presented by prosecutors at trial that SD used phone Kuhl got her to produce videos. Also material because it supports defense that Kuhl was not persuading SD to send videos or asking her to do so, but that she did so because her and Kuhl were in a relationship and "that is what people do in relationships" as SD testified at trial.

d) Government has SD Facebook data where she claims to have sold the phone Kuhl got her. This can lead to other material exculpatory evidence. Kuhl was not aware the government was going to present this phone theory at trial and did not provide Kuhl with Supplement 005 of MSP Incident Report for CSAM. Kuhl also did not know SD sold phone on Facebook Marketplace until her testimony at trial.

e) Government withheld information revealed on MSP interview of SD that another detective had contacted SD's mother regarding SD communicating during 2022 with a man on JPAY. This may have been a man SD had previously been "sexually abused" by and shows that SD tends to claim abuse once her relations with older men are discovered, but the fact she keeps contact after having them locked up negates the genuineness of SD's claims. Prosecutors and law enforcement knew of this because it is disclosed in recording of SD MSP interview.

## NEWLY DISCOVERED EVIDENCE

1. Phone that government and SD stated Kuhl got SD and was used to produce depictions was purchased after all depictions were produced on 8/26/22. Reasons supporting this argument are:
   a) Kuhl has access to receipt showing proof that phone was not purchased until 8/26/22
   b) This is material because it makes prosecution theory that this phone produced depictions impossible.
   c) Kuhl would not have known to get such evidence because he was unaware that government would present this theory at trial.

## INEFFECTIVE ASSISTANCE OF COUNSEL

1. Counsel stated during cross of Gensterblum that SD stated during MSP interview that Kuhl bought her "one or more phones." Reasons supporting this argument are:
   a) SD unequivocally stated during interview that Kuhl only ever bought her one phone. Indeed, she exaggerated this fact because Gensterblum constantly stated he was trying to get any phone SD had that may show her communications with Kuhl.
   b) This would negate and discredit SD's testimony that Kuhl got her 2 phones at trial if Counsel had properly crossed Gensterblum.
   c) District courts may consider ineffective assistance of counsel claims

on a motion for new trial if an adequate record has been developed on the issue. See U.S. v. Stevens, 149 F.3d 747, 748 (8th Cir.)

2. Counsel did not effectively cross Gensterblum. Reasons supporting this argument are:

a) Counsel did not elicit from Gensterblum that SD stated she had an android phone when she first began communicating with Kuhl that she had bought from Dollar General with her own money from her job.

b) This was clear error because getting this information on the record would discredit SD's testimony and government theory that SD had no phone when she began communicating with Kuhl.

c) Counsel did not cross Gensterblum that SD clearly stated Kuhl had never given her money during MSP interview. This shows SD's clearly dishonest character and ability to exaggerate and manipulate as she desires. Also, would be corroborated as dishonesty due to texts on page 140 of Exhibits 11 and 11A showing Kuhl had given SD money before.

3. Counsel did not move for Rule 29 acquittal again after rest of defense although Kuhl asked and original oral motion for acquittal was not sufficiently and zealously presented. Reasons supporting this argument are:

a) Evidence for Count 1 was even weaker after Defense Ex. A was entered as to Count 1.

b) Counsel did not elaborate on definition of "for the purpose of" in jury

instructions and how the government's theory that SD sent videos at times because she felt she was losing Kuhl fails to establish the "for the purpose of" element required for Count 1.

4. Counsel did not get testimony from Adam Kelly despite Kuhl's multiple requests and clear desire to do so. Reasons supporting this argument are:

a) Counsel failed to do this himself when presenting defense and did not assist Kuhl in doing so when acting in standby capacity.

b) The American Bar Association Criminal Judicial Standard 6-3.7, Standby counsel for pro se defendants, states: a) When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon. Standby counsel should always be appointed in capital cases and in cases when the maximum penalty is life without the possibility of parole. Standby counsel should ordinarily be appointed in trials expected to be long or complicated or in which there are multiple defendants, and in any case in which a severe sentence might be imposed.... c) When standby counsel is appointed to provide assistance to the pro se accused only when requested, the trial judge should ensure that counsel not actively participate in the conduct of the defense unless requested by the accused or directed to do so by the court. When standby counsel is appointed to actively assist the pro se accused, the trial judge should ensure that the accused is permitted to

make the final decisions on all matters, including strategic and tactical matters relating to the conduct of the case.

c) A "standby counsel's job is to assist the defendant in procedural matters with which he may not be familiar" U.S. v. Washington, 596 F.3d 926, 934 n.9 (8th Cir. 2010).

