Received - GR
October 10, 2025 2:32 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: MKC SCANNED BY: JW / 10-14

USA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

# OBJECTION TO ORDER REJECTING PLEADING (ECF No. 352)

As can be seen by the enclosed Notice of Mistake By USPS, and the pleading referenced by such notice, Kuhl's Motion for Leave to File Untimely was filed on 9/3/2025, as that was the date the filing was submitted to Newaygo County Jail's outgoing mail.

Accordingly, this pleading was filed BEFORE COUNSEL took over and while Kuhl was still proceeding pro se. Thus, this document must be filed!!

S. Kuhl 10/6/2025

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL ALEXANDER KUHL,

Defendant.

Case No. 1:23–cr–00044–JMB

Hon. Jane M. Beckering

**ORDER REJECTING PLEADING**

The Court has examined the following document(s) received October 1, 2025 and orders the Clerk to reject the Motion to Return Property, Notice of Mistake by USPS, Motion for Leave to File Untimely and return the document(s) to Samuel Alexander Kuhl for the reason(s) noted below:

Filer is represented by counsel. All filings should be submitted to this Court through Filer's counsel.

IT IS SO ORDERED.

Dated: October 2, 2025

/s/ Ray Kent
RAY KENT
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff, Case No. 1:23-cr-44

v. Hon. Jane M. Beckering

SAMUEL ALEXANDER KUHL,

Defendant.

MOTION FOR LEAVE TO FILE UNTIMELY

Defendant now comes before the Court requesting leave to file the attached Motion For Acquittal or New Trial. Good cause exists for this late filing due to just recently receiving the trial transcript (ECF Nos. 318-322) on or about 8/19/2025. In addition to needing to read through this almost 800 page transcript, Defendant was also in need of paper which he could not get until 8/28/2025 when commissary was delivered.

Additionally, Defendant just received the receipt, referenced in his Motion For A New Trial (ECF No. 301-1 at PageID. 2604), on 8/29/2025. The delay was due to the postcard only mail policy implemented by the jail, and Mr. Graham's instruction that his office will no longer send me any legal materials on behalf of my uncle. Thus, I had no way of having the receipt sent to me. Eventually, Mr. Graham's secretary agreed to send the receipt, so my uncle sent it to the secretary who then forwarded the receipt to me.

Wherefore, Kuhl requests that this Motion be accepted as untimely due to the revealing of material issues that only came to recollection

by reviewing the transcript.

Respectfully,

S. Kuhl 9/3/2025

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349

# MOTION FOR ACQUITTAL OR NEW TRIAL



Defendant now comes before the Court to move for acquittal under Rule 29, or in the alternative, a new trial under Rule 33. This Motion is founded upon the Due Process Clause of the Fifth Amendment and the fair trial guarantee of the Sixth Amendment, both of which were irreconcilably violated by judicial misconduct. Indeed, the Honorable Beckering was bias, held trial with interest in the case, did not prohibit or control improper commentary by S.D. when it was negative to Defendant, and sided with the prosecution.

## LEGAL STANDARD AND PRINCIPLES

In order to establish a judicial misconduct claim, the defendant must show that the judge demonstrated "such a high degree of favoritism or antagonism as to make fair judgment impossible." Litkey v. United States, 510 U.S. 540, 555 (1994); see also Daye v. Attorney General, 712 F.2d 1566, 1572 (2nd Cir. 1983) ("trial judge's intervention in the conduct of a trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either [1] impaired functioning of the jury or [2] lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits.").

"The test is whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt, or whether it appeared clear to the jury that the court believed the accused is guilty." United States v. Amiel, 95 F.3d 135, 146 (2nd Cir. 1996).

The Sixth Circuit is even stricter than the Second as to a judge's requirement to avoid "even the appearance of judicial bias." Anderson v. Sheppard, 856 F.2d 741, 746 (6th Cir. 1988). Even "the harmless error doctrine is inapplicable in

cases where judicial bias and/or hostility is found to have been exhibited at any stage of a judicial proceeding." Sheppard, supra 856 F.2d. at 746-47. Moreover, "interference with the presentations of counsel has the potential of making a mockery of a defendant's right to a fair trial, even in the absence of open hostility." United States v. Hickman, 592 F.2d 931, 934 (6th Cir. 1979).

## ARGUMENT

Taken into consideration along side the pretrial rulings of this Court, the actions of Judge Beckering clearly display a bias towards the Defendant. The pretrial ruling which displayed the most bias and deliberate indifference to Kuhl's Due Process was that of forcing Kuhl to have to show good cause for every pretrial motion being untimely. This is because this Court intentionally made the pretrial motion deadline a day before Defendant was ever able to file a pretrial motion. This placed an unfair and oppressive burden upon Defendant, completely hindering his ability to adequately and effectively defend himself. Moreover, the Court never informed Defendant of a page limit for his motions until they were already filed, further prejudicing and burdening his ability to raise any pretrial concerns.