d) Kelly's testimony was key because it would have negated the allegation of Count 1 of the superseding indictment that Kuhl "received and stored" the videos at issue. Indeed, Kelly found, and Mr. Graham was aware, that none of the videos had been stored by any action of Kuhl and were only present in the phones' SMS ~~databat~~ database as ~~attachmet~~ attachments to texts. This is exculpatory because not storing the depictions shows the prosecutor lied to grand jury, disproves the received and stored allegation, and provides support Kuhl did not seek out videos because he did not even save them. Kuhl continuously brought this matter to Mr. Graham's attention to no avail.

e) Mr. Graham specifically told Kuhl not to give entire report from Adam Kelly to prosecution when Kuhl was trying to stipulate to certain facts found by the report.

f) Kuhl asked Mr. Graham to contact Adam Kelly to check if he would be available to testify, but Graham never did this.

5. Multiple instances of ineffective counsel occurred and complete abandonment of assistance in ~~prose~~ standby capacity. Reasons

supporting this argument are:

a) Counsel did not file a motion to suppress evidence and dismiss case based on unlawful arrest by Wyoming PD. Counsel should have done this prior to the pretrial deadline of 3/05/25, but did not do so. This arrest was unlawful and the prosecution declined to pursue any charge that officers unlawfully claimed probable cause to arrest Kuhl for. This is the first hurdle to overcome in determining that an arrest was unlawful. Indeed, Kuhl spoke about this matter and wrote Counsel about this matter prior to the 3/5/25 motion deadline, and Counsel conceded it was a matter that needed to be raised, but he did not do so.

b) Counsel should have moved for an extension of pretrial motion deadline due to his clear position he needed to review the multiple instances of law enforcement's investigation of the case including bodycam footage of the 10/13/22 Wyoming arrest and multiple search warrants. Further, Counsel knew that the deadline was set before Kuhl's ability to file any motions pro se, and knew of Kuhl's desire to file pretrial motions, yet Counsel did not move to extend the deadline or advance the Faretta hearing so that Kuhl could move to extend the deadline himself.

c) Counsel did not review the Wyoming PD bodycam footage of the 10/13/22 footage in a timely manner despite having possession of that footage for multiple months before the pretrial motion deadline. Counsel did not allow or assist Kuhl in reviewing this footage in a timely manner to challenge the seizure and arrest

in a timely fashion despite Kuhl's multiple requests.

d) Counsel did not assist Kuhl in preparing trial exhibits and trying to enter texts to Exhibit 11 and 11A to cure its deficiencies despite Kuhl's requests to do. Indeed, Counsel stated he would see Kuhl at the jail prior to trial over the weekend to assist with and go over these issues but did not do so.

e) Counsel did not inform Kuhl of local rule's limit on pages of written briefs despite knowing of and seeing multiple of Kuhl's filings being over the page limit. Indeed, Kuhl did not become aware of this rule until on or about 5/21/25 via the Court's Opinion and order (ECF No. 184).

f) Counsel refused to recall SD to get in additional material messages, including but not limited to, the texts directly related to the timeframe of depictions that the prosecution had not yet laid a total Foundation for. Counsel did this despite telling Kuhl to hold off on such matter to see how the prosecution lays the foundation for the remaining depictions and to keep SD under subpoena to recall her for this purpose after the government lays the foundation.

g) Counsel continuously called Kuhl stupid and insulted his defense presentation and specifically told Kuhl that if Kuhl kept going and delayed the trial past 3 days, the Court would impose an upward variance at sentencing if Kuhl was convicted. This violated Kuhl's Sixth Amendment and caused him to abandon his defense and pro se status to allow the trial to move faster due to fear of upward variance and depletion of confidence in defense.

h) Counsel refused to provide call logs surrounding depictions despite Kuhl's several requests. This was important because no texts show Kuhl requesting or directing SD to send the depictions of Count 1 and the government may try to claim Kuhl requested them by phone call. Indeed, the prosecution did present this as a possible explanation for lack of such texts relating to depictions.

i) Counsel informed prosecution of 1 minute call on 8/22/22 before SD sent depiction. Kuhl did not request any of these depictions!

j) Counsel did not inform Kuhl in a timely manner of the proper procedure to challenge the misleading and prejudicial manner of Exhibit 11 summary. Indeed, Counsel did not do this despite Kuhl raising this concern multiple times, and only did so at end of government's case inorder to enter Exhibit A for Defense.

## CONCLUSION

Due to these reasons Kuhl requests a new trial under Rule 33. To not do so would negate the interest of justice and deprive Kuhl of his constitutional rights under the Fifth, Sixth, and First Amendments. Kuhl requests the right to reserve the oppurtunity to raise additional grounds for a new trial upon review of trial transcript and/or consulting with new counsel if appointed.

Respectfully,

S. Kuhl 7/10/25

S. Kuhl 61189510