This display of pretrial judicial bias, compounded with the misconduct of the Court at trial clearly infringed upon Kuhl's right to a fair trial and due process.

### 1. The Court Was Biased And Interested In Defendant's Guilt Due To The Nature of The Charges

The judge ignored the elements of Count 2 and refused to hear

Defendant's arguments because he violated the Michigan crime of CSC Third Degree. Indeed, the Court disregarded any distinction between §2422(b) and CSC Third Degree because Beckering, like many people, despises and categorizes sex crimes involving minors as the worst, regardless of age or circumstances.

Specifically, Beckering sympathizes with sentences for drug offenders in discussing guidelines and mandatory minimums. However, a plethora of cases have been in criticism of the substantial increase in mandatory minimums for sex offenses under certain circumstances. (Judge's sympathy can be seen on page 271 lines 19-25 of jury transcript (ECF No. 319 at PageID. 2958)). Cases holding sentences for sex offenses are draconian: U.S. v. Kelly, 868 F. Supp. 2d 1202 (D. N.M. 2012); U.S. v. Nagel, 559 F. 3d 756 (7th Cir. 2009); U.S. v. Musumeci, 07 CR. 402 at 6 (RMB) (S.D. N.Y. Apr. 28, 2020); U.S. v. Bonick, 16-6388 (6th Cir. Oct. 10, 2017) (recognizing that trial court did refer to child pornography guidelines as draconian); U.S. v. Gallipeau, 3:08-0096-JFA (D.S.C. Oct. 5, 2011).

Another display of Beckering's bias and contempt for Kuhl is her comment as to the government staying up all night to get emojis in the messages. (ECF No. 319 at PageID. 2959 Transcript p. 272 line 15-16). Then just after "kind of figured." This just shows Beckering's true annoyance at any request or issue raised by Defendant and wants to just get it over with.

The Court consistently ruled that any messages displaying a mutual relationship are irrelevant because the erroneous understanding and interpration of §2422(b), based in large part on Beckering's ill emotions to the nature of the case and her despise of Mr. Kuhl. Indeed, Beckering says the only thing that matters is that I knew S.D. was under 16. (ECF No. 319 at PageID. 2968 Trial transcript p. 281 lines 13-16). However, this completely removes the coercion and enticement element of §2422(b). In U.S. v. Hughes, 632 F. 3d 956, 961 (6th Cir. 2011), the Sixth Circuit distinguished

the conduct of §2422(b) from that of §2423(b) because 2423(b) does not contain a "requirement that there be an element of enticement or coercion."

As held in U.S. v. Spencer, 2:13-mj-129 (S.D. Ohio June 3, 2013), the court determined that merely asking a minor to engage in illegal sex is not conduct that 2422(b) reaches. Indeed, Numerous courts have held that it is not the sexual acts criminalized by §2422(b), instead the statute "criminalizes an intentional attempt to achieve a mental state - a minor's assent..." U.S. v. Berk, 652 F.3d 132, 140 (1st Cir. 2011); see also U.S. v. Hite, 769 F.3d 1154, 1161 (D.C. Cir. 2014) ("The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that §2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor."); U.S. v. Pulido, 133 F.4th 1256, 1270 (11th Cir. 2025) (holding that §2422(b) is violated once the defendant moves the victim's "mental state from one of hesitation to one of agreement"); U.S. v. Gagliardi, 506 F.3d 140, 147 (2nd Cir. 2007) (holding that under §2422(b) "there may be some uncertainty as to the precise demarcation between persuading, which is criminalized, and asking, which is not...."); U.S. v. Joseph, 542 F.3d 13 (2nd Cir. 2008) (holding that statements intended to make the prospect of future sex more appealing are not enough to violate §2422(b)).

Another example of Beckering's despise and reckless disregard as to the elements of §2422(b) is her comments as to whether Defendant had sex with someone after they told him they were only 14 (ECF No. 319 at PageID 3084 Trial transcript p. 397 lines 20-25). Again, Beckering disregards the enticement element of §2422(b) because of her despise and bias toward Defendant based on the sexual activity with a minor, whether or not that activity violated §2422(b). Indeed, Beckering states that knowingly getting someone to have sex is persuading, inducing, enticing,

or coercing that person. (ECF No. 319 at PageID. 3085 lines 21-23). In other words, simply arranging a sexual encounter, regardless if any persuasion is present, with a minor that would be illegal, violates §2422(b).

The Court again showed bias and disregarded the law and hindered Kuhl's defense by preventing him from showing that S.D.'s claim that Defendant sometimes reached back out to S.D., after separating himself from her, to continue the relationship was false. (ECF No. 319 at PageID. 3136 lines 20-24) Also, on page 451 of the trial transcript and into page 452, the same thing is occuring (ECF No. 319 at PageID. 3138-3139). The favoritism and antagonism displayed by the Court made a fair judgment impossible.

This also stood to stop Kuhl from elaborating on S.D.'s admission that she sent these videos because she and Kuhl were in a relationship. Defendant tried multiple times to lay the foundation of the context and circumstances surrounding the depictions, but the judge's bias, and favoritism to the prosecution, repeatedly prohibited Defendant from doing so. Beckering also stopped Kuhl from presenting language used by S.D. that was very explicit and sexual, which would go not only to show a lack of persuasion, but also a level of callous and maturity beyond that of a 14 or 15 year old girl. Examples: Trial transcript p. 386-388 (ECF No. 319 at Page ID. 3073-3075); Trial transcript p. 417 lines 20-25 - p. 418 lines 1-19 (ECF No. 319 at PageID. 3104-3105).

2. The Court did Not Control S.D.'s Improper Statements Unless To Prejudice Defendant

The Court continuously allowed S.D. to answer questions deemed to be improper,

when such answers were negative to Defendant, but clearly and strenuously restricted S.D. answers and comments when they may have been in Kuhl's favor. On page 347 of the Trial transcript, the Court sustained Kuhl's objection to a leading question by VerHey, but did not even make the slightest attempt to restrict S.D. from answering in a manner responsive to that improper leading question. (Lines 6-25 of PageID. 3034 - line 1 of PageID. 3035). Another similar instance occurs on page 351 of the trial transcript (Lines 4-19 of PageID. 3038).

The first time the Court exercises any control over S.D.'s excessive answers or comments is during Defendant's cross-examination regarding what business S.D. was keeping from her family. (Trial transcript p. 360-361) Another instance of the restricting S.D.'s improper comments or answers by the Court, which was to the government's benefit, is on page 380 of the trial transcript lines 7-25. Another clear example of bias toward Defendant, and favoritism toward the government by the judge is seen on pages 454-455 of Trial transcript. This is when Kuhl strictly and simply asks S.D. if she remembered reaching back out to Kuhl (lines 7-10 of page 454 Trial transcript). Yet, S.D. sees her message and confirms that she did send it and was reaching back out to Kuhl. (Lines 17-18 of Page 454 Trial Transcript). Then, S.D. asks to keep reading to speak to extra texts after the basis of the question presented. Beckering then says S.D. is pulling her own 106 because Defendant is taking something out of context (lines 6-7 of page 455 Trial transcript) First, nothing was out of context, the question was did S.D. send this text reaching back out to Kuhl first. The true and correct answer is yes. Second, S.D. cannot invoke her own 106, nor can the Court, it is the prosecution's job. Clearly the Court showed bias every oppurtunity that

favored the prosecution and prejudiced Mr. Kuhl, regardless of the lawfulness of such conduct.

3. Beckering Repeatedly Acted As An Advocate and Assistant For The Government

An instance of the judge making her own objection for the prosecution occurs on page 451 Trial transcript lines 20-22. This prohibited Kuhl from showing that every instance of someone reaching back out after Kuhl told SD that they needed to separate, was S.D. This also prompted the government to then make an objection at page 452 lines 1-2. While the government complains of testimony by Defendant, Kuhl was only responding to the Court to argue reasoning for his questions.

Another instance is page 447 of Trial transcript lines 11-12, and lines 2-6 of page 448 Trial transcript. Defendant continuously tried to display S.D.'s dishonesty intrinsic to the evidence and timeframe of the case, but the Court itself colluded with the government to prevent that. The matter was not irrelevant because S.D. became very upset that Kuhl was leaving due to the fact she was sleeping with another man. This would show a reason to explain S.D.'s "amnesia" and "confusion" to Kuhl's questions, but her clear and vibrant memory and understanding to the government's questions. Further, it would show she lied again about the fact as to why they separated and that it was Defendant who broke off the relationship despite S.D.'s repeated attempts to salvage it.

On page 442-443 of Trial transcript, the Court argues that Kuhl has had

the materials and should have been prepared for trial. Honestly, Kuhl got the summary of texts (Ex. 11) on June 17, 2024, a week before trial. Further, Kuhl prepared his defense based on the dates of enticement for Count 2 on the original verdict form. As to June 1, 2021, Kuhl's defense was that he did not know S.D. was 14, and as to Aug. 24, 2022, there were no communications via phone or internet near that date displaying persuasion by Kuhl toward S.D. to have sex. However, all this changed mid-trial. Moreover, the fact that Mr. Graham did not help Kuhl present the specific texts to repair the misleading context and inferences of Ex. 11, by way of monitor as VerHey did theirs, deeply prejudiced Kuhl. Beckering was aware of this due to S.D.'s several statements that the presentation of Ex. 11 was far easier for her to grasp and decipher than the sheets of paper showing small messages Kuhl was stuck with. Indeed, S.D. made such statements multiple times such as on page 422 lines 1-5 Trial transcript. Then, when Kuhl tried to ask S.D. questions to show the pages of the Cellebrite report were in sequential order, the Court stopped him from doing so. This prevented Kuhl from clarifying the misleading context presented by Ex. 11. On page 421 line 19 of Trial transcript, S.D. complains of the dates being too little on the pages of the Cellebrite Report. More examples of S.D. expressing her easier interpretation and interaction with the presentation of Ex. 11 than the pages of the Cellebrite Report are on: pages 413-414 Trial transcript; page 389 Trial transcript lines 4-7; page 384 Trial transcript lines 15-17; page 374 Trial transcript lines 14-15.

Another instance in which Beckering improperly acted in aid of the prosecution, and displayed bias toward Defendant, can be seen on page 428 lines 9-20.

Also, on pages 426-427 Trial transcript, Beckering improperly favors the prosecution and prevents Defendant from presenting facts to display S.D. had lied about her age again after Oct. 31, 2021, which if true, would have made S.D. 16 years old in all of the 2022 communications, or at least led Kuhl to believe so. This would have established a defense to the knowledge of age requirement under Count 2.

On pages 557-558 Trial transcript, Beckering allowed and even assisted VerHey in creating an entirely false and prejudicial narrative that there were other possible messages, besides those in Ex. 11, that the government possessed, displaying Kuhl asking for depictions, but that the Government decided not to present because there were so many. (See lines 24-25 of p. 557 and lines 1-3 of p. 558 Trial transcript)

Furthermore, Beckering multiple times prevented Kuhl from presenting evidence and messages showing S.D.'s dishonesty as to her age, as well as conduct by S.D. displaying maturity beyond that of someone under 16. Although Beckering did backtrack on this some after deciding knowledge of age was a requirement for Count 2, Beckering then began preventing such evidence again as cumulative. This severely prejudiced Mr. Kuhl because the government capitalized on the theory that Kuhl knew S.D. was under 16 from the start (pages 725-726 Trial transcript). Beckering preventing on pages 387-388 Trial transcript; page 404 line 25.

Additionally, Beckering assisted the prosecution in coaching and aiding S.D. in avoiding any extensive questioning of each depiction at issue. This specifically occurred on page 441 of Trial transcript when Defendant began to show that Kuhl did not request a specific video, S.D.'s head is suddenly "booming" and Beckering orders a break to disrupt the flow.

# CONCLUSION



All of these matters taken together, or accumatively, displayed judicial misconduct, antagonism, favoritism, and bias which irreconcilably infringed upon Defendant's rights to Due process and a fair trial. Accordingly, the conviction must be reversed and retried before a different judge, if not acquitted.

Respectfully,

S. Kuhl 9/3/2025

S. Kuhl 6118951O

1035 James

P.O. Box 845

White Cloud, MI 49349

# U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL.

## NOTICE OF "MISTAKE" BY USPS

Defendant originally sent this motion on 9/3/2025, but it was returned for insufficient postage. Today on 9/25/2025, the Sergeant of the jail confirmed there was enough postage for the filing. This filing was erroneously returned three times, so Defendant has put it in a new envelope. The original envelope is enclosed showing that it was returned on 9/11/25, 9/18/25, and 9/24/25. Please know and reflect this is more proof of the intricate and deeply enmished conspiracy here from the postal service, to the court, their appointed attorneys, the government, and those truly in power. It is disgusting and despicable you people do not stand in honor, nor stand for justice. File this notice and attached motion to Kuhl's case.

S. Kuhl 9/25/2025

S. Kuhl 61189510

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349




U.S. Dist. Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud MI 49349

RETURNED FOR ______ ¢
ADDITIONAL POSTAGE




"This mail has originated from the Newaygo County Jail"

RECEIVED
SEP 18 2025
NEWAYGO COUNTY JAIL

RECEIVED
SEP 24 2025
NEWAYGO COUNTY JAIL

72

U.S. Dist. Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL

"This mail has originated from the Newaygo County Jail"

RECEIVED
SEP 11 2025
NEWAYGO COUNTY JAIL

S. Kuhl 61189510
P.O. Box 845
White Cloud, MI 49349

GRAND RAPIDS MI 493
7 OCT 2025 PM 2 L




U.S. Dist. Court
399 Federal Building
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL

49503-236